JC2AAPARC                    Conference

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                        19 CR 725 (JPO)

5    LEV PARNAS, ET AL.,

6              Defendants.

7    ------------------------------x

8                                        New York, N.Y.
                                         December 2, 2019
9                                        2:00 p.m.
10   Before:

                    HON. J. PAUL OETKEN,
11
                                         District Judge
12
                           APPEARANCES
13   GEOFFREY S. BERMAN
          United States Attorney for the
14        Southern District of New York
     REBEKAH A. DONALESKI
15   NICOLAS L. ROOS
     DOUGLAS S. ZOLKIND
16        Assistant United States Attorneys

17   JOSEPH A. BONDY
          Attorney for Defendant Parnas
18
     EDWARD B. MACMAHON, JR.
19        Attorney for Defendant Parnas

20   TODD BLANCHE
          Attorney for Defendant Fruman
21
     WILLIAM J. HARRINGTON
22        Attorney for Defendant Correia

23   GERALD LEFCOURT
     FAITH FRIEDMAN
24        Attorney for Defendant Kukushkin

25
```

JC2AAPARC                        Conference

```
 1            (Case called)

 2            MR. ZOLKIND:  Good afternoon, your Honor.

 3            Douglas Zolkind, Rebecca Donaleski and Nicolas Roos,

 4    for the government

 5            THE COURT:  Good afternoon.

 6            MR. BONDY:  Good afternoon, your Honor.

 7            Joseph A. Bondy, on behalf of Lev Parnas, who is

 8    seated to my right.

 9            MR. MACMAHON:  Edward McMahon, for Mr. Parnas, as

10    well.

11            MR. BLANCHE:  Todd Blanche, for Mr. Fruman who's been

12    excused with the Court's permission.

