UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

UNITED STATES OF AMERICA

         - v. -

DAVID CORREIA,

               Defendant.

              :
              :
              :
              :    19 Cr. 725 (JPO)
              :
              :
              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## THE GOVERNMENT'S OPPOSITION TO DEFENDANT
## DAVID CORREIA'S PRIVILEGE MOTION

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Douglas S. Zolkind
Rebekah Donaleski
Nicolas Roos
Assistant United States Attorneys
     *- Of Counsel -*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 5

    I.     The DHL Package and the Preexisting Devices and Notebooks Contained Within It Are Not Protected by Attorney-Client Privilege .................................................... 5

        A.    Applicable Law .................................................................................................. 5

        B.    Discussion ......................................................................................................... 8

    II.    The Work Product Doctrine is Inapplicable to the DHL Package ................................. 14

        A.    Applicable Law ................................................................................................ 14

        B.    Discussion ....................................................................................................... 16

CONCLUSION .................................................................................................................... 19

## PRELIMINARY STATEMENT

A defendant cannot render evidence privileged simply by mailing it to his attorney.   An armed robber's gun does not become privileged because the robber provides it to his counsel.   A corporation's business emails do not become privileged just because counsel is "cc'd."   And the hundreds of thousands of documents, images, audio/video files, and other content contained on David Correia's electronic devices and notebooks—content that existed prior to, and independent of, Correia consulting with a lawyer about this case—did not become privileged merely because he tried to send those materials to his counsel knowing he was about to be arrested.   Correia's argument would amount to a dramatic and unsupported expansion of the attorney-client and work-product privileges.   His claim has been roundly rejected by courts, including the Supreme Court and Second Circuit, and should be rejected here.

Simply put, a non-privileged object or document does not become privileged merely because it is sent to a lawyer to obtain legal advice.   Correia knew he would be arrested upon entering the United States.   He ensured that when he was arrested, he did not have a single electronic device or piece of relevant evidence on his person because he had sent them to his attorney.   But it is black-letter law that while the attorney-client privilege protects certain confidential communications between a client and counsel, the privilege does not protect the underlying information contained within such communications.   So even assuming *arguendo* that Correia's DHL package constituted a privileged communication—though it contained no letter, memorandum, or other communicative statement—the privilege would not extend to the information contained within that package, including the multiple electronic devices and notebooks that existed prior to Correia seeking the advice of counsel on this case.

Nor are Correia's devices and notebooks protected by the work-product privilege, as that privilege applies only to materials prepared by or at the behest of counsel in anticipation of litigation.   Correia erroneously claims that by intercepting the DHL package, the Government learned what materials counsel had advised Correia to collect.   On the contrary, the DHL package contained no such communication.   The Government "learned" that fact—assuming it is true—only through counsel's briefing on this motion.   In any event, it is simply false to suggest that the DHL package contained a carefully curated selection of relevant documents.   It contained the opposite: the entirety of Correia's multiple devices and notebooks, with no indication as to what particular documents or portions of documents may be relevant.   The seizure of those materials revealed nothing about counsel's "defense planning" (Mot. 13).

This Court, based upon an affidavit that made clear the DHL package was sent by Correia to his counsel, found probable cause to believe that the package and its contents contained evidence, fruits, and instrumentalities of federal crimes.   The Government was fully justified in seizing the package, and should be permitted to immediately review its contents, with the exception of any particular documents identified as potentially privileged by the Government's filter team.

## BACKGROUND

On or about October 21, 2019, the Court signed a search warrant authorizing the Government to search a package sent via DHL from Correia to his counsel (the "DHL Package Warrant").   The supporting affidavit explained the following, among other things:   On October 9, 2019—the same day that Lev Parnas and Igor Fruman were arrested—agents with the Federal Bureau of Investigation ("FBI") attempted to arrest Correia at his home, but learned from his wife

that Correia was out of the country.   Shortly thereafter, Jeff Marcus, Esq., contacted the FBI, identifying himself as Correia's counsel.   Counsel arranged for Correia to fly into New York on October 14, 2019, arriving on October 15, 2019, in order to surrender.   Counsel confirmed that Correia was aware that he would be arrested by the FBI upon landing in the United States.[1]   On October 14, 2019, however, counsel advised the FBI that Correia had left his passport at a DHL store, where he was mailing something before flying back to the United States, and could not board the plane without his passport.   In subsequent emails to the Government, counsel stated only that Correia had left his passport at a "local" store and had arranged to fly back the next day, October 15, 2019, arriving on October 16, 2019.   Correia was arrested on October 16, 2019.   Although Correia still had a phone case, multiple phone chargers, and charging cords with him, he did not have a single electronic device on his person.

