UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   v.

DAVID CORREIA,

            Defendant.

No. 19 Cr. 725 (JPO)

# REPLY MEMORANDUM IN FURTHER SUPPORT OF
# DEFENDANT DAVID CORREIA'S PRIVILEGE MOTION

Filed: April 17, 2020
       New York, NY

William J. Harrington, Esq.
Goodwin Procter, LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018

Jeff Marcus, Esq.
Marcus, Neiman, & Rashbaum LLP
One Biscayne Tower
2 South Biscayne Blvd, Suite 1750
Miami, Florida 33131
*Admitted Pro Hac Vice*

*Attorneys for Defendant David Correia*

No court has done what the Government's Opposition asks this Court to do: narrow the attorney-client privilege and permit the Government to scour the information that a charged defendant confidentially communicated with his attorney.[1] The Government cites no case approving such a seizure, because no such case exists.

Indeed, as set forth in Mr. Correia's Brief at 6-7, the law is to the contrary: the Government may not inquire into what documents or information a client has chosen to share with his counsel for legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ("a client may not be compelled to answer the question, 'What did you say or write to the attorney?' But may not refuse to disclose any relevant fact … merely because he incorporated a statement of such fact into his communication to his attorney."); *United States v. Hankins*, 631 F.2d 360, 665 (5th Cir. 1980) (holding that the Government cannot inquire as to what documents a client showed his attorney). A client's confidential communication to counsel for the purpose of legal advice is privileged, *see In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984), and the DHL package meets that standard squarely. *Id.*

Throughout its Opposition, the Government simply ignores the fact that Mr. Correia's mailing was *itself* a communication to counsel. For example, Mr. Correia argued that the mailing was a "testimonial communication" to counsel as to the fact that "the papers existed, were in his possession or control, and were authentic." Brief at 9 (quoting *United States v. Hubbell*, 530 U.S. 27, 36 n.19 (2000)). The Government never addresses this argument at all, nor does it explain how it would have ever learned about or authenticated, say, Mr. Correia's handwritten notebooks but for Mr. Correia's communication with his counsel. The government also fails to acknowledge that what it is attempting to do by interception of a legal mailing to an attorney it

---

[1] "The Government's Opposition to Defendant David Correia's Privilege Motion" (Document 106) is referred to herein as "Opposition" or "Opp." Mr. Correia's opening brief (Document 105) is referred to herein as "Brief."

plainly could not by other legal process such as a subpoena to the client. *See Fisher v. United States*, 425 U.S. 391, 404-05 (recognizing testimonial nature of authenticating documents as one's own and genuine and therefore supporting an act of production privilege).

Instead, the Government relies on the proposition that an attorney's possession of information does not thereafter cloak the underlying information in privilege for all time. Opp. at 7-11. But this is not Mr. Correia's argument. His argument is that the ***communication itself*** is testimonial and privileged and may not be examined. The Government offers no response to this argument. Its Opposition belittles the *Hankins* decision as having been insufficiently cited. It ignores *Upjohn* entirely. And it never even attempts to refute the fact that the attorney-client communication here meets the privilege test summarized by the Second Circuit in *In Re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*—which it unquestionably does.

The Government misses the point. Not surprisingly, its arguments also miss the point, and wholly fail to rebut Mr. Correia's claim of privilege. ***First***, the Government argues that the lack of a letter explaining Mr. Correia's rationale for communicating with his criminal defense attorney somehow renders the entire communication a mere "transmittal letter" that cannot be an attorney-client communication. Opp. at 8-9. Not so. Mr. Correia's communication was more than an empty transmission of information, because it involved his testimonial act of authenticating and identifying certain records to his attorney for the purpose of seeking legal advice. None of the Government's transmittal letter cases presented similar facts, as those cases involved "mere" transmittal letters devoid of communicative import. *See, e.g.*, *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 149 (S.D.N.Y. 2003) (rejecting "the 'global position' that any communications between the client and its outside counsel, even the *mere* transmittal of non-privileged documents, were privileged") (emphasis added); *Hydraflow, Inc. v. Enidine Inc.*, 145

2

F.R.D. 626, 635 (W.D.N.Y. 1993) (noting that "transmittal letters which are devoid of legal advice and *disclosed nothing which could be considered privileged*" are not privileged) (emphasis added); *Sec. Inv'r Prot. Corp.*, 319 F.R.D. 100, 104 (S.D.N.Y. 2017) ("These "cover" communications neither furnish nor request legal advice and *do not reveal any privileged communications*.") (emphasis added); *Renner v. Chase Manhattan Ban*k, No. 98 civ. 926 (CSH), 2001 WL 1356192, at *5 (S.D.N.Y. Nov. 2, 2001) (recognizing that "the privilege does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications" and concluding that the "brief fax" at issue did "not reveal any confidential attorney-client communications.").

