UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v-

DAVID CORREIA,
                      Defendant.

19-CR-725-3 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

On April 3, 2020, Defendant David Correia moved to suppress all evidence contained in a DHL package he sent to his counsel that was subsequently intercepted and seized by the Government. Correia argues that the contents of the package are protected by the attorney-client privilege and the attorney work product doctrine. (Dkt. No. 104.) For the reasons that follow, the motion to suppress is denied.

**I.   Background**

On October 10, 2019, Correia learned that Defendants Lev Parnas and Igor Fruman had been arrested and that the Government was in the process of executing various search warrants. Correia was out of the country at the time. After getting in touch with the Government, Correia's counsel arranged for him fly back and self-surrender in New York City on October 15, 2019. Correia asserts that he had several discussions with his attorney during which he was provided legal advice. As a result of that legal advice, and before returning to the United States, Correia sent his attorney a DHL package that included two notebooks, a hard drive, a computer, and a smartphone. Correia asserts that he sent the package "to communicate information to [his counsel] for the purpose of soliciting his legal advice and to begin to prepare a defense to the criminal charges." (Dkt. No. 105 at 3.)

On October 14, 2019, Correia informed his attorney that he had left his passport at the DHL office. As a result, he missed his flight and could not arrive in time for his scheduled self-surrender. His counsel informed the Government that he would be delayed due to his inability to get his passport until the DHL office reopened the next morning. On October 16, 2019, Correia successfully self-surrendered in New York City. He had no electronic devices on his person. On October 21, 2019, the Government obtained a search warrant from this Court to search the DHL package. In the affidavit supporting the warrant, the Government stated that the items contained in the package did "not appear to be items that were created for the purpose of legal advice but rather appear to have been sent by mail so that they would not be on Correia's person when he arrived in the United States to be arrested." (Dkt. No. 106 at 3.) The next day, the warrant was executed. The Government utilized a filter team to review the contents of the package to determine whether they included privileged material. When the Government produced scanned copies of documents from the DHL package to Correia's counsel, counsel asserted that all of the DHL package materials constituted a privileged attorney-client communication.

Correia has now moved to suppress all evidence found in the DHL package on the basis of attorney-client privilege and the attorney work product doctrine.

## II.     Discussion

### A.     Attorney-Client Privilege

Correia first moves to suppress the DHL package and its contents because it constitutes a privileged attorney-client communication. "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." *United States*

2

*v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997). And because the attorney-client privilege "stands in derogation of the search for truth so essential to the effective operation of any system of justice . . . [it] must be narrowly construed." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

Correia argues that the entire DHL package constituted a privileged attorney-client communication because it was sent to his counsel for the purpose of obtaining legal advice. However, "[a] document is not privileged merely because it was sent or received between an attorney and client . . . [it] must contain confidential communication relating to legal advice." *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 139 F.R.D. 295, 300 (S.D.N.Y. 1991). It is undisputed that the package contained only two notebooks, a hard drive, a computer, and a smartphone — materials that Correia had with him abroad that might be relevant to the preparation of his defense. There was no letter or other document that discussed even in vague terms the legal advice being sought.

It is important to note that if Correia had simply handed his notebooks and electronic devices to his counsel personally, the documents would not be privileged. "[P]re-existing documents . . . not prepared by the [client] for the purpose of communicating with [her] lawyers in confidence . . . acquire[] no special protection from the simple fact of being turned over to an attorney." *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962). It is also clear that the Government could have obtained any of the non-privileged materials[1] sent via DHL after they were delivered to Correia's counsel. This is because "pre-existing documents which could have

---

[1] The Government represents that it is utilizing a filter team to determine whether any portions of the materials are privileged. (Dkt. No. 106 at 9 n.3.) It is undisputed that any documents that are privileged in and of themselves may not be used in Correia's prosecution. The question resolved here is whether the DHL package as a whole is privileged by virtue of the fact that Correia sent it to his counsel.

3

been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." *Fisher v. United States*, 425 U.S. 391, 403–04 (1976).  And Correia seemingly does not contest this point, acknowledging that had the Government obtained the documents by subpoena, its argument would fail.  (*See* Dkt. No. 111 at 3.)

Instead, he argues that because the Government searched an attorney-client communication itself, the entire package is privileged and whether the documents were preexisting is irrelevant.  On the contrary, the preexisting nature of the documents is vitally important.  Simply as a logical matter, is unclear why, if the Government could have obtained the contents of the package from Correia's counsel upon delivery, it would be significant that the Government instead obtained the package from a third-party.  While Correia is correct that the Government "could not . . . have propounded a subpoena for all documents [he] gave his lawyer in October 2019 for the purpose of seeking legal advice" (Dkt. No. 111 at 3), it certainly could have obtained a subpoena for any of Correia's notebooks and electronic devices that his counsel had in his possession.

For Correia's privilege argument to hold water, there must be something about the package itself or the fact that it was sent, rather than hand delivered, that creates privilege.  But the "mere transmittal of non-privileged documents" is not a privileged communication.  *TVT Records v. Island Def Jam Music Grp.*, 214 F.R.D. 143, 149 (S.D.N.Y. 2003).  Because nothing in the package revealed any privileged communications between Correia and his counsel, the package cannot become privileged "merely because it was sent . . . between an attorney and client."  *Dep't of Econ. Dev.*, 139 F.R.D. at 300.

Correia's reliance on an out-of-circuit case, *United States v. Hankins*, for the proposition that "a client's communication of documents to his attorney is a privileged communication" is misplaced. (*See* Dkt. No. 105 at 6, 8.) In *Hankins*, the Fifth Circuit held that an attorney cannot be held in contempt for refusing to disclose "which of the [client's] books and records . . . he had seen and when he had seen them." 631 F.2d 360, 364–65 (5th Cir. 1980). Correia points out that the *Hankins* court found persuasive the notion that "communications about the [preexisting] document by words or by acts . . . are privileged." (Dkt. No. 105 at 8 (quoting *Hankins*, 631 F.2d at 365).) However, while it is true that communications about preexisting documents are "privileged from disclosure by testimony in court," *Hankins*, 631 F.2d at 365 (quoting 1 Dean Charles McCormick, McCormick on Evid. § 89 (2d ed. 1972)), this principle has no bearing on whether the Government could obtain the preexisting documents themselves via a search warrant. Indeed, while "the disclosure [of preexisting documents to the lawyer] itself and the lawyer's knowledge gained thereby . . . are privileged . . . adding to the privilege for communications a privilege against production of the preexisting documents themselves . . . would be an intolerable obstruction to justice." 1 Dean Charles McCormick, McCormick on Evid. § 89 (8th ed. 2020)). In other words, while the *act* of sending these documents to his counsel may potentially be privileged, the preexisting documents contained within the package are not.[2]

---

[2] Correia's argument that the DHL package was a "testimonial communication" is irrelevant with respect to the attorney-client privilege analysis, but instead raises a separate claim that Correia's Fifth Amendment privilege against self-incrimination was violated. Correia cites *United States v. Hubbell* for the proposition that "a client's act of producing documents is itself a 'testimonial communication because it might entail implicit statements' . . . that 'the papers existed, were in his possession or control, and were authentic.'" (Dkt. No. 105 at 6 (quoting *Hubbell*, 530 U.S. 27, 36 & n.19 (2000)).) However, *Hubbell* makes clear in the previous paragraph that it is "settled" that "a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those

To allow this vast swath of materials to be considered privileged is the antithesis of this Court's mandate to narrowly construe the attorney-client privilege. Indeed, such an exception would swallow the rule: by simply sending to counsel all materials that could potentially be relevant, a client could render all relevant material in her case privileged and concealed from the opposing party. Accordingly, the attorney-client privilege does not call for blanket suppression of the materials contained in the DHL package.

### B.     Attorney Work Product

Correia further argues that the materials are attorney work product and are therefore protected from disclosure. "The attorney work product doctrine . . . provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoenas Dated Mar. 19, 2002, & Aug. 2, 2002,* 318 F.3d 379, 383 (2d Cir. 2003). "[T]he party invoking [the work product doctrine] bears the burden of establishing its applicability to the case at hand . . . . The burden is a heavy one . . . ." *Id.* at 384.

---

documents was not 'compelled' within the meaning of the privilege." 530 U.S. at 35–36. Because these documents were indisputably "voluntarily prepared prior to the issuance" of the search warrant, the documents do not "contain compelled testimonial evidence." *See id.* at 36 (second quoting *Fisher*, 425 U.S. 391, 409–10).

Indeed, whatever the character of the documents, because the Government obtained these materials via search warrant, there is no Fifth Amendment violation. "[A]lthough the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information . . . a seizure of the same materials by law enforcement officers differs in a crucial respect — the individual against whom the search is directed is not required to aid in the discovery, production, or authentication of incriminating evidence." *See Andresen v. Maryland*, 427 U.S. 463, 473–74 (1976). In sum, Correia "was not asked to say or to do anything. The [documents] seized contained statements that [he] had voluntarily committed to writing. The search for and seizure of these [documents] were conducted by law enforcement personnel . . . Any compulsion of [Correia] to speak . . . was not present." *Id.* at 473.

6

Correia argues that because he compiled and sent a "collection of materials" at the direction of counsel, all of the documents contained in the DHL package are protected by the work product doctrine. (Dkt. No. 105 at 13.) However, "it is well established that the work-product privilege does not apply" to "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). And Correia has advanced no argument that any of the documents were created in preparation for his defense, only that he selected relevant documents to send to his counsel. A "narrow exception" to this principle does exist where "the party asserting the privilege [can] show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents." *In re Grand Jury Subpoenas*, 318 F.3d at 386 (internal quotation marks and citations omitted). But Correia sent a wide array of undifferentiated materials to his counsel — including an entire computer and smartphone. It is clear that much of the materials sent to counsel will ultimately be irrelevant. Because the contents of the DHL package are "sufficiently voluminous" that the risk that the Government will glean any defense strategy is quite low, *see In re Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1167 (2d Cir. 1992), the work product doctrine claim must be rejected.[3]

---

[3] Correia has also moved to strike certain portions of the government's submissions on the ground that they improperly ask the Court to draw an "adverse inference" against Correia for sending the contents of the DHL package to counsel. (*See* Dkt. No. 105 at 10–13.) It is true that the affidavit in support of the DHL package search warrant asserted that it "appear[ed]" that Correia sent these materials to his counsel "so that they would not be on [his] person when he arrived in the United States to be arrested." (Dkt. No. 106 at 11 n.5.) Correia argues that this and other similar assertions made by the Government unlawfully burden his Fifth and Sixth Amendment rights. The Government maintains that it has not requested that any such adverse inference be drawn. (*Id.*) And this Court has not drawn or relied on any such adverse inference

### III.     Conclusion

For the foregoing reasons, Defendant Correia's motion to suppress is denied.

The Clerk of Court is directed to close the motion at Docket Number 104.

SO ORDERED.

Dated: June 22, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

either in approving the DHL package search warrant or in resolving this suppression motion. Correia's motion to strike is therefore denied as moot.