K9T3CORC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                        19 CR 725 (JPO)

DAVID CORREIA,

              Defendant.

------------------------------x

                                    New York, N.Y.
                                    September 29, 2020
                                    2:30 p.m.

Before:

                    HON. J. PAUL OETKEN,

                                District Judge

                          APPEARANCES

AUDREY STRAUSS
     Acting United States Attorney for the
     Southern District of New York
DOUGLAS ZOLKIND
REBEKAH DONALESKI
NICOLAS ROOS
     Assistant United States Attorneys

MARCUS NEIMAN & RASHBAUM, LLP
     Attorneys for Defendant
JEFFREY E. MARCUS
       -and-
GOODWIN PROCTER, LLP
     Attorneys for Defendant
WILLIAM J. HARRINGTON

1               THE COURT:  Good afternoon.  This is Judge Oetken.
2      Bruce, you can call the case.
3               THE DEPUTY CLERK:  This is in the matter of the United
4      States of America v. David Correia.  Starting with the
5      government, counsel, please state your name for the record.
6               MR. ZOLKIND:  Good afternoon, your Honor.  This is
7      Doug Zolkind for the government.  I'm joined on the line by
8      Rebekah Donaleski and Nicolas Roos.
9               MR. HARRINGTON:  Good afternoon, your Honor.  This is
10     Bill Harrington for Mr. Correia.  My co-counsel Jeff Marcus is
11     also on the line.
12              MR. MARCUS:  Good afternoon, your Honor.
13              THE COURT:  Good afternoon.  Is there anyone else on
14     the line?  Is Mr. Correia on the line?
15              MR. HARRINGTON:  He's not.
16              THE COURT:  Did you talk to him about the fact that
17     this conference would be taking place?
18              MR. HARRINGTON:  I'm not sure that I did.  I've been
19     in touch with him repeatedly over the weekend.  From the
20     Court's e-mail, which described it as an informal conference
21     for counsel, I didn't think I needed to.  But I'm sure I can do
22     that very, very quickly if it is concerning to the Court.  I
23     could reach him right now.
24              THE COURT:  Yes.  Sorry, I guess I didn't make that
25     clear.  I thought maybe he would be on.  At the very least, I

1  would think he would have to waive his presence to talk about
2  this.  Unless you don't think he needs to.
3          MR. HARRINGTON:  I didn't think so.  But I can join
4  him on right now.  I apologize to have the Court wait, but I'll
5  call him and join him in now.
6          THE COURT:  Okay.
7          (Pause)
8          MR. HARRINGTON:  Your Honor, it is Bill Harrington and
9  I have on with me my client, Mr. Correia.  I gave him a brief
10 explanation of what I thought the purpose of the conference
11 was.
12         THE COURT:  Thanks.  Mr. Correia, can you hear me?
13         THE DEFENDANT:  Yes, your Honor, how are you.
14         THE COURT:  Good.  Thank you.  Thanks.  So, all we've
15 done so far is to identify counsel for the government and your
16 counsel, Mr. Harrington and Mr. Marcus.
17         I'm Judge Oetken, and the purpose of the conference is
18 to address the motion filed by Mr. Marcus and Mr. Harrington to
19 withdraw as counsel for Mr. Correia in this case.
20         There is a separate issue of what's public and what's
21 not public.  You'll note that I docketed the letter from
22 Mr. Harrington, which indicates my conclusion that these are
23 judicial documents with a presumption of public access.  The
24 extent to which particular financial information will be sealed
25 is something I haven't concluded, and I do think there is a

1    good argument that, for example, a financial affidavit or
2    something like that could well be sealed.  But because the fact
3    of the appointment itself reflects some measure of information
4    and is a public event, I do think that the sort of basic reason
5    for the withdrawal is likely to be public.  In any event, I
6    wasn't intending to address that to today.
7            For purposes of today, I'll treat this transcript as
8    sealed, and I didn't put anything on the docket indicating that
9    this was public.  So I wanted confirm, is there anyone else on
10   line, other than counsel for the parties and my staff and the
11   court reporter?
12           THE DEPUTY CLERK:  I have ability to lock the call so
13   no one else can join, and I've done that.
14           THE COURT:  Thank you.  That's helpful.  So pending
15   further order, you can assume this is not going to be -- the
16   transcript of this is not going to be publicly filed, and I'm
17   directing the court reporter to mark the transcript of this
18   conference as sealed.
19           So, when I issued my order recently in response to the
20   motion to withdraw, I asked or I directed counsel, withdrawing
21   counsel, to speak with your client and get back to me on the
22   possibility of filling out a financial affidavit and/or
23   alternative counsel.
24           So could you give me an update on where things stand
25   in that regard.

MR. HARRINGTON: I can, your Honor. This is Bill Harrington. Mr. Correia has filled out a CJA form 23, and I have that and I can provide that to the Court.

THE COURT: Okay. I'm not going to get into the specifics, but do you maintain, as I think you did before, that he likely qualifies for appointed counsel?

MR. HARRINGTON: I didn't assess it for that purposes. I can do that quickly. But from what I know of his financial situation and his income stream, I believe that he does.

THE COURT: Well, I'll take a look at that. Would it be possible for you to just e-mail that to my chambers e-mail?

MR. HARRINGTON: I can. I can do that right now if the Court wants.

THE COURT: That would be great. If you could. And so given the situation, do you understand your client wishes to have appointed counsel?

MR. HARRINGTON: He understands that he -- yes, yes. I think he's disappointed that his current counsel situation won't remain the same, potentially. But he does want appointed counsel. He will need appointed counsel. He does want counsel.

THE COURT: Mr. Correia, you have the right to counsel in any criminal case, and if you can't afford counsel, I can appoint counsel to represent you from a panel of attorneys who agree to a specified rate. Essentially, public funds that are

1  used to pay for counsel, but only for people who can't afford
2  to hire their own counsel.  And there is no strict rule about
3  it.  It is based on the type of case and the situation, it is
4  just kind of an assessment that I make as the judge about
5  whether you qualify for appointed counsel.  For that purpose I
6  will be reviewing the financial affidavit.
7          Assuming that I do determine that you do qualify, in
8  other words, that you are not able to pay for counsel yourself,
9  would you like to have counsel appointed by me?
10         THE DEFENDANT:  I'm sorry, you broke up.  Would I like
11 to have counsel appointed by you?
12         THE COURT:  Yes.  Exactly.
13         THE DEFENDANT:  I believe that's what, when I
14 discussed it, I believe that's my understanding of the
15 protocol.  So I guess the answer would be yes.
16         THE COURT:  Well, you are not in a position to bring
17 on new counsel at this point yourself?
18         THE DEFENDANT:  No, I understand the question then.  I
19 understand.  Then yes, I would.  As opposed to that, yes.
20         THE COURT:  And then the next question would be, given
21 that Mr. Harrington is actually on the CJA panel, and I've
22 confirmed under our CJA plan that there is no rule against
23 converting retained counsel necessarily to CJA counsel, I could
24 do that and make Mr. Harrington CJA counsel, given that you are
25 on panel.

1          Does anybody want to weigh in on that issue, starting
2    with Mr. Harrington I guess?
3          MR. HARRINGTON:  Judge, I don't have a view one way or
4    the other on that.  Whatever the Court thinks is best is
5    acceptable to me.  I mentioned this to Mr. Correia as a
6    possibility, and I think he would -- that that outcome would be
7    acceptable to him as well.
8          THE COURT:  Is that right, Mr. Correia?
9          THE DEFENDANT:  Yes, your Honor, I would, I mean, I
10   would be very grateful if that was a possibility.
11         THE COURT:  All right.  And anything the government
12   would like to add on the point?
13         MR. ZOLKIND:  Your Honor, the government takes no
14   position on that subject.  We did look into it and we don't
15   know of any legal issue with appointing Mr. Harrington as
16   counsel.  The one issue we did identify is that it looks to be,
17   if the idea were to use CJA funds to pay for legal fees that
18   have already been incurred, we think that would be likely a
19   problem.  But it doesn't sound like that's what's being
20   contemplated at all.
21         THE COURT:  Okay.  So if there is no objection, I'm
22   going to grant the motion for leave to withdraw on the part of
23   Mr. Marcus and grant it as retained counsel for Mr. Harrington.
24   But at the same time appoint Mr. Harrington as CJA counsel to
25   represent Mr. Correia in the case.

1    This is conditional on my reviewing the CJA form,
2 financial form, that apparently will be coming my way.
3 Assuming I agree that he qualifies for appointed counsel, I'll
4 appoint Mr. Harrington. And you can treat that as a done deal
5 unless I tell you otherwise in the next two hours.
6    MR. HARRINGTON: Thank you, your Honor. I sent the
7 form to your deputy's e-mail address so he should have it.
8    THE COURT: Okay.
9    THE DEFENDANT: Thank you very much, your Honor. I
10 appreciate that.
11    THE COURT: All right. Thank you. Is there anything
12 further from anyone? Let me start with the government.
13    MR. ZOLKIND: Your Honor, just with respect to the
14 sealing of today's proceeding, I guess first we want to make
15 clear for the record that the government did not request
16 sealing and wasn't asked to take a position on sealing. And
17 then secondly, we would suggest, given the possibility that a
18 member of the press or the public might challenge the sealing,
19 we'd suggest it might be helpful if the Court were to state the
20 reasons for this proceeding being sealed.
21    THE COURT: Okay. Mr. Harrington, do you have any
22 position on that? Maybe you don't want it sealed.
23    MR. HARRINGTON: I don't, Judge. My understanding is
24 that a court proceeding is different than a document. That the
25 standard for keeping a document sealed is different, and

1  usually, appointment hearings like this would be public, and I
2  don't think that there was any discussion of Mr. Correia's
3  finances, so I wouldn't object if the Court decided not to seal
4  this transcript.
5            THE COURT:  I thought we might be getting into things
6  that we did not get into which is specific financial
7  information.  So, if there is no objection, I will not treat it
8  as sealed.  Does anyone want me to seal it?
9            MR. ZOLKIND:  Not from the government, your Honor.
10           MR. HARRINGTON:  No, your Honor.  Thank you for the
11 courtesy of in the first instance being open to that, but I
12 think given what's transpired, it doesn't need to be sealed.
13           THE COURT:  Okay.  It won't be sealed.  All right.
14 Anything further from government?
15           MR. ZOLKIND:  No, your Honor.
16           THE COURT:  And anything further from defense counsel?
17           MR. HARRINGTON:  No, your Honor.  Thank you.
18           THE COURT:  All right.  Thank you all very much.  We
19 are adjourned.
20           THE DEFENDANT:  Thank you.
21           (Adjourned)