13            MR. LEFCOURT:  Gerald Lefcourt and Faith Friedman, for

14    Mr. Kukushkin who was excused but for the arraignment, your

15    Honor.

16            MR. HARRINGTON:  William Harrington, for David

17    Correia, who is also excused and waives --

18            THE COURT:  He waives his appearance today.

19            Welcome everybody.  As you know, the defendants were

20    arraigned and appeared for an initial conference, two initial

21    conferences before me on October 17 and October 23.  I

22    scheduled this conference to get an update on the discovery

23    process to schedule any further proceedings and to address any

24    other issues the parties would like to raise.  As I said, we

25    have counsel for all four defendants today and I granted a
```

JC2AAPARC                        Conference

1    request to waive the presence of Mr. Kukushkin and also

2    Mr. Correia based on Mr. Harrington's request.

3            I'd like to begin by asking counsel for the government

4    about discovery.  At the initial conference you described the

5    categories of discovery and indicated that it would be fairly

6    voluminous.  If you could update me on the status of production

7    and discovered to the defendants, Mr. Zolkind.

8            MR. ZOLKIND:  Certainly, your Honor.  And it is

9    voluminous and we're prepared to go into some greater detail

10   today about what has been produced and what we foresee coming

11   in future upcoming productions.

12           So first, after having productive discussions with the

13   defense about a protective order which is now in place, the

14   government made an initial production of discovery on the 21st

15   of November.  So that production consists of a few categories

16   as follows:

17           First, it includes a substantial volume of documents

18   obtained by subpoena and other requests but mainly subpoena.

19   That includes extensive phone records, bank records, records

20   produced by internet providers like Google or Facebook, as well

21   as records produced by various witnesses, individuals or

22   companies, among other categories of subpoena responses.

23           As I said, it's voluminous well into the thousands of

24   files and I have well over nine gigabytes of data.  That's all.

25           THE COURT:  You said that was produced November 21?

JC2AAPARC                    Conference

1          MR. ZOLKIND:  That's correct, your Honor.

2          The next category consists of search warrants and the

3     accompanying affidavits for those search wants, so the warrants

4     themselves and the affidavits.  And within that category there

5     are a few subcategories.  There were multiple search warrants

6     on e-mail accounts.  That's one.  Multiple search warrants on

7     iCloud accounts.  There were search warrants executed on

8     certain physical premises.  And then there were search warrants

9     executed on electronic devices.  Some of those devices were

10    seized from the person of the certain defendants upon their

11    arrest.  Other devices were seized at a physical premises.

12         And it would be useful I'm happy to go into more

13    detail about how many devices and which device is for each

14    defendants had.

15         THE COURT:  If you would please.

16         MR. ZOLKIND:  So with respect to Mr. Parnas, there are

17    six devices that were seized incident to his arrest and that

18    includes one Samsung device, one iPad, two iPhones and another

19    cellphone.  And then eight devices that were seized in

20    connection with the search of his residence and that includes

21    an Apple MacBook, Samsung Galaxy phone, three iPhones, one iPad

22    and hard drive and thumb drive.

23         With respect to Mr. Fruman, there are three devices

24    seized incident to his arrest.  That's two iPhones and one SIM

25    card, eight devices seized from his residence consisting of one

JC2AAPARC                    Conference

1    satellite phone, one iPad, one SIM card, three thumb drives or

2    SD cards, another cellphone and a Google device.

3           With respect to Mr. Kukushkin, there was one device,

4    an iPhone seized incident to his arrest.

5           And with respect to Mr. Correia, there were three

6    devices seized from a package that he transmitted and that

7    consists of one iPhone, one laptop, a Surface Pro and an

8    external hard drive, as well as certain handwritten materials

9    in the SIM package.

10           So that I think is an overview of the search warrants

11    and the accompanying affidavits that have now been produced in

12    discovery.  The next main category of material has been

13    produced in discovery is the entirety of any account that was

14    searched to the extent that we have it in our possession has

15    been produced or if we don't have it yet in our possession,

16    will be as soon as we do, will be to the specific defendant

17    whose account it is or whose device it is.  Just so that's

18    clear, if for example a specific defendant's e-mail account was

19    searched, as soon as we have that e-mail account in our

20    possession, our intention has been and will continue to be to

21    produce that entire e-mail account just to that specific

22    defendant without any delay.

23           Same thing for devices.  Once a device extracted once

24    we have it in our possession and we will be able review,

25    without delay, we are going to provide that entire extraction

JC2AAPARC                    Conference

1   to whichever defendant is the owner of that device.  And so

2   that has begun happening and as I'll get into, that's a process

3   that will continue as we get access to additional accounts or

4   devices.

5          So again, just to make clear what the government's

6   plan is, we have had some discussions with defense counsel

7   about this but obviously, to the extent there are documents on

8   any of the devices or any of the accounts that are responsive

9   to the search warrants, the responsive documents will be

10  produced in discovery to all of the defendants.  But each

11  defendant will in addition to that get the full extraction of

12  their device or the full contents of that defendant's personal

13  account.

14         That is essentially the state as to what has been

15  produced today or as of today.  I think it's a voluminous

16  production of discovery.  But certainly, there's additional

17  stuff that's coming and so I'm happy to get into what that

18  would be.

19         THE COURT:  Please do.  Let me just ask, there were no

20  wiretaps in the case; is that right?

21         MR. ZOLKIND:  That's correct.

22         THE COURT:  OK.

23         MR. ZOLKIND:  With respect to upcoming discovery, the

24  government's investigation is itself ongoing.  And so in

25  connection with the ongoing investigation there are subpoenas

JC2AAPARC                        Conference

1    that are continuing to be served and the results of subpoenas

2    that we're continuing to get in and documents that we're

3    continuing to get in from other sources, as we receive those

4    materials to the extent they are discoverable in this case,

5    we'll produce them promptly.

6            The next main category is materials that are

7    responsive to the various search warrants.  So the search

8    warrants that I've just described before, the e-mail accounts,

9    iCloud devices, the government is diligently working through

10   all of the returns that we've gotten so far.  We haven't gotten

11   all of them to identify documents that are responsive to the

12   terms of those warrants and we are going to begin making

13   productions of those responsive documents to all of the

14   defendants on a rolling basis.

15           We expect, with respect to the materials currently in

16   our possession our goal and we think it's a realistic goal is

17   to be substantially complete in producing responsive documents

18   from that universe within about the next 60 days.  But again,

19   it'll be on a rolling basis.  I guess it might be helpful just

20   to note some of the reasons.  It is a time-consuming process.

21   Although, we're handling it very diligently but there's been

22   issues raised not unreasonably by the defense about privilege

23   issues.  So we have in place, as we've said, before a filter

24   team or a taint team to examine those documents before they're

25   released to the prosecution team for our review.  So that had

1   been playing out, will continue to play out and we're hoping to

2   get through that material as quickly as possible.  That's with

3   respect to documents that are already in our possession.

4           With respect to documents that are not yet in our

5   possession, the situation is a little bit different and that

6   relates mostly to all of those devices that I went through

7   before.  As the Court may know, it is not always the quickest

8   process to get into a device.  Oftentimes devices are encrypted

9   with passwords.  And so the FBI's technical experts are working

10  over-time to extract that material as quickly as possible to

11  enable us to, A, provide full extraction to the defendant whose

12  device it is and also to enable us to review it and produce

13  responsive materials in discovery.

14          It is, of course, the case if any defendant were to

15  provide us the password for a device, that would allows to

16  provide the defendant with discovery from that device much more

17  expeditiously.  But in the absence of receiving any passwords,

18  the FBI's technical team is going through the process of

19  extracting that material as quickly as possible.

20          THE COURT:  OK.

21          MR. ZOLKIND:  I think that is essentially the update

22  as to discovery unless the Court has any questions.

23          THE COURT:  So the 60 days that you mentioned that

24  would be early February, you were talking about those materials

25  that are already in your possession?  The others, it's harder

JC2AAPARC                    Conference

1    to make an estimation.

2              MR. ZOLKIND:  It's very difficult.  Once we learn that

3    a device has been extracted, then we can provide a much more

4    concrete estimate of how long it'll take us to review it and

5    provide the responsive materials and answer.  We expect in most

6    cases is going to be that we can do that very promptly.  So the

7    delay should not be in terms of time it takes to review the

8    materials but just in terms of the technical process of getting

9    into these devices in the absence of having a password.

10             THE COURT:  OK.

11             MR. ZOLKIND:  We can certainly provide the Court with

12   a written or oral update at that 60 day mark.  I'm sure we'll

13   be in touch with the defense in any event but just to keep

14   everyone apprized as to where we stand.

15             THE COURT:  OK.  All right.  Thank you.

16             I'll hear from counsel for each of the defendants.

17   What I intended to do it being December 2nd was to ask you

18   about your progress in reviewing the discovery.  However, given

19   what's been described, I assume you are not all done reviewing

20   the discovery.  I've given that it looks like you've got a

21   bunch of stuff on November 21st.  But really what I'd like to

22   do is hear from each of you as to any issues you want to raise

23   about the discovery or anything else and then hear from you

24   about whether we are in a position is set a date for motions,

25   whether you have any motions contemplated or if we're not in

JC2AAPARC                          Conference

1    that position yet.  Then to set a conference down the road

2    where we would come back and set a date for any motions if you

3    know that you are going to file any motions.

4              So I'll start with Mr. Bondy.

5              MR. BONDY:  Thank you, your Honor.

6              We've received the hard drive that we've given to the

7    government on I guess, the last appearance.  We have about

8    70,000 pages that are on that hard drive and we're going to

9    undertake our review.  We fear that that's perhaps not even the

10   majority of the material once you get the extracted devices

11   that we're waiting for the discovery on.  So I'm not sure

12   whether we can really set a meaningful motion schedule today or

13   even a trial date.

14             THE COURT:  OK.  Mr. Blanche.

15             MR. BLANCHE:  Thanks, judge.  Just, I don't have

16   anything.  We have not even really gotten to review the

17   discovery.  We just received it recently from the government.

18   And I have spoken with the government on a few occasions about

19   the status of I think the most significant discovery which in

20   my view would include the electronic media, the phones and data

21   that is on those.  So without that, I'm not sure we can really

22   move forward.

23             I'm a little bit concerned that in 60 days, that the

24   60 days doesn't even include that.  I mean, the case was

25   indicted in October.  It is now December.  When the government

JC2AAPARC                        Conference

1   says it's not their possession, it is in their possession, it's

2   just in the possession of the FBI, I assume.

3          And as far as unlocking devices and needing passwords,

4   I was never asked to provide a password on behalf Mr. Fruman.

5   I haven't talked to him about it.  But that's certainly

6   something we can discuss.  I'm concerned about the time that

7   it's going to take and I'm concerned about getting discovery at

8   some point I guess after February 2nd in a case that was

9   indicted in October.

10         So I would ask that the Court -- I don't know what the

11  Court should do.  If it's not there, it's not there.  But we

12  shouldn't be waiting five/six months after an indictment to see

13  the material from the respective cellphones and computers.  I'm

14  not sure why the delay of that long.

15         But I agree with Mr. Bondy.  There's not much -- we

16  don't have it.  So there's not much we can do about setting a

17  motion schedule at this point.

18         THE COURT:  Or a trial.

19         MR. BLANCHE:  Or a trial date, which we at the last

20  conferenced had discussed doing as well.  And I had certainly

21  voiced to everybody about the desire for a trial date on behalf

22  of Mr. Fruman for this summer, as soon as June.  I think it's a

23  little aggressive and given what everybody has said today and I

24  recognize that.  But the idea that the government's continuing

25  to investigate and there are grand jury subpoenas that are out

JC2AAPARC                    Conference

1    there, those subpoenas are for a different investigation.  You

2    don't get to keep on issuing grand jury subpoena for the same

3    case.  The case is indicted.  It's a four-count indictment.  I

4    do want to set a trial date today, if possible.  I say that but

5    we don't have discovery yet really.  So, I don't think it's

6    fruitful to do so.

7            THE COURT:  Well, even at the current state of the

8    case, the four counts, it's going to be 60 days before you get,

9    I guess, the bulk of responsive material or relevant materials

10   in their session now.  So we're not in a position to set a

11   motion schedule it sounds like.

12           MR. BLANCHE:  Correct.  But again, the reason why I'm

13   not just sitting down and saying that's right is because but

14   what are we going to do in 60 days?  In 60 days if we come back

15   here, we still haven't received any electronic media because

16   it's still taking longer than 60 days.  How long does it take?

17   I don't want to just continue to kick the can down the road

18   before we set a trial date.  I think if the Court does set a

19   trial date it puts pressure on the government to get everything

20   out and do whatever needs to be done.  Even if the trial date

21   is longer than what I would hope which would be the summer or

22   even fall, at least it's a date we can all work off of and it

23   puts pressure on the FBI and whoever else has media to get

24   through it.

25           THE COURT:  OK.  Mr. Harrington.

JC2AAPARC                    Conference

1          MR. HARRINGTON:  I agree, judge.

2          The only thing I would add is that the delays the

3    government described in discovery don't really apply to the

4    sorts of things that if things were moving faster that would

5    normally be able to start to tell us as we got to a trial date

6    such as witness, what are they saying?  What are the documents

7    they want to rely on?  So this really long delay seems to me

8    shouldn't be at the benefit of the government of not telling us

9    what their case is.  This is all stuff that they're largely

10   talking about the delay and stuff they never even seen yet.  So

11   there's a lot of stuff that they have seen, they could describe

12   to us.  They could tell us what they intend to do in terms of a

13   trial and things like that and I don't know that we need to

14   hold that off till the last minute just because they're taking

15   a lot of time.

16         THE COURT:  Well, the indictment has a fair amount of

17   detail in it.

18         MR. HARRINGTON:  In the normal course it would be,

19   obviously, a sooner trial date, and at some point the

20   government would be required to tell us about who the witnesses

21   are, what they are going to be saying.  There's a lot of detail

22   they we would get as that trial came up.

23         Here, where the trial date is being pushed off because

24   the government is seeking to open dozens of devices, they have

25   no idea what is on them, it seems to delay all of that is

1    unnecessary, that that stuff should be expedited, so that then

2    perhaps we could turn around and have a quicker trial date once

3    they've unlocked these various devices.

4              THE COURT:  OK.  Would your preference be to set a

5    trial date say in the fall or to come back in two or three

6    months?

7              MR. HARRINGTON:  I think it would be hard to set the

8    trial date without knowing when they're going to finish.  My

9    preference would be to find out what witnesses are saying.  All

10   the sorts of stuff that we would get right before trial, rather

11   than have to get that at the same time we're getting a load of

12   dozens documents, get that stuff now so we can ingest it then

13   later on when we get a load of electronic documents.  There is

14   really no reason why they can't get the indictment in the case,

15   prepare to go to trial on the evidence they had, presumably.

16   So this black box of materials that they're now sifting through

17   I don't think should slow down everything else.

18             THE COURT:  OK.  Mr. Lefcourt.

19             MR. LEFCOURT:  Your Honor, I think that there is a new

20   mechanism to deal with some of these issues.  Today, as you may

21   know, your Honor, is the first day of the new Federal Discovery

22   Rule 16.1, which I've handed up an article.  And the reason why

23   I handed up that article, it's written by John Siffert who is a

24   member of the Federal Rules Committee that adopted this new

25   rule and he also is of Sand/Siffert fame, modern federal jury

JC2AAPARC                    Conference

instructions.  And it provides a better look at this.  I think

this may be the first change in Rule 16 maybe in my lifetime.

        But the idea was defendants like these are faced with

discovery as usual nowadays which is, we gave them a terabyte

hard drive which by the way, I didn't get back until this past

Wednesday on the eve of Thanksgiving.  And the discovery that

we can see very quickly by trying to scroll through it and look

at the letter that the government supplied with 70,000 Bates

numbers, this is without the electronic discovery, what you see

is search warrant affidavits that are like this.

        So there's 26 blank blacked out pages on one warrant

and we still don't know when that's coming.  I don't know what

that is about.  Apparently, the government has sought and

received permission to blank out material unbeknownst to

defense without notice to the defense.  So we don't really have

any meaningful discovery.  There are tens of thousands of bank

records.  We don't know whether they're relevant.  Should we

sit down and start reading bank records?  That's absurd.  And I

think the Rule 16.1 contemplates a different realm, a whole

different way of proceeding.

        One of the things that the Court may do right now to

make discovery more meaningful is to have the government

provide a draft exhibit list so we can look at the exhibits

that they intend to introduce.  Now it doesn't have to be

binding.  They could always add to it when they need to but the

1    least I could look at an exhibit and then look at discovery and

2    see what that exhibit informs.  And also to consider 3500

3    material on an earlier production than normal.  I agree with

4    Mr. Harrington.  We have no sense of this case.  And so 16.1

5    talks about getting defendants ready for trial.  It is a new

6    way to look at these things.  And so that's what I would

7    advocate.

8         I can't think that you could possibly set a motion

9    schedule.  We have no idea how much time it's going to take to

10   get through all of this.  So I think that we have to wait for

11   another conference.  But in the meantime if the Court could

12   consider a draft exhibit list that's nonbinding and 3500

13   material on a early basis, then we can start talking about

14   trial preparations, motions and the like.

15        THE COURT:  OK.  Do you want to respond to that,

16   Mr. Zolkind?

17        MR. ZOLKIND:  I would, your Honor.

18        Let me just try to pick through some of the main

19   points that were raised.  Maybe I'll start at last point.  The

20   government would object to needing to have put together an

21   exhibit list now without even a trial date set.  I don't think

22   there's precedent for that, nor do I think it's really feasible

23   on our end or necessary.  The reason I don't think it's

24   necessary is, among other things, that the defense has received

25   in discovery are, as I said, numerous search warrants and

JC2AAPARC                    Conference

1    affidavits.  And those affidavits do go through in quite a bit

2    of the detail as the Court knows, the allegations and the

3    evidence.  And so that is undoubtedly going to be a helpful

4    guide as they go through the other discovery they've received.

5           We on the government's side are also happy to be in

6    touch with defense counsel and happy to the extent there's

7    questions, whether we can direct them to certain bank records

8    or help explain why something is in discovery, we're happy to

9    have those conversations and so far haven't been asked but we

10   stand certainly ready to do that.

11          With respect to the redacted pages of certain search

12   warrant material, as the Court knows, there is an order in

13   place under Rule 16(D).  Without going into the basis for it,

14   obviously, it was a sealed ex parte application.  The

15   redactions don't relate to the charged case.  So they're there.

16   There is a time limit that the Court set on the Rule 16(D)

17   order.  It's subject to renewal for good cause but absent a

18   request for renewal and the Court finding good cause, the

19   defense will receive the un-redacted materials in -- I have to

20   check -- I think it's March or April.  But the un-redacted

21   pages are themselves a pretty detailed guide to the evidence in

22   this case.  So that's one point.

23          Secondly, with respect to motions certainly the

24   government doesn't object if the consensus is not to set a

25   motion schedule but nor do we think it would be unreasonable to

JC2AAPARC                      Conference

1    sunset one right now.  The defense has not the warrants.  They

2    have the accompanying affidavits.  They have the indictment and

3    so with respect to the couple things that have been redacted or

4    withheld pursuant to the Rule 16(D) order, they do have the

5    materials that would presumably form on the basis of either a

6    motion directed at the indictment or a motion to suppress.

7         So again, we don't, we're not objecting if they prefer

8    to defer that for some period of time.  But I don't think that

9    the fact that it's taking some period of time to extract

10   numerous electronic devices has anything do with a request to

11   put off a motion schedule.

12        With respect to the question of whether there's an

13   unreasonable delay that's going on with respect to the devices

14   is defendants were arrested and the searches through which the

15   devices were obtained, all happened in October, we're now in

16   early December.  That is not a significant passage of time.

17   The FBI has I said is working extremely hard to extract these

18   devices.  And if any of the defendants want to receive that

19   discovery on a much, much quicker timetable, they can provide

20   us with the passwords and I expect they would have the devices

21   within a matter of days.  They would have the extraction of

22   their devices.

23        THE COURT:  Are there many devices for which you have

24   not been able to get passwords?

25        MR. ZOLKIND:  We have not been given passwords by the

1    defendants to any of the devices.

2            THE COURT:  Have you asked?

3            MR. ZOLKIND:  We have had some of those discussions.

4    But it is probably true, we haven't made a formal request to

5    each of them and so, but as I say, we're happy to have that

6    discussion and talk more generally about how we can help guide

7    them through the discovery.

8            THE COURT:  So what do you say to the suggestion of

9    some of the defense counsel that it's kind of putting things

10   out of order but did you give them some version of 3500

11   material earlier and/or possible exhibit list at this point on

12   the assumption that when you indicted you were ready to go to

13   trial in the case.  Could you give them some more direction by

14   doing something like that's.  What is your response to that

15   request?

16           MR. ZOLKIND:  Your Honor, we would strongly oppose

17   that request.  Number one, there is an ongoing investigation

18   and so producing witness statements, any of month moment

19   earlier than is normal appropriate we think would risk

20   compromising that investigation.  But there is also just -- we

21   are not in a place where a trial is scheduled.  I guess if we

22   were forced to come up with a witness list we could but that is

23   not something that is normally set at this stage in the case.

24   Neither were exhibits set.  And so again, I think the defense

25   is not without a place they can look to see how the various

JC2AAPARC                    Conference

1   piece of evidence fits together.  There are numerous search

2   warrants an affidavits that walk through that evidence and in

3   some detail and so I think that is really the best guide that

4   they have and really should answer the question with respect to

5   turning over 3500 material our strong preference would be to do

6   that as teas done in as far as I'll I am aware in every single

7   criminal case in district which is a reasonable period of time

8   in advance of trial.

9           THE COURT:  What do you think would be a reasonable

10  period of time to come back for another conference to set a

11  motion schedule?  And I'll ask defense counsel this as well.

12          MR. ZOLKIND:  As I said, I think a motion schedule

13  could be set today because they have the warrants.  They have

14  the indictments.  So I'm not sure why seeing the extraction of

15  the devices is relevant to whether or not they have a viable

16  motion.  The connection there is not obvious to me.  And so I

17  think we could set a motion to any motion based on a warrant,

18  any motion based an indictment, that schedule could be set

19  today and if some future production of discovery gives rise to

20  a new motion, we could have another motion schedule at that

21  point.  If the defense prefers to defer it for some period of

22  time, as I said, we don't object, but it's not clear to us that

23  at least many of the most common motions couldn't be scheduled

24  today.

25          THE COURT:  Well, let me hear from defense counsel

1    about that.  Do you know if just based on warrants in the

2    indictment whether there's any motion directed at the warrants

3    or indictment any of you want to make?

4            MR. BLANCHE:  I don't agree that not having the

5    underlying material, that doesn't matter.  There are certain

6    motions that can be made depending on what the underlying --

7    shows, for example, a Bruton motion.  Or we may not choose to

8    suppression, seek to suppress items from the search depending

9    on what the actual search results were.

10           So it is difficult -- unless we're going to set two

11   motion schedules -- to set a motion schedule today without

12   having the benefit of at least the majority of the underlying

13   materials, for example, that were taken during the course of

14   the searches.  So I would prefer to not set a motion schedule

15   or to set a motion schedule that's very far out which allows

16   the government to produce a lot more of the discovery before we

17   decide what motions to make.

18           THE COURT:  Well if there's any motion you based on

19   the indictment or a problem with one of the warrants, I don't

20   know why you can't make those now.  If there's a motion about

21   some other issue, Bruton or something else, then that would --

22           MR. BLANCHE:  There are certainly certain motions we

23   could make now, agreed.  We have the affidavits, parts are

24   redacted and we have the indictment itself.  So there are other

25   motions that we might in my definition want to make.  That's

JC2AAPARC                    Conference

1    why I said we either should wait or I was supposed to set a

2    motion schedule as far enough out that let's us spend more time

3    with discovery or -- would be pretrial motions as well.

4              THE COURT:  Right.  Of course.  So I'm open to either

5    option.  We could either set a date for motions a few months

6    out or if you want to come back in whatever would be a

7    reasonable period of time to talk about any discovery issues

8    and to actually set a schedule or motions, I'm fine with that

9    as well.

10             MR. HARRINGTON:  I agree.  We should come back in 45

11   days or 60 days and set a motion schedule.

12             MR. LEFCOURT:  Your Honor, I agree.  But I also wanted

13   to respond a little bit to the government.

14             THE COURT:  Sure.

15             MR. LEFCOURT:  They presented a case to a grand jury.

16   They put in documents, presumably.  They marked exhibits,

17   presumably.  And the indictment is then returned.  Those are

18   grand jury exhibits that if we had now it would focus us on

19   what we should be looking at by way of the discovery.  It's a

20   very simple proposition.  They shouldn't be bound that this is

21   every exhibit that they are ever going to offer in evidence.

22   If they want to supplement at a later time, fine.

23             Also, it hasn't been mentioned but it should that some

24   of these things are going to be in foreign languages.  We have

25   I think Russian and maybe Ukrainian, as well in some of this

1    stuff.

2            Also, the government's discovery letter pointed to 13

3    categories of information that if we wanted to look at it we

4    have to come to the U.S. Attorney's Office.  I don't know what

5    that material is.  I don't know whether it's worth looking at

6    but if I had a draft exhibit list, I would have a better idea.

7    It's pretty simple.

8            THE COURT:  Well, the search warrant affidavits go

9    through what the evidence is.  It talks about communications

10   and e-mails and texts.  What more do you need?

11           MR. LEFCOURT:  The actual transcripts that were before

12   the grand jury that they focus on and any financial records

13   that they focused on with the grand jury, it would give us a

14   way to focus also.

15           THE COURT:  Do you want to respond to that?  Why can't

16   you just give them what you gave the grand jury?

17           MR. ZOLKIND:  Well, certainly, the transcript of the

18   proceedings before the grand jury are secret and can't be

19   disclosed.  To the extent discoverable evidence was shown to

20   the grand jury, it was already or not already, will be produced

21   in discovery to the defense.  And as I've said, we're not

22   intending to hide the ball.  So Mr. Lefcourt calls us up and

23   asks for some guidance, understanding, the different financial

24   records, happy to help him with that.

25           What I'm resisting is the idea that we should have to

JC2AAPARC                    Conference

1   put together some index of the case or months before a trial is

2   scheduled, identify exhibits.  There are complex white collar

3   cases charged in this district all the time.  I'm not familiar

4   with that ever being required of the government and don't think

5   it would make sense to require of the government in this case

6   or in any that I can think of.

7          I mean, the discovery is voluminous.  We're certainly

8   willing to agree to a schedule for a trial and motions that

9   gives the defense ample time to review the discovery.  I'm

10  happy to help them if they have questions.  But I think

11  committing us to coming up with an exhibit list is just very

12  premature and would be under inclusive and probably

13  over-inclusive in a way that wouldn't be fair to the

14  government.

15         THE COURT:  Well, I mean I generally agree.  I don't

16  think this is the kind of case where a bill of particulars is

17  required.  What's set forth in the indictment is extensive and

18  fairly straightforward in one sense.  It's true that the

19  discovery has been consistent with a bunch of communications

20  because there are a bunch of electronic communications that are

21  what's the focus of the indictment.  But I don't think this is

22  a situation where you can't tell what's being alleged to be the

23  charged conduct.  It's relatively clear.  So I am not going to

24  require some unusual kind of early disclosure of exhibits or

25  witness statements that are really not even I think within my

JC2AAPARC                    Conference

1  power to order disclosed.

2           But I think what I'll do is have you all come back in

3  about two months, something like 60 days and talk about where

4  you are.  I also encourage defense counsel to take government

5  counsel up on the offer of to communicate with them and ask for

6  guidance when there are particular things that could be helpful

7  as discovery is continued to be produced.  So what I would

8  suggest is that we come back in about two months and then at

9  that point set a motion schedule.  Not sure if we'll set a

10 trial date as well.  We'll see where things are.  Is there any

11 update on whether you expect to supersede?

12          MR. ZOLKIND:  Your Honor, certainly, the government's

13 investigation is ongoing and we think a superseding indictment

14 is likely.  But no decision has been made certainly and so it's

15 something that we are continuing to evaluate.  There's really

16 nothing else that we can say on that subject here except that

17 certainly once a trial date is set the government will make

18 every effort to ensure that a superseding indictment is brought

19 sufficiently in advance of trial so as not to require any

20 adjournment.

21          THE COURT:  OK.  Well, for now why don't we come back

22 in two months.  Is that OK with the government?

23          MR. ZOLKIND:  Yes, your Honor.

24          THE COURT:  Is that OK with defense counsel and

25 defendants?

JC2AAPARC                    Conference

1          (yes)

2          THE COURT:  All right.  So let's pick a date.  We

3     could do February 3rd which is a Monday.  I could do either a

4     morning or afternoon.

5          MR. ZOLKIND:  Fine for the government.

6          MR. BONDY:  Fine for us, your Honor.

7          THE COURT:  Morning or afternoon?

8          MR. BONDY:  Afternoon.

9          THE COURT:  Shall we do two o'clock on February 3rd?

10    All right.  So the next conference will be February 3rd, 2020,

11    at two o'clock p.m.  I'm not sure if it'll be in this courtroom

12    or another courtroom.  We are having a lot of elevator issues

13    in this building.  I'll let you all know on ECF where it's

14    going to be.  And at that conference I would anticipate talking

15    about where you are in terms of both the government's ongoing

16    production, defendant's review of the discovery and hopefully

17    we'll be in a position to set a schedule if there are any

18    anticipated motions.

19          MR. BONDY:  Couple other things, your Honor.  As the

20    Court probably knows, since our last appearance Mr. Parnas has

21    indicated that he wishes to comply with the House Intelligence

22    Committee subpoena.  And Item 11 of that subpoena, the items

23    requested, are all of the discovery materials that have been

24    seized in this case.  So we just want to be put on the record

25    that he is attempting to be compliant.  We've asked the

JC2AAPARC                    Conference

1    government if they would help us with this.  At this point we

2    don't have the lion's share of these materials but through no

3    fault of Mr. Parnas, number one.

4            Number two, and I'm not sure if the Court wants to

5    address it now, we have asked the government if they would be

6    willing to modify the terms of Mr. Parnas' supervision just to

7    give him a couple hours a day so that he can be a dad with his

8    five children, exercise and just lead his life.  He has been

9    fully compliant in every term of release.  He is here in court

10   today.  He does have a GPS monitor.  But we would ask the Court

11   if possible to just afford him an opportunity a few times a

12   week or everyday, two hours a day just so that he can be

13   outside.

14           THE COURT:  Would you like to respond?

15           MR. ZOLKIND:  Yes, your Honor.

16           With respect to the point about Mr. Parnas' desire to

17   comply with the House subpoena, the parties have agreed to a

18   protective order which the Court has signed.  That document

19   controls any parties' ability to produce documents to any third

20   party, which would include Congress.  But we've certainly said

21   we're happy to be in discussions with Mr. Parnas' counsel and

22   to work with him, to not object, to request that he may make to

23   the Court, to provide Congress with materials that were in his

24   personal possession at the time he received Congress's subpoena

25   and which may not be in his possession now because they were

1    seized by the government.

2            So with respect to that category of material that will

3    be forth coming in discovery, we're certainly willing to have

4    those conversations in a way that we hope can be productive.

5            THE COURT:  So now these are things which are expected

6    to be produced within the 60 days give --

7            MR. ZOLKIND:  No.  I think what we're talking about

8    here are really Mr. Parnas' devices.  So in other words, to the

9    extent that he had material in his devices that would be

10   responsive to a congressional subpoena and he had that in

11   possession at the time when he received the subpoena, doesn't

12   have it now because his devices were seized.  Once those

13   devices are extracted either by the FBI going through its

14   process or Mr. Parnas providing us with the password, he as I

15   said, he'll get that full extraction.  And then he would need

16   leave of your Honor to provide any part of that to Congress.

17   And what we said is if that's something that he had in his

18   possession at the time he received a congressional subpoena,

19   the government does not expect to object to such a request.

20           THE COURT:  Does that answer the question?

21           MR. BONDY:  I think so.  The problem is there are a

22   number of paper records that I understand have also been seized

23   and we would like to have them turned over.  We asked the

24   government if they would just handle them over to the house and

25   we don't have an answer to that.  So if what I'm hearing today

JC2AAPARC                    Conference

1   is that they do not object to modification of a protective

2   order so that we can comply with congressional subpoena, that

3   might solve the issue.  But again, I believe there's a number

4   of records in the government's possession, paper records, that

5   we still don't have and that we wish to turnover.

6          THE COURT:  They are responsive to a subpoena from the

7   House?

8          MR. BONDY:  Yes.  Because Item 11 to the rider of the

9   subpoena indicates that we are to turnover everything that has

10  been seized by the federal government by any law enforcement

11  agency pursuant to search.  So that would embrace everything in

12  this case, your Honor.

13         THE COURT:  Do you want to address the paper records

14  issue?

15         MR. ZOLKIND:  Yes, your Honor.

16         So part of the process that is going on right now in

17  terms of both collecting and beginning the extraction of these

18  electronic devices extends to a number of hard copy materials

19  that were seized in these premises searches.  So we are well on

20  our way to scanning that material in.  Once in it would be

21  produced to Mr. Parnas.  And same thing, if those were

22  materials that were in his possession when he received a

23  congressional subpoena, we are not going to be object to

24  Mr. Parnas seeking leave of the Court to produce that material

25  to Congress.

JC2AAPARC                    Conference

1          THE COURT:  So there's no process by which I realize

2    you are part of a completely separate branch of the government

3    from the house.  But there is no process by which the house

4    would get the materials directly from the U.S. Attorney's

5    Office.

6          MR. ZOLKIND:  I don't want to say that there is no

7    process by which that can happen.  But I think the process

8    we've talked about with Mr. Parnas' counsel and one that we

9    think just makes the most sense since they're the ones in

10   receipt of the subpoena, when they received this material from

11   us in discovery to make a quick application to your Honor that

12   we, as I said, don't expect to and then they can respond to the

13   subpoena they've received.

14         THE COURT:  OK.  So that seems fine with me.  It

15   certainly seems that there's a pubic interest in providing that

16   material pursuant to a subpoena.  And to the extent that there

17   is going to be requests for exception to what's protected under

18   the protective order for the purpose of producing it pursuant

19   to a subpoena of the House Committee, I certainly expect to

20   grant that request.  So that will not be a problem from my end

21   in terms of promptly granting that sort of request.

22         MR. BONDY:  We're just concerned about the timing,

23   obviously.

24         THE COURT:  Right.  Understood.  My hope is given the

25   public interest there, that the government would produce those

JC2AAPARC                    Conference

1    materials as soon as possible.

2              MR. ZOLKIND:  We will, your Honor.

3              THE COURT:  OK.

4              MR. BONDY:  And with respect to the pretrial

5    supervision?

6              MR. ZOLKIND:  I'm sorry.  Let me just make sure my

7    answer to the Court's last question was clear.  With respect to

8    producing that material as quickly as possible, I said we will.

9    And I am talking about the paper materials that just need to be

10   scanned in and made available.

11             With respect the electronic devices, the only way that

12   can happen in the immediate future is for Mr. Parnas to provide

13   us with a password.  And that is a request that we've made of

14   his counsel multiple times already in response to his request

15   to provide this material to Congress.  If we receive the

16   passwords he'll get it right away and he can produce responsive

17   materials to Congress and if he declines to provide us with a

18   password, then we'll go through our process and make it

19   available to be him as soon as it's available to us.

20             THE COURT:  OK.

21             MR. ZOLKIND:  With respect to the requested bail

22   modification, the government objects to the request.  I'm happy

23   to address it now, your Honor, or defer to the Court whether

24   you'd rather have it made in writing and solicit the views of

25   Pretrial Services, but I am happy to summarize the government's

1    position.

2              THE COURT:  Why don't you summarize the government's

3    position.  I may ask for a letter as well.

4              MR. ZOLKIND:  So first things first, your Honor, as

5    we've said before, it's clear that Mr. Parnas presents a

6    significant risk of flight, and just to go through quickly some

7    of the main reasons.

8              Number one, our investigation reveals that he has

9    extensive ties to foreign jurisdictions, notably, Ukraine where

10   he has connections to high-level, powerful people there.  He

11   have has ties to a billionaire oligarch living in Vienna,

12   someone who is fighting extradition on bribery charges.  That's

13   a person he has been paid by taking multiple trips to visit.

14   He is someone who flies not just by commercial carrier but by

15   private jet.  The crime that he is currently charged with

16   involves both foreign ties, i.e. facilitating donations from a

17   foreign person to a U.S. political campaign.  It also involves

18   deceit, i.e., the straw donors.  In addition to all of that, he

19   is under investigation for additional crimes.

20             I think it's clear that both because of charged crimes

21   and the additional crimes that he is under investigation for he

22   has a significant incentive to flee and his ties give him place

23   he could flee to and people who could certainly support him

24   financially if he were to lose the money he's put up on bail.

25             So with respect to home detention specifically, we

1   think it is critical and it's important because the home

2   detention with the electronic monitoring is what allows the

3   government to a reasonable degree of confidence know where he

4   is just about all the time.  And if he were given the sort of

5   free riding exception to once a day or a couple times a week

6   leave and go spend time with his family, it would create these

7   multiple blocks of time during which Pretrial Services has no

8   practical ability to track, no ability to make sure he's not

9   getting on a boat or if he is getting on a boat, he's not just

10  going out for the afternoon or not attempting to flee or

11  getting on a private plane or obtaining a passport through some

12  illicit means.  And if any of those things were to happen

13  during a period that he was authorized not to be home, there's

14  a significant risk that we wouldn't find out about it till it's

15  too late to stop him at the airport or something like that.

16          So we think there is very good reason why he is on

17  home detention right now with GPS monitoring along with the

18  other conditions is sufficient to not require that he be

19  detained pending trial but we would not consent to this

20  proposed modification.

21          THE COURT:  OK.

22          MR. BONDY:  Your Honor, as I understand, Mr. Parnas

23  has GPS device on his ankle.  That is to say, the government

24  knows when he moves from one room to another in his home.  He

25  is allowed to go to religious services which would mean he

JC2AAPARC                    Conference

1    would be out.  He is present in court.  He is out.  He is

2    allowed to see Mr. McMahon in Virginia and Washington D.C.  He

3    is allowed to see me in New York.  He has five children living

4    at home, four when his oldest son is back in law school.  He is

5    married.  He lives in a relatively small gated community.  And

6    what we are asking is merely that he be allowed to get outside

7    particularly since discovery is going to take as long as it's

8    going to take and to do important things like exercise, spend

9    time with his children and just get outside and see the air and

10   the sun.  If he had been detained he would be able to be

11   outside at least for some period of time that's greater than

12   the period of time that the government is now proposing.  And

13   so we respectfully request that he be afforded a modicum of

14   time several times a week if you'd like to start, that he can

15   be outside with his family and furthering his health.

16           THE COURT:  I think what I would like is I usually

17   like to get the Pretrial Services officer to do -- so, if you

18   would submit a letter with a respect and indicate the Pretrial

19   Services officer or you can indicate a response from the

20   government and then I'll consider that request after hearing

21   from you.

22           MR. BONDY:  Thank you.

23           THE COURT:  Did you want to add something else?

24           MR. LEFCOURT:  Yes, your Honor.

25           I asked the government, as your Honor just did,

JC2AAPARC                    Conference

1   whether there was any electronic surveillance.  And they said

2   there is no Title III.  I said, Is there any other kind of

3   interception advice of warrant, any national security agency or

4   other agencies interceptions in this matter?  They said, there

5   is no Title III.

6         I then wrote a letter pursuant to 18 U.S.C. 3504 which

7   I've handed up to the Court.  And in that letter, pursuant to

8   that section, we request that the government check with all

9   agencies that would have jurisdiction to determine whether

10   there has been any interceptions.  And the reason why I ask

11   that, your Honor, is Count One has allegations which concern

12   Ukraine with officials with the government of Ukraine as well

13   as the United States embassador.

14         Count Four in which my client is charged the only

15   count in this charge has allegations with a foreign national

16   from Russia.  Under the circumstances, I've watched part of

17   those hearings.  Our national security experts testified they

18   were involved in various aspects which concern matters in this

19   case.  So under 3504, all the government has to do is affirm or

20   deny after checking with the agencies that could be involved.

21   It's not about Title III.  It's about no authorization

22   interceptions that could have occurred.  And if they deny them,

23   they deny them.  What they have said is not only is there no

24   Title III but they say that they do not intend to use any such

25   surveillance.  Not that there was no such surveillance, they

JC2AAPARC                    Conference

1    don't intend to use any such surveillance.

2              So I'm ask the Court to ask the government to respond

3    to under 3504.  They said it's premature because that applies

4    to a proceeding.  We are in a producing.  We are in a hearing.

5    We are an indicted case.  This is the time.  If there were such

6    surveillance without any Court authorization, then there could

7    flow from that taint of the evidence in this case.  I do not

8    know.  But it's a reasonable request under 3504.

9              THE COURT:  Are you looking for potentially

10   exculpatory material under Brady?

11             MR. LEFCOURT:  If there non Court authorized

12   interception of my client with a foreign national or with other

13   Ukrainians or what have you, that was the subject that started

14   the investigation that led to evidence of investigation and

15   it's not authorized by any court, the citizens of itself has

16   the right to move to suppress it and any lengths leading to --

17   so that is what we're looking for.

18             THE COURT:  OK.  This is not a statute that I've dealt

19   with before but I may need to take a look at it.

20             Would you like to respond, Mr. Zolkind?

21             MR. ZOLKIND:  It might just be useful to start -- I'll

22   start by quoting part of what we said in response to the

23   defense's letter.  We said:

24             "As we have previously told you, the government did

25   not obtain or use Title III intercepts in the course of this

JC2AAPARC                    Conference

1   investigation.

2          Additionally, the government does not intend to use

3   any information that was obtained or derived from the Foreign

4   Intelligence Surveillance Act, (FISA) or other forms of

5   surveillance identified in your letter.

6          We think that resolves any question.  There was no

7   Title III intercept.  We can't comment on whether or not there

8   existed a FISA intercept or some other sort of similar

9   intercept.  That information would be classified.  But what

10  we're saying is that we are not relying on such an intercept or

11  on anything derived from such an intercept.  So I think that

12  resolves the question.

13         With respect to Section 3504, the government -- that

14  statute and I'll confess I'm also not an expert in it -- is

15  that, what I should say is we've spoken to people who are who

16  deal with it on a more regular basis.  Our understanding is

17  that it applies in a proceeding, meaning a situation in which

18  the government is offering evidence.  So, hearing or trial or a

19  grand jury proceeding, something like that.  So it would arise

20  in a context where the government offers evidence against

21  Mr. Lefcourt's client and then he could raise an argument under

22  that statute that the evidence is tainted by some unlawful act

23  by the government.  That is not the situation here.  We're not

24  offering any evidence as we stand here today.  He has no basis.

25  So that's one reason it doesn't apply.

1           A separate additional basis it doesn't apply is that

2    you need more than to just say there's a foreign national

3    involved in one of the multiple counts in the indictment.  You

4    need more than mere conjecture to say that he suspects that

5    certain evidence being introduced against his client is tainted

6    by some unlawful act.  So, it's premature.  It's based on mere

7    conjecture.

8           And beyond all else, I think that the concerns he has

9    at base are resolved by the government's representation.

10   Again, there is no Title III and that we are not relying on any

11   FISA derived evidence or evidence derived from the other types

12   of surveillance mentioned in the letter.

13          THE COURT:  Mr. Lefcourt, do you have any authority on

14   this that would make it the government's burden to produce it

15   in a situation where the government is saying it's not using

16   any such evidence derived in that manner?

17          MR. LEFCOURT:  Your Honor, I will submit a letter to

18   the Court, but just the theory of what the government is

19   operating on is not correct.  If there was illegal barring

20   interceptions that led to evidence in this case maybe by

21   vicarious means, maybe that the government's told by somebody

22   or somebody in the FBI was told to look at this or look at

23   that, if that were the basis, if that came from an illegal

24   source that wasn't authorized by any court, then that would be

25   tainted evidence.  And it's just the fruit of the poisonous

1   tree.

2          Conjecture, if the CIA and NSA can't keep a secret

3   from me, then we're all in trouble.  Of course I don't know.

4   That's why 3504 exists so that one could make a request under

5   the appropriate case.  This is the appropriate case because we

6   would all saw that there national security ramifications to

7   some of the conduct in this case.  So it's simple checking with

8   the agencies and telling the truth.  Maybe they tell the court

9   without admitting something confidential or national

10  security-wise.  But the court ought to know that it didn't

11  start out somewhere somehow with an unauthorized interception.

12         I have been in FISA cases.  The produce a FISA

13  warrant.  So this is clearly not FISA material.  Otherwise they

14  we would have told us about it.  It's something else.  And

15  we've seen from news articles that there are massive

16  interceptions of various kinds with algorithms to find out

17  which cases ought to be focused on.  And that's all we're

18  requesting, an affirmation or denial that there is any of this

19  kind of surveillance.

20         THE COURT:  OK.  Well, the government has responded to

21  your letter.  Why don't you, since I'm not that familiar the

22  statute, why don't you submit a letter about any authorities

23  you think I need to see and then if there is any particular

24  requests, why don't you make that in the letter and then I'll

25  take a look at it.

JC2AAPARC                    Conference

1          MR. MACMAHON:  Your Honor, I think your question about

2     whether it could be exculpatory information, I think really

3     hits the nail on the head because just for the government to

4     say they are not going to use any of this information doesn't

5     answer the question of whether they've reviewed it or they've

6     made any searches as to whether it's discoverable under Brady.

7     There are statutory ways that the government can do this.  They

8     can invoke the SEPA statute by itself and bring this

9     information before you and say, I have information of an

10    intercepted phone call.  Is this discoverable?  Is it not

11    discoverable?  So they have the right to do that.  But the

12    government can't just say, in response to a request that all of

13    us joined in that we're not going to use this without peeling

14    back the onion a little bit and saying, even again as Mr.

15    Lefcourt has said it's done in ex parte, that's not really,

16    that doesn't comply with the Brady obligations and it doesn't

17    advance us especially when all these people are, not all of

18    them, many of them are oversees and their phone calls could

19    have been intercepted in many ways other than Title III and

20    including ways that are even covered by FISA.

21          So we would suggest we need to put that in a letter to

22    you as well so the Court can take a closer look at this as to

23    whether the government can really just tell you there may have

24    been on other surveillance but we're not going to rely on it.

25    We don't think that the would -- anybody's constitutional

JC2AAPARC                    Conference

1    rights on this side of the aisle, your Honor.

2            THE COURT:  Mr. Zolkind.

3            MR. ZOLKIND:  Your Honor, our letter also goes on to

4    say to the extent the defense's letter to us is intended as a

5    "request for discoverable materials under Rule 16 Brady v.

6    Maryland or Giglio.  The government's already producing Rule 16

7    discovery and will continue to do so on a rolling basis.

8            I'm summarizing now.

9            And the government recognizes its obligations under

10   Brady and its progeny and the same thing with respect to

11   Giglio.

12           Put differently, the government is fully aware of its

13   Brady and Giglio obligations, as well as Rule 16 obligations

14   don't depend on whether material happens to be classified or

15   not, and so we're taking those responsibilities very seriously.

16   At this point, based on what we've identified to date, we don't

17   anticipate any classified discovery, nor do we anticipate

18   feeling a SEPA motion but we're continuing to review all the

19   appropriate material.  And if that changes, we will promptly

20   notify the Court and the defense.

21           THE COURT:  OK.  Thank you.  I'll look at any

22   authorities or any requests you make and any letters.

23           Anything further for today?

24           MR. BONDY:  No, your Honor.

25           THE COURT:  All right.

JC2AAPARC                    Conference

1          MR. ZOLKIND:  Just a request, your Honor, to exclude

2     time in the interest of justice, to enable the government to

3     continue producing discovery and to enable the defense to

4     review discovery and to evaluate any motions they may want to

5     make.

6          THE COURT:  All right.  I grant the application.

7          Is there any objection, Mr. Bondy?

8          MR. BONDY:  No, your Honor.

9          MR. BLANCHE:  No, your Honor.

10          MR. MACMAHON:  No, your Honor.

11          MR. LEFCOURT:  No, your Honor.  Thank you.

12          THE COURT:  I grant the application that excludes time

13     under the Speedy Trial Act from today's date to February 23,

14     2020, the date of our next conference.  I find the ends of

15     justice outweigh the interests of the public and each of the

16     defendants in a speedy trial given the time needed for the

17     discovery to be produced by the government to the defendants

18     and defense counsel and for the defendants and defense counsel

19     to review the discovery and consider any possible motions.

20          So time is excluded to February 3, 2020, and I'll see

21     you all on that date at two o'clock.

22          Thanks, everybody.  We are adjourned.

23          (Adjourned)

24

25