The affidavit in support of the DHL Package Warrant further stated that "materials obtained from DHL" reflected that Correia had mailed the DHL package to his counsel.   The affidavit noted that the package's listed contents—provided by the sender, Correia—apparently included a phone, tablet, and hard drive, which "do not appear to be items that were created for the purpose of legal advice but rather appear to have been sent by mail so that they would not be on Correia's person when he arrived in the United States to be arrested."   The affidavit stated that the Government would nonetheless "utilize a filter review process, including through the use of a filter

---

[1]     By this time it had already been publicly reported that the FBI had executed search warrants when Parnas and Fruman were arrested.   *See, e.g.*, Miami Herald, *Florida Businessmen with Giuliani, Ukraine Ties Arrested on Campaign Finance Charges* (Oct. 11, 2019), *available at* https://www.miamiherald.com/news/politics-government/article235903397.html.

3

team comprised of agents and prosecutors who are not part of the prosecution team, for review of the [DHL package and its contents]."

On or about October 22, 2019, the Government executed the DHL Package Warrant.   The label on the outside of the package indicated the contents included "tablet & a book & a mobile & hard drive (return goods)."   The package contained an iPhone, a Microsoft Surface Pro computer, an external hard drive, and two notebooks, without any cover letter, memorandum, or note to the package's receipient.   In the course of the filter team's review of the notebooks, it flagged certain portions of the notebooks as potentially privileged.   Thus, when the Government produced scanned copies of those notebooks to Correia's counsel, the Government noted:

> In the course of reviewing these materials for privileged information, the Government's filter team identified items that potentially could be privileged.   Accordingly, those items were withheld from the prosecution team and were redacted from the materials that are being produced in discovery.   Since the filter team identified those items as only potentially privileged because the records do not contain adequate information to make a definitive assessment, the filter team will be providing the unredacted materials to you.   If you believe any of the items that were redacted, or any other items, are privileged, please so indicate by January 20, 2020, and provide the factual basis for such a privilege assertion to the filter team.   After that date, the materials in their unredacted form will be released to the prosecution team and produced in discovery.

(Letter to Correia's counsel dated January 10, 2020.)

Correia's counsel thereafter informed the Government that, in their view, *all* of the materials contained in the DHL package are privileged, including all of the various documents, images, and other content on his electronic devices.   After thoroughly researching this claim, the Government informed counsel that it believed the claim was unsupported by governing law.

4

Nonetheless, the Government has refrained from further review of any material obtained pursuant to the DHL Package Warrant pending the resolution of this motion.

## ARGUMENT

I.    **The DHL Package and the Preexisting Devices and Notebooks Contained Within It Are Not Protected by Attorney-Client Privilege**

### A.  Applicable Law

The "attorney-client privilege . . . is . . . the oldest of the common law privileges dating back to the early 16th century . . . and has encouraged clients to confide in their attorneys fully and frankly, free from the apprehension of disclosure, for nearly 500 years." *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992) (citations omitted).  However, "[b]ecause the attorney-client privilege remains an exception" to "the testimonial compulsion for every witness' evidence," the privilege "may be invoked to hold secret only those communications made in confidence to a lawyer to obtain legal counsel that would not have been made without the existence of the privilege." *Id.* (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976); *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)).  Thus, "[a]lthough an attorney-client communication is privileged and may not be divulged, . . . the underlying information or substance of the communication is not . . . so privileged." *Id.* at 945 (citations omitted).  "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997).

Applying the distinction between a confidential *communication*, which may be privileged, and the underlying *information*, which is not privileged, courts have resoundingly held that non-privileged materials do not become privileged merely because they are provided to a lawyer to

5

obtain legal advice.   In *Fisher v. United States*, the Supreme Court squarely addressed this issue, analyzing a situation where taxpayers—upon learning they were under investigation for federal tax crimes—obtained various records from their accountants and transferred the records to their counsel in order to obtain legal advice.   425 U.S. at 393-94.   The Court held that the attorney-client privilege posed no impediment to the government's demand for the documents because while "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged," "[t]his Court and the lower courts have . . . uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."   *Id.* at 403-04 (citing cases).

Indeed, as the Second Circuit held nearly sixty years ago—rejecting a claim that the attorney-client privilege applied to various documents provided by a client to his counsel—"the attorney-client privilege protects only those papers prepared by the client for the purpose of confidential communication to the attorney or by the attorney to record confidential communications," but "pre-existing documents and . . . records not prepared by the [client] for the purpose of communicating with their lawyers in confidence . . . acquired no special protection from the simple fact of being turned over to an attorney."   *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962); *see also United States v. Walker*, 243 F. App'x 261, 623-24 (2d Cir. 2007) ("putting otherwise non-privileged business records . . . in the hands of an attorney . . . does not render the documents privileged or work product (citing *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170-71 (2d Cir. 2004))).   "Any other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney."

*Colton*, 306 F.2d at 639; *see also Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1165 (2d Cir. 1992) (attorney-client privilege did not apply to phone records "given by the client to his attorney in the course of seeking legal advice" because "[t]hose documents, though transmitted to [counsel], are not the client's confidential communications, are not within the privilege, and did not become exempt from discovery by that transmission" (citing *Fisher*, 425 U.S. at 403-04; *Hickman v. Taylor*, 329 U.S. 495, 508 (1947) ("the protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness"))).

Courts in this District have uniformly applied these precedents to reject the notion that preexisting documents are exempt from disclosure on attorney-client privilege grounds merely because they were conveyed to counsel in order to obtain legal advice. *See, e.g.*, *Valassis Commc'ns, Inc. v. News Corp.*, No. 17 Civ. 7378 (PKC), 2018 WL 4489285, at *2 (S.D.N.Y. Sept. 19, 2018) ("The attorney-client privilege does not extend to preexisting documents that a client sends to the client's lawyer. . . . Preexisting business documents that are sent to a lawyer . . . cannot be affected by any after-the-fact advice received from the lawyer; they are simply not privileged." (citations omitted)); *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 104 (S.D.N.Y. 2017) ("'[C]over' communications," that is, "documents [that] are merely transmittal letters or emails [to or from counsel] that enclose or attach other documents . . . neither furnish nor request legal advice and do not reveal any privileged communications" and are therefore not exempt from disclosure "merely because they were sent to or from counsel"); *Duttle v. Bandler & Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989) ("[T]here are several documents that consist of communications between [client] and its attorneys that merely convey preexisting documents

7

and do not reflect the provision of legal advice.   The preexisting documents are not privileged . . . and the transmittal letters do not contain confidential communications." (citation omitted)); *Perez v. Bangkok Bank Ltd.*, No. 87 Civ. 1753, 1988 WL 142470, at *3 (S.D.N.Y. Dec. 27, 1988) (Transmitting business records to an attorney for legal advice on them "does not invest them with a privilege they would not otherwise have." (citations omitted)).

### B.  Discussion

Correia claims that (i) the mailing of the DHL package to his counsel constituted a "communication," (ii) that communication was privileged, and (iii) therefore, the items contained within the package, including the full contents of his multiple electronic devices and notebooks, are also privileged.  This argument fails, *first*, because the DHL package itself constituted, at most, a "transmittal letter," not a privileged communication, and *second*, because even assuming *arguendo* that the package itself constituted a privileged communication, the preexisting non-privileged materials within that package did not become privileged by virtue of being included in the package.

As an initial matter, the DHL package itself did not constitute a privileged communication. According to the Government's filter team, the package did not contain any letter, memorandum, or other statement from Correia to his counsel.  There was nothing within the package that conveyed any assertion by Correia regarding why he included the particular devices and notebooks, what information they contained, or what legal advice (if any) he was seeking based on the included materials.   Thus, at *most*, the DHL package constituted a sort of "cover communication" or "transmittal letter," intended to do no more than convey the enclosed materials. Such communications are not privileged.  *See Sec. Inv'r Prot. Corp.*, 319 F.R.D. at 104

("'[C]over' communications" or "transmittal letters" to counsel that "enclose or attach other documents" "do not reveal any privileged communications" and are not privileged.); *Duttle*, 127 F.R.D. at 52 (rejecting assertion of privilege over "transmittal letters [that] do not contain confidential communications" and "merely convey preexisting documents" to counsel); *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 149 (S.D.N.Y. 2003) (holding there was "no basis" for claim of privilege over a "cover sheet contain[ing] no substantive information whatsoever," which "mere[ly] transmitt[ed] non-privileged documents" to counsel); *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 2001 WL 1356192, at *5 (S.D.N.Y. Nov. 2, 2001) (rejecting assertion of privilege over a "cover sheet" used by client to send non-privileged materials to counsel via fax (citing cases)); *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 635 (W.D.N.Y. 1993) ("transmittal letters which are devoid of legal advice and disclose[] nothing which could be considered privileged [are] not privileged" (internal quotation marks and citation omitted)).   In sum, a noncommunicative mailing from Correia to his counsel, which merely forwarded his devices and notebooks, is not itself privileged.[2]

In any event, even assuming *arguendo* that the mailing was itself a privileged communication (though it was not), the preexisting devices and notebooks are not privileged by virtue of being included in the package.[3]   It is black-letter law that while "an attorney-client

---

[2]     Of course, at the time the Government seized the DHL package, it did not know whether it would contain a privileged letter, memorandum, or other statement from Correia to his counsel. But that is why the Government ensured that a filter team would review everything within the package to identify and exclude any potentially privileged materials before releasing the remaining material to the prosecution team.

[3]     The Government's filter team has reviewed, and will continue to review, the content contained within the various electronic devices and notebooks to determine whether any individual documents or portions of documents may be potentially privileged (and indeed, the filter team has

communication is privileged and may not be divulged, . . . the underlying information . . . is not . . . so privileged." *In re Six Grand Jury Witnesses*, 979 F.2d at 945 (citations omitted).   A straightforward application of this principle is that otherwise non-privileged materials do not become privileged merely because they are provided to counsel in order to obtain legal advice. *See, e.g.*, *Fisher*, 425 U.S. at 403-04 (the "[Supreme] Court and the lower courts have . . . uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice" (citing cases)); *Colton*, 306 F.2d at 639 ("pre-existing documents and . . . records not prepared by the [client] for the purpose of communicating with their lawyers in confidence . . . acquired no special protection from the simple fact of being turned over to an attorney"); *In re Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d at 1165 (rejecting assertion of privilege over non-privilged records "given by the client to his attorney in the course of seeking legal advice"); *Valassis Commc'ns, Inc.*, 2018 WL 4489285, at *2 (rejecting assertion of privilege over "preexisting documents that a client sends to the client's lawyer").[4]

---

already segregated certain material on that basis).   Here, the Government is arguing only that the devices and notebooks are not privileged *in toto*.

[4]      Correia accuses the Government of "invent[ing] a new requirement for privileged attorney-client communications – namely that it is limited to 'items that were created for the purpose of legal advice.'"   (Mot. 7 (quoting search warrant affidavit).)   But as demonstrated above, courts routinely examine whether a document conveyed to counsel was "preexisting"—and thus not privileged—or created at the direction or advice of counsel—and thus privileged.   The Government did not "invent" any new privilege requirement.

If the law were as Correia claims, a person could "prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney." *Colton*, 306 F.2d at 639. But lawyers "are not citadels in which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality."[5] *Renner*, 2001 WL 1356192, at *5. Indeed, given the sheer volume of material included by Correia within the DHL package, it would be particularly shocking if it were all exempt from disclosure. The FBI's preliminary analysis indicates that Correia's hard drive contains tens of thousands of documents, images, and audio and video files; his iPhone contains tens of thousands of documents, images, and audio and

---

[5]     The affidavit in support of the DHL Package Warrant noted that it "appear[ed]" that Correia sent his devices and notebooks to his counsel "so that they would not be on Correia's person when he arrived in the United States to be arrested." Correia devotes three pages of his brief to arguing that this observation, and a similar remark in the Government's letter-motion for a briefing schedule, amount to a "request that the Court draw an adverse inference"; that such an adverse inference would violate Correia's rights under the Fifth and Sixth Amendments; and that the Court should therefore not only decline to draw such an adverse inference but should also "strike the Government's unlawful requests" for such an inference. (Mot. 10-13.) This argument should be swiftly rejected.

    *First*, the circumstances strongly suggest that Correia sent his devices and notebooks to his counsel in order to avoid having them seized by the Government. Correia mailed the package immediately before returning to the United States to be arrested, after it was publicly known that the FBI had executed search warrants in this case. The Government thus did not seize any electronic devices from Correia's person, whereas it seized devices from each of Correia's co-defendants because they did not have advance notice of their arrests. These circumstances are relevant because they highlight the extent to which Correia is seeking to do precisely what is not permitted: using his counsel as a "citadel" to render non-privileged material exempt from disclosure. *Second*, the Government is not arguing that Correia did not have the right to exercise his Fifth and Sixth Amendment rights, but it is arguing that Correia does not have the right to frustrate the Government's ability to lawfully seize non-privileged evidence. *Third*, the Government has not asked the Court to draw any "adverse inference" relevant to the instant motion, and as such, Correia's claim that such an inference would violate his constitutional rights is moot. And *finally*, it is unclear how or why the Court would "strike" (as opposed to simply denying) the Government's "request" for such an adverse inference, but this should also be denied as moot since the Government has not made any such request.

11

video files, as well as other data such as internet browsing history and location information; and his Suface Pro computer contains hundreds of thousands of documents, images, and audio and video files.   It is undisputed that these materials, as well as his notebooks, existed prior to Correia's communications with counsel on this case.   They were not, *in toto*, created at the direction or advice of counsel, and did not become privileged merely because Correia sought to send them to his counsel.

Correia argues that it is significant that his counsel's *ex parte* declaration "unequivocally demonstrates that the purpose of the [DHL package] communication was to assist with counsel's preparation of Mr. Correia's legal defense in this case."   (Mot. 7.)   But that declaration—which the Government of course has not reviewed—is wholly irrelevant.   The cases cited above all stand for the proposition that even where preexisting non-privileged documents are sent to counsel *in order to obtain legal advice*, the preexisting documents themselves are not privileged.   *See, e.g.*, *Fisher*, 425 U.S. at 403-04; *Colton*, 306 F.2d 633 at 639; *In re Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d at 1165.   Tellingly, Correia suggests that the materials that he sent to his counsel "would not be privileged had the Government obtained [them] in some other fashion."   (Mot. 8.)   But this argument is flatly inconsistent with the Supreme Court's ruling that "pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."   *Fisher*, 425 U.S. at 403-04.   Simply put, if the Government could have obtained the materials directly from Correia—a proposition Correia does not dispute—the attorney-client privilege posed no obstacle to the Government

12

obtaining them from counsel after Correia transferred them, or (as here) obtaining them from the shipping company.[6]

Finally, there is no merit to Correia's purported concern that failing to accord privileged status to the DHL package would undermine his Sixth Amendment right to counsel.   (Mot. 9-10.) "[I]t must not be forgotten that the attorney-client privilege . . . stands in derogation of the search for truth so essential to the effective operation of any system of justice: therefore, the privilege must be narrowly construed."   *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973)).   Correia has a protected constitutional right to provide materials to his counsel to aid in his defense.   But he has no right to thereby deprive the Government and the public of evidence of federal crimes that, but for his transmission to counsel, the Government could have obtained directly from Correia.

---

[6]    Correia places substantial and undue weight on a Fifth Circuit decision from 1980.   (*See* Mot. 6, 8, 10 (citing *United States v. Hankins*, 631 F.2d 360 (5th Cir. 1980)).)   But that decision— which has been cited 8 times in 40 years, never by a court in this Circuit—is easily distinguishable. There, a lawyer was held in contempt after refusing to answer, under oath, questions such as, "What books and records belonging to [your client] [did] you examine?" and other questions as to whether the lawyer "had seen certain work papers" prepared by or for his client.   *Hankins*, 631 F.2d at 364.   Reversing the finding of contempt, the Fifth Circuit explained that the attorney-client "relationship would be seriously weakened if the client had the fear that the lawyer could disclose to an opposing party the identity of the client's records that he had used to build up his case."   *Id.* at 365.   Here, by contrast, Correia's counsel is not being subpoenaed to testify as to what documents they are reviewing or using to "build up his case."   Nor could the Government glean such information from the DHL package, which contained hundreds of thousands of undifferentiated documents, images, and other content within Correia's devices and notebooks. Indeed, the DHL package itself provides no reason to believe that counsel or Correia believed the enclosed content would be relevant to the case.   To the contrary, as discussed above, the circumstances strongly suggest that Correia simply did not want the materials to be seized when he was arrested.   In any event, to the extent that *Hankins* conflicts with the Supreme Court and Second Circuit precedent cited above, it should be disregarded.

## II.    The Work Product Doctrine is Inapplicable to the DHL Package

### A.  Applicable Law

"The attorney work product doctrine . . . provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial. . . . [T]he work product doctrine permits discovery of [such material] 'only upon a showing that the party seeking discovery has substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means,' Fed. R. Civ. P. 26(b)(3).   In the context of a pending criminal prosecution, the doctrine is even stricter, precluding discovery of documents made by a defendant's attorney or the attorney's agents except with respect to 'scientific or medical reports.' Fed. R. Crim. P. 16(b)(2)."   *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 383 (2d Cir. 2003); *see also United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir.1998) (work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategies 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries" (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947))).

As with the attorney-client privilege, "the party invoking [the work product] privilege bears the burden of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 384.   "The burden is a heavy one, because privileges are neither 'lightly created nor expansively construed.'" *Id.* (quoting *Nixon*, 418 U.S. at 710).   "Instead, privileges are recognized 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

14

"[T]he principle underlying the work product doctrine—sheltering the mental processes of an attorney as reflected in documents prepared for litigation—is not generally promoted by shielding from discovery materials in an attorney's possession that were prepared neither by the attorney nor his agents." *Id.* (citing *In re Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d at 1166–67 (rejecting work product claim with respect to certain business records in possession of former attorneys of criminal target)); *see also Adlman*, 134 F.3d at 1202 ("It is well established that the work-product privilege does not apply" to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation," but rather, applies only to "document[s] . . . created because of the prospect of litigation.").

A "narrow exception to the general rule that third-party documents in the possession of an attorney do not merit work product protection" exists where "the party asserting the privilege [can] show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386 (internal quotation marks and citations omitted); *see also id.* (noting that counsel's "conclusory *ex parte* affidavits" failed to show that the documents at issue were "only a subset of the materials subpoenaed and that this subset was created pursuant to a carefully orchestrated defense strategy"). Most commonly, this exception is invoked not to "shield[] counsel from producing certain documents," but rather, to shield counsel from the "oblig[ation] [of] identify[ing] from voluminous discovery materials those discrete documents that the attorney had selected for review with his client." *Id.* at 385 (citing cases).

15

### B.  Discussion

Correia argues that "[t]he Government's seizure of the mailing to Mr. Marcus is an attempt to capitalize on Mr. Correia's defense planning" and that the search "invades counsel's mental impressions" because, according to counsel's *ex parte* affidavit, "Mr. Correia's mailing to Mr. Marcus reflected a collection of materials undertaken at the direction of counsel based on counsel's mental impressions of the subject areas and evidentiary categories relevant to the criminal case pending against Mr. Correia."   (Mot. 13.)   This argument is baseless.

As an initial matter, Correia does not contend that any of the material contained within the DHL package—that is, the content of his iPhone, Surface Pro computer, hard drive, or notebooks—were prepared by or at the behest of counsel in relation to the pending criminal case. That concession is largely dispositive of his claim that the work-produt privilege applies since "[i]t is well established that the work-product privilege does not apply" to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation."  *Adlman*, 134 F.3d at 1202.

Nor is there any merit to Correia's effort to squeeze the hundreds of thousands of documents at issue into the "narrow exception" where "the party asserting the privilege [can] show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents."  *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 386 (internal quotation marks and citations omitted).   By searching the DHL package, the Government learned nothing about Correia's counsel's "defense planning."   Assuming *arguendo* it is true that Correia selected his iPhone, computer, hard drive, and notebooks "at the direction of counsel based on counsel's

16

mental impressions of the subject areas and evidentiary categories relevant to the criminal case"
(Mot. 13), the Government learned that "fact" only through counsel's briefing on the instant
motion.   As counsel is well aware, the Government's assumption had been that Correia simply
sent his devices and notebooks to counsel so that they would not be in his possession and subject
to seizure when he was arrested.

In any event, it is preposterous to analogize the content of Correia's preexisting devices
and notebooks to the "questionnaires and notes taken by . . . attorneys" during an "internal
investigation."   (Mot. 13 (internal quotation marks omitted).)   Nor can the fact that Correia
mailed all electronic devices in his possession overseas to counsel plausibly reveal anything about
Correia's defense strategy.   Like the *ex parte* affidavits held insufficient in *In re Grand Jury
Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, the *ex parte* affidavit here (though the
Government has not reviewed it) cannot possibly show that the materials constitute a mere "subset
. . . created pursuant to a carefully orchestrated defense strategy."   318 F.3d at 386.   If Correia or
his counsel has identified particular documents or portions of documents within the devices and/or
notebooks that are relevant to his defense, the Government has no clue what those may be.   *See
In re Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d at 1167 (rejecting
work-product privilege objection to government's demand for documents in counsel's possession
because the business records at issue were "sufficiently voluminous to minimize disclosure of the
attorney's identification of some occasional wheat among the chaff.").

In sum, because Correia cannot "show a real, rather than speculative, concern that
counsel's thought processes in relation to pending or anticipated litigation will be exposed through
disclosure of the compiled documents," *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug.*

*2, 2002*, 318 F.3d at 386, the Court should reject his claim that the DHL package or its contents is protected by the work-product privilege.

*   *   *

Finally, the Government objects to Correia filing the entirety of Mr. Marcus's declaration *ex parte* and under seal.   "The Supreme Court has held that judicial proceedings are presumptively open under the First Amendment. . . . It has also recognized a common-law right of presumptive access to judicial records and documents. . . . This right of access is, of course, qualified, and documents may be sealed in some cases. . . .   [H]owever, . . . [d]ocuments to which the public has a qualified right of access may be sealed only if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."   *In re Applications to Unseal*, 568 F. App'x 68, 69 (2d Cir. 2014) (internal quotation marks and citations omitted).   Numerous portions of Mr. Marcus's declaration are described in Correia's brief.   (*See, e.g.*, Mot. 2-4 (describing facts in detail with citations to declaration).) Correia's brief also discloses that "[a]s set forth in Mr. Marcus's declaration . . . the purpose of the communication was to seek Mr. Marcus's advice on the case" and that the declaration "unequivocally demonstrates that the purpose of the communication was to assist with counsel's preparation of Mr. Correia's legal defense in this case."   (*Id.* 7.)   It is thus clear that there is no basis to maintain the entirety of Mr. Marcus's declaration *ex parte* and under seal.   It should be unsealed except to the limited extent "essential to preserve higher values and . . . narrowly tailored to serve that interest."   *In re Applications to Unseal*, 568 F. App'x at 69.

18

## CONCLUSION

For the reasons set forth above, Correia's motion should be denied.


Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York


By: ____/s_____
     Douglas Zolkind
     Rebekah Donaleski
     Nicolas Roos
     Assistant United States Attorneys
     (212) 637-2418/2423/2421


Dated: April 13, 2020
       New York, New York

19