   ***Second***, the Government's argument that sending pre-existing documents to one's attorney does not cloak the underlying information in privilege, *see* Opp. at 9-12, is of no moment here. The Government conflates its ability to obtain a document in some lawful manner with the question of whether it may do so by searching a particular attorney-client communication. Had the Government obtained the documents at issue in another manner – such as through a lawfully enforceable subpoena – Mr. Correia could not advance the instant privilege argument. Yet the Government did not pursue such a path. Instead, it sought to examine Mr. Correia's communication with counsel. Whether through a search warrant, deposition, or subpoena, the Government may not invade an attorney-client communication. The Government could not, for example, have propounded a subpoena for all documents Mr. Correia gave his lawyer in October 2019 for the purpose of seeking legal advice. Yet that is precisely what the Government accomplished when it searched his communication.

   Simply put, the Government's argument never reckons with the fact that it has looked at an attorney-client communication itself. It may be that the Government could have obtained this

information through some other manner. But it did not. Instead, it searched *an attorney-client communication* to obtain such information. That it may not do.

\* \* \*

The Government doubles down on its request that the Court draw an adverse inference from Mr. Correia's exercise of his Fifth and Sixth Amendment rights. Stunningly, the Government argues that "these circumstances" suggest that Mr. Correia simply wanted to hide documents using his attorney as a "citadel" and "to frustrate the Government's ability to lawfully seize non-privileged evidence." Opp. at 11 n.5.

This is disappointingly cynical. Without a shred of evidence, the Government has rejected the notion that defense counsel would actually analyze his client's documents to provide legal advice. Indeed, even the Government's ability to seize these documents at Mr. Correia's arrest is a figment of the Government's imagination: had the goal been only to prevent the Government from seizing the documents, Mr. Correia had the ability and the right to simply store them overseas before his return. The Government had no "ability to lawfully seize these documents" that Mr. Correia somehow "frustrate[d]" by sending them to counsel. Indeed, it defies logic that the Government would have expected a self-surrendering defendant to arrive at the FBI with his evidence in hand.

But the shoddiness of the Government's reasoning is beside the point: Mr. Correia had every right not to surrender to the FBI while carrying these documents and he had every right to instead seek his counsel's advice about them and the information contained therein. The Government's reliance on Mr. Correia's exercise of his constitutional rights to suggest duplicity on his part is unlawful. It burdens both his Fifth and Sixth Amendment rights by asking the Court to draw an inference against him for exercising these rights. Those arguments should be struck.

\* \* \*

4

Finally, the Government rejects Mr. Correia's work product claim on the grounds that the materials were not prepared at the direction of counsel and do not reflect defense strategy. Opp. at 16-17. The Government's contention is false. Mr. Marcus's *ex parte* declaration explained both his instructions to Mr. Correia and the fact that Mr. Correia's collection matched those instructions. *See* Marcus Declaration at ¶¶ 13-17; 23-24.

Even without the benefit of Mr. Marcus's Declaration, the Court should not credit the Government's argument that "it has no clue" why Mr. Correia selected certain documents in his communication because the collection is voluminous and includes electronic devices. Opp. at 17. This is disingenuous. When the Government urged the Court to sign a warrant to search these electronic devices, the Government invoked its confidence in Mr. Correia's ability to select relevant materials. Then, before being faced with this motion, the Government wrote:

> "Here, rather than travel with the devices contained in the Subject Premises, Correia mailed them in advance of his travels. It appears that Correia knew he would be arrested by the FBI upon landing in the United States and took efforts to mail his electronic devices separately from his person. Taken together, these facts suggest that Correia did not want the contents of the Subject Premises to be seized by the FBI because they contain evidence of the Subject Offenses.

USAO_69485. Having been urged to rely on Mr. Correia's selectivity, the Court should reject the Government's new-found inability to interpret why Mr. Correia elected to share certain documents with his counsel.

\* \* \*

The Opposition argues the case the Government wishes it had, not the one it actually does. This is not a case where Mr. Correia seeks to shield a document as privileged merely because it was once sent to counsel. Opp. at 1. Or to hide a gun in his attorney's office. *Id.* Or where an attorney was "cc'd" on a purely business communication. *Id.* The Government

5

searched an enclosed communication of information sent for the purpose of seeking legal advice. That fits squarely within the attorney-client privilege.

The Government cannot be permitted to obstruct the communication of information between charged defendants and their attorneys by seizing their mailings and scouring them for the documents about which the client sought advice. No court has ever permitted such an action, and to do so now would frustrate our legal system that "depends upon the lawyer's being fully informed by the client," *Upjohn*, 449 U.S. at 389, and so "encourages clients to make full disclosure to their attorneys," *Fisher*, 425 U.S. at 403.

Dated: April 17, 2020
       New York, NY

Respectfully submitted,

By: /s/ William J. Harrington
William J. Harrington, Esq.
Goodwin Procter, LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
wharrington@goodwinlaw.com
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333

Jeff Marcus, Esq.
Marcus, Neiman, & Rashbaum LLP
One Biscayne Tower
2 South Biscayne Blvd,
Suite 1750
Miami, Florida 33131
jmarcus@mnrlawfirm.com
Telephone : (305) 400-4260
*Admitted Pro Hac Vice*

*Attorneys for Defendant David Correia*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 17, 2020, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

                                  /s/ William J. Harrington
                                  William J. Harrington