KA8HPARC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          19 Cr. 725 (JPO)

LEV PARNAS, IGOR FRUMAN, DAVID
CORREIA, and ANDREY KUKUSHKIN,

                                        Telephone Conference

            Defendants.

------------------------------x

                                        New York, N.Y.
                                        October 8, 2020
                                        12:05 p.m.


Before:

                    HON. J. PAUL OETKEN,

                                        District Judge

                    APPEARANCES

AUDREY STRAUSS
    Acting United States Attorney for the
    Southern District of New York
REBEKAH DONALESKI
NICOLAS ROOS
DOUGLAS ZOLKIND
    Assistant United States Attorneys

JOSEPH A. BONDY
STEPHANIE R. SCHUMAN
    Attorneys for Defendant Parnas

TODD BLANCHE
    Attorney for Defendant Fruman

WILLIAM JOSEPH HARRINGTON
    Attorney for Defendant Correia

GERALD B. LEFCOURT
FAITH FRIEDMAN
    Attorneys for Defendant Kukushkin

KA8HPARC

1            (The Court and all parties present telephonically)

2            THE DEPUTY CLERK:  This is the matter of the United

3    States of America against Lev Parnas, Igor Fruman, David

4    Correia, and Andrey Kukushkin.  Starting with the government,

5    counsel, please state your name for the record.

6            MS. DONALESKI:  Good afternoon, your Honor.  Rebekah

7    Donaleski, Nick Roos, and Doug Zolkind for the government.

8            MR. BONDY:  Good afternoon, your Honor.  On behalf of

9    Lev Parnas, Joseph A. Bondy and Stephanie R. Schuman.

10           MR. BLANCHE:  Good afternoon, Judge.  On behalf of

11   Mr. Fruman, who's not present and we waive his presence for

12   today's proceeding, Todd Blanche.

13           MR. HARRINGTON:  Good afternoon, your Honor.  Bill

14   Harrington for David Correia.  Mr. Correia has waived his

15   appearance.

16           MR. LEFCOURT:  Good afternoon, your Honor.  Gerald

17   Lefcourt and Faith Friedman for Andrey Kukushkin, who has also

18   waived his appearance.

19           THE COURT:  All right.  Good afternoon, everyone.

20           We do have a court reporter on the call.  I note that

21   there are a number of people on the call, and for those who are

22   not going to be speaking today, including members of the

23   public, please mute your line, your phones.

24           I noted that Mr. Fruman, Mr. Correia, and

25   Mr. Kukushkin have waived their appearance through counsel.

KA8HPARC

1          Mr. Bondy, is Mr. Parnas on the phone?

2          MR. BONDY:  Indeed he is, your Honor.  He is with us

3    this afternoon.

4          DEFENDANT PARNAS:  Good afternoon, your Honor.

5          THE COURT:  Mr. Parnas, can you hear me?

6          DEFENDANT PARNAS:  Yes, I can, your Honor.

7          THE COURT:  OK.  Thank you.

8          Good afternoon, everyone.  I scheduled this conference

9    to discuss scheduling in this case in response to the letters I

10   received on September 23 and 25.  Mr. Lefcourt wrote a letter

11   on behalf of the defendant asking for an extension of the

12   motion deadline, which I'm intending to grant.  The question is

13   to what date do I extend the motion deadline and what do we do

14   about the trial date at this point which, as you all know, is

15   currently scheduled for February 1?

16         So I'm going to hear from the parties on the issues

17   raised in your letters.  Since the motion schedule was

18   October 5, the only dispute at this point, I think, is whether

19   to move the motion deadline to December 8, as requested by

20   defense counsel, or to November 2, more like a month, as

21   requested by government counsel.  And to some extent that may

22   turn on what we're going to do with the trial date.

23         Just to give you all a little background, which may or

24   may not be helpful, on where things stand with jury trials in

25   the district, we've spent a lot of time over the summer

KA8HPARC

1    figuring out how we're going to resume jury trials.  Until the

2    last couple of weeks, there had been no jury trials, of course,

3    in the Southern District courthouses since March.  We now have

4    had at least three civil jury trials, successfully completed

5    them in the last couple of weeks, and we have not yet had a

6    criminal jury trial, which is a little bit more of a challenge

7    because of the number of jurors that need to be qualified,

8    although the first criminal jury trial, I believe, is scheduled

9    for next week.  We'll be doing jury selection -- not me, but I

10   believe Judge Rakoff will be doing jury selection next Tuesday,

11   and Judge Castel will be doing jury selection next Wednesday,

12   both in criminal cases.  So we are resuming jury trials.  So

13   far we've had success, at least with civil jury trials.  That's

14   just general background.

15        I don't know exactly the likelihood of getting on the

16   court's calendar in February.  At this point I would be putting

17   in a request for a jury trial in February.  The request will be

18   due November 15 for January, February, and March.  We have a

19   whole elaborate process for getting on the calendar.  At least

20   for this quarter, the current quarter, we were able to

21   accommodate every criminal jury trial that judges put in a

22   request for by the deadline that we had internally set.  The

23   priority, though, is for criminal trials involving detained

24   defendants, so that might be a complication.  In other words,

25   that might put other cases before this case since all four

KA8HPARC

1    defendants are released on bail.

2          The other limiting factor is that there are only a few

3    courtrooms large enough to do multi-defendant criminal jury

4    trials, and at this point, the way the courtrooms are

5    configured, there's only one that can do a three-defendant

6    criminal jury trial.  That might change in the next few months.

7    We don't know whether and when that might change, but as of

8    now, there's no courtroom that can handle a four-defendant

9    criminal trial, at least through December 2020.

10          So with that background, we'll get to the question of

11    where we go with the schedule and any other background issues

12    that you all want to raise.  I will note that, as you all know,

13    a superseding indictment was returned on September 17, and

14    there have been some letters about that.  I indicated in a memo

15    endorsed order that the arraignment on the superseding

16    indictment would, absent a decision to the contrary, take place

17    on the conference scheduled for November 30 at 2 o'clock.

18          So with all that background, I'll start with defense

19    counsel, Mr. Lefcourt, or whoever wants to speak for you all,

20    on any background issues you want to raise, any issues about

21    discovery, and the issues about scheduling that you raised in

22    your letters.

23          MR. BLANCHE:  This is Todd Blanche of behalf of

24    Mr. Fruman.  I'll at least, if it's OK, your Honor, start it

25    off speaking on behalf of all defendants.

KA8HPARC

1           So just, your Honor, to emphasize what's in the most

2    recent letter from Mr. Lefcourt, first of all, given COVID, the

3    superseding indictment, which we had all anticipated based upon

4    communications with the government that it would likely be

5    returned in July, by the end of July, and that didn't happen.

6    And for obvious reasons, it came back recently in September, so

7    the most basic reason for our request for more time is that.

8           But more significantly than the timing of the

9    superseding indictment is that we're still waiting for

10   significant amounts of discovery.  And by "significant," as

11   Mr. Lefcourt noted in his most recent letter, we're going to

12   provide a hard drive that can contain up to a terabyte of data

13   that will be filled by the government with, I believe, among

14   other things, additional email.  We also recently received

15   additional discovery from the government shortly after the

16   superseding indictment, and we also recently received a letter

17   from the government that -- it was a nine-page single-spaced

18   letter detailing certain witness statements of certain

19   potential -- I suppose potential witnesses at trial that raised

20   potential *Brady* concerns among defense counsel.

21          So given all of that, in our view, the request for an

22   adjournment of the motion schedule is almost obvious.  I mean,

23   at this point even if we get the new discovery from the

24   government tomorrow, with the government's proposed schedule in

25   early November, we will have had almost no time to

KA8HPARC

1    simultaneously finish our motions and review the discovery.

2    And I suppose -- and in the government's letter they suggested

3    that they didn't anticipate the new discovery would raise any

4    potential pretrial motions, and I take them at their word, but

5    we should certainly have an opportunity to evaluate that for

6    ourselves.  As your Honor's aware, there's multiple search

7    warrants that have been executed on electronic devices.  Some

8    of those devices, the fruits of those devices and getting

9    access to those devices, I believe, is what's being produced to

10   us in the next -- whenever it's produced in the future.  So

11   there's a host of obvious issues that defense counsel at least

12   need to consider prior to deciding whether to make any motions

13   surrounding that.

14          To be honest with your Honor -- and I'll let other

15   defense counsel speak to this as well -- some of what I just

16   described has taken place kind of as we are writing letters to

17   your Honor, and even the December 8 deadline for motions,

18   depending on when we get the new discovery, is pretty

19   aggressive, your Honor, just because -- and it's not just the

20   new discovery.  I think it's reviewing the new discovery and

21   considering it with all the other discovery that we've received

22   and deciding whether a motion is appropriate.  Whether there's

23   one that will be successful isn't the only question.  It's also

24   whether strategically we want to make a motion to suppress or

25   the like.  So even the December 8 deadline, in our view, is

KA8HPARC

1    pretty aggressive.  And we don't want to plant a flag now, but

2    there's a scenario under which we may come back and even ask

3    for a little more time, depending on what we see in the

4    discovery.

5              I'll stop talking now, but as far as the trial date, I

6    just think the February date, given everything that I've just

7    laid out, including the fact that we're in some ways starting

8    the case again, right -- I mean, we have new charges and

9    they're not completely different, but there is new conduct and

10   new charges -- and a terabyte of discovery, you know, starting

11   a trial in February seems really unfair to the defendants given

12   the amount of time the government has had to investigate,

13   supersede, produce discovery, and here we are a year later

14   still waiting on another terabyte of discovery.  We certainly

15   believe that adjournment of the trial is in the interest of

16   justice as it relates to the defendants.

17             THE COURT:  Now, let me ask you, Mr. Blanche, my

18   understanding from the letters was that the government had

19   produced the vast majority of discovery before March or by

20   March and that they produced what they called a small amount in

21   September and that there was no new discovery on the new

22   charges, essentially.  Is that not right?

23             MR. BLANCHE:  Well, I'll let the government speak to

24   that, about whether there's any new discovery on the new

25   charges, but as far as conduct, for Mr. Fruman at least, there

KA8HPARC

1    were some new charges, but it was the same conduct.  So I think

2    the Fraud Guarantee charge is the only kind of new conduct in

3    the superseding indictment.  And I expect that the discovery

4    that's going to be produced, the terabyte that's coming, has to

5    do with the original conduct mostly, but, I mean, I have no

6    idea.  I don't know.

7         THE COURT:  OK.  Before I turn it over to the

8    government, are there other defendants who'd like to say

9    anything?

10        MR. HARRINGTON:  Yeah, judge, this is Bill Harrington.

11        The one thing I would say is the -- like Mr. Correia,

12   the orientation around the discovery, it may be that much of it

13   was produced before, but he was really only a small part of the

14   case initially, and now a much broader part of the case.  So

15   it's not as if we were in a position to review that stuff

16   knowing what's in the current charges.  So I think from the

17   government's perspective, I understand why they feel like none

18   of this is new, but I think from the defense perspective,

19   that's not really how we're experiencing it, the strategic

20   calls we make and the analysis we bring to it and what we look

21   at and prioritize.

22        So, understandably, it took the government a year to

23   bring the superseder.  Their *Brady* letter has witnesses they

24   interviewed almost a year ago.  It just takes time to do this

25   stuff.  I understand why it took them time, and it's just going

KA8HPARC

1    to take us time too.

2              THE COURT:  While you're speaking, Mr. Harrington, do

3    you have anything to add about, say, a February trial date

4    versus a March or April trial date?

5              MR. HARRINGTON:  I don't have any view on that

6    different than the defense, than the general -- than what

7    Mr. Blanche presented.

8              THE COURT:  OK.

9              MR. LEFCOURT:  Your Honor, this is --

10             THE COURT:  Go ahead.

11             MR. LEFCOURT:  Your Honor, this is Gerald Lefcourt.

12             I just wanted to add some things.  I don't see your

13   Honor's on a nine-page single-spaced *Brady* letter, so you

14   probably unaware, but in that letter, there's -- substantial

15   part of that letter is exculpatory material provided by the

16   so-called foreign national Andrey Muraviev, at least

17   exculpatory as to Mr. Kukushkin.  This may necessitate a

18   foreign deposition.  And what we haven't seen yet, although we

19   know that there's been search warrants, or search warrant,

20   issued for Mr. Muraviev's emails, we haven't seen them, and the

21   new terabyte of information that the government asked us to

22   provide a drive for will contain, I think, emails.  But one

23   other somewhat important fact to us is that the government --

24             MS. DONALESKI:  Judge.  Judge, I'm sorry.  I'm sorry

25   to interrupt.  I would just ask to remind counsel that there is

KA8HPARC

1   a protective order in this case which prohibits describing the

2   contents of discovery.

3          Thank you, and I apologize for the interruption.

4          THE COURT:  OK.

5          MR. LEFCOURT:  Well, all I can say is that substantial

6   new issues have been raised by the nine-page *Brady* letter, and

7   there's also the issue of how these emails are going to be

8   provided.  Our understanding is the government has it in a

9   platform called Relativity.  My office does not have

10  Relativity.  It's an expensive platform to operate on.  My

11  client can't afford paying for that kind of stuff.  So we would

12  like this material produced in a different form, and I don't

13  know how long that will take, but we started to discuss that

14  with the government this morning in correspondence.

15         So for all those reasons, in addition to what has been

16  said already, a new schedule should be put in place.  And the

17  real problem with the February date is that the schedule for

18  motions, reply, and responses would bring us right in the

19  middle of the holidays.  So we asked the government to extend

20  it a few weeks in January, but that would put the trial date in

21  February as a problem.  So for all those reasons, the schedule

22  should be changed.

23         THE COURT:  All right.  Thank you.

24         Anything you'd like to add, Mr. Bondy?

25         MR. BONDY:  Yes, very briefly.  I have the same

KA8HPARC

1    problem with the Relativity platform.  We can't afford it.  We

2    need to ask and I need to have that discovery converted into a

3    usable format.

4            The other thing I would note about a trial in February

5    is that this is a case that would involve a number of

6    out-of-state witnesses and indeed, if we were to put on a

7    defense, witnesses from the state of Florida, and Mr. Parnas is

8    from the state of Florida.  Right now I would have to have him

9    quarantined for two weeks before he would be able to actually

10   walk into the Southern District of New York and have a trial.

11   The same would apply to any of these other potential witnesses.

12   I don't know if I could actually subpoena witnesses from out of

13   state and dragoon them into quarantine for two weeks before

14   they would then appear at trial.

15           So I think that given the circumstances, the physical

16   circumstances, and given, and to no one's fault, the lateness

17   of the superseding indictment and the ongoing discovery, an

18   adjournment is warranted of the trial date as well as these

19   motions, and that's our position.

20           THE COURT:  All right.  Thank you.

21           Ms. Donaleski.

22           MS. DONALESKI:  Thank you, Judge.

23           I'll first address the trial date issue and then talk

24   through where we are with discovery with your Honor's

25   permission.

KA8HPARC

1          So, first, the bottom line for the government is that

2     our proposed motion schedule would at least preserve the option

3     of a February trial.  And given how much could change even in

4     the next month or between now and February with respect to not

5     only the pandemic but also who's at the defense table, whether

6     there's one trial or multiple trials by virtue of severance,

7     there's just a lot that could change.  So our view is that it's

8     premature to postpone the trial date at this juncture, which is

9     why we've proposed that the Court convene the parties again in

10    a month before your Honor has the November 15 deadline so that

11    we can advise the Court as to whether we believe it's feasible

12    based on the events as we see them in a month.

13          As to discovery, your Honor, we have produced the vast

14    majority of discovery in this case, and I'll just summarize

15    what we've produced and what is yet to come.

16          So to date, we've produced more than 250,000

17    individually Bates-stamped pages of discovery, and 95 percent

18    of that was produced between November 2019 and March 2020.  So

19    the defendants have had quite some time with 95 percent of the

20    discovery.  Five percent of that, consisting of approximately

21    9,000 pages, was produced in September 2020.  And we've

22    produced to date search warrants, responsive search warrant

23    returns, subpoena returns, among other categories of evidence.

24          And as a reminder, devices are many times assigned

25    only one Bates number.  So while the pages -- the number of

KA8HPARC

1    pages is a useful metric, it doesn't always equate to the

2    actual pages if it were to be printed out.

3            Also notable when we're talking about how much time

4    the defendants need to complete motions, we've produced 22

5    search warrants to date.  Nineteen of those were produced

6    between November 2019 and March 2020, and only three of which

7    were produced in September 2020.

8            There are three relatively smaller categories of

9    discovery yet to come.  So, first, a production of responsive

10   emails.  Defense counsel had thrown around the one terabyte

11   figure.  As we told defense counsel, that is not the size of

12   the production.  That's simply the size of the hard drive that

13   we've requested from them.  Our document hosting vendor is in

14   the process of imaging the emails so that they can be put into

15   a load file.  We've told defense counsel as recently as this

16   morning that we're happy to put them into any format the

17   defendants prefer.  The load file can be viewed in Concordance,

18   which is a more affordable document review platform than

19   Relativity, but we're also happy to work with defense counsel

20   to put it in whatever format they want.  I'll also note that

21   each of the prior email productions to all of the defense

22   counsel have been in Relativity load files.  So it's not a new

23   format in terms of our production.

24           The responsive emails, as I mentioned, they're being

25   loaded by our vendor, and we expect those will come within the

KA8HPARC

1    next week or so.  Those are for warrants that the defendants
2    have had for some time.

3         Second, we are in the process of reviewing and
4    preparing for production a smaller subset of the responsive
5    pictures and videos from the defendants' devices and accounts.
6    We've already produced all of the responsive text messages to
7    all of the defendants, and we've produced the entire accounts
8    or devices, including the pictures and videos, to each
9    individual defendants.  But this review, the picture review,
10   had to be done in person, which unfortunately has slowed, as a
11   result of the pandemic, both the filter review and the
12   responsiveness review, but we're endeavoring to review it as
13   quickly and safely as possible and will produce it to the
14   defense, our expectation is, within the next few weeks.

15        But I just want to note, it's unclear to us at least
16   how a picture or a production of pictures could any way
17   meaningfully change the defendants' view of the indictment
18   which they've had for a year and has not meaningfully changed
19   with the exception of the addition of Count Seven, the Fraud
20   Guarantee charges, in that period of time.  And again, the
21   defendants have had the warrants for quite some period of time.

22        Then the final category of outstanding discovery that
23   could happen are categories of information to which we do not
24   have access currently.  So, first, as the Court is aware, the
25   government has agreed not to review the materials in devices

KA8HPARC

1    seized from the package sent by David Correia pending his

2    mandamus litigation in the Second Circuit.  So if that

3    litigation resolves, we will, of course, review and produce the

4    materials, if the Circuit rules in the government's favor.

5           Moreover, there are a limited number of devices that

6    we have not been able to gain access to, and while we're not

7    optimistic that we will be able to gain access, to the extent

8    that we do, we'll, of course, review and produce those on a

9    rolling basis.

10          In terms of the discovery, we have produced the vast

11   majority of the discovery.  We've produced the warrants upon

12   which the defendants could make any motions.  They've had those

13   for, in many cases, almost a year.  So for these reasons, we

14   don't believe that the discovery or the forthcoming discovery

15   merits the type of extension the defendants are seeking.  And

16   similarly, we don't believe that the return of the superseding

17   indictment itself merits an additional eight weeks just given

18   what this superseding indictment actually looks like and the

19   limited changes that it does make.

20          THE COURT:  All right.  As I understand it, you said

21   that still to be produced are emails and then this category of

22   pictures.  Have emails been produced in that first 250,000

23   pages, and this is just a new set of emails from new devices,

24   or is this all the emails?

25          MS. DONALESKI:  No, no, emails -- a substantial

KA8HPARC

1   quantity of emails have been produced.  This is -- as warrants

2   were obtained later in time, these are emails from those

3   warrants.  So these are the end of our email review.  We're

4   producing the end of the emails.  So we have produced, as I

5   mentioned, several productions of responsive emails in

6   Relativity load files between late last year and March of 2020.

7          THE COURT:  In terms of what is left to be produced in

8   terms of volume, is it, in fact, a terabyte?  Do you know at

9   this point?

10          MS. DONALESKI:  Your Honor, we asked our vendor this

11   morning to give us a size of the load file, and they haven't

12   been able to give it to us because they're still imaging the

13   documents.  But they said a one terabyte hard drive would be

14   more than enough, which leads us to believe that it is less

15   than that, but I don't have a specific figure for your Honor.

16   I think, in terms of having done the email review which we've

17   now concluded, we don't anticipate that this is the bulk of the

18   emails, though.  I think it's a manageable size.  I just

19   unfortunately don't have a specific data size to give your

20   Honor.

21          THE COURT:  All right.  Going back to the trial date

22   briefly, you indicated in your letter that the government would

23   like to keep the February 1 trial date and then sort of check

24   in in November and see if that's still viable.  If it were to

25   move to March or April, do you have any particular issue with

KA8HPARC

1   the March 8 date proposed by defendants?

2                  MS. DONALESKI:  No, your Honor.

3                  THE COURT:  All right.  Anything that Mr. Blanche or

4   other defense counsel would like to add in reply?

5                  MR. BLANCHE:  This is Todd Blanche.

6                  No, I don't have anything to add, your Honor.

7                  MR. BONDY:  No, thank you, your Honor.

8                  MR. LEFCOURT:  Your Honor, Gerald Lefcourt.

9                  I was just looking at the proposed dates for motions

10  and replies, responses.  The problem with the February date is

11  that in order for everything to be before you in full, we would

12  need to push those dates back to over the Christmas holidays.

13  Indeed, the government proposed that our reply to their

14  response to our motions be December 29.

15                 So the reason for the March date is just to give us

16  more time.  We propose the final document reply to be

17  January 22 or January 25, and that's why the requested month

18  adjournment of the trial date.  It just makes sense.

19  Particularly with all that you've indicated concerning COVID, I

20  can't imagine a month could matter to anybody.

21                 THE COURT:  On that date, Mr. Lefcourt, or anyone

22  else, is there any particular reason not to make it March 1

23  instead of March 8?  Did someone have a problem with that week?

24                 MR. LEFCOURT:  I don't think so.

25                 MR. BLANCHE:  For Mr. Fruman, Todd Blanche, your

KA8HPARC

Honor.

No problem with March 1 as opposed to March 8.

MR. BONDY:  No problem with respect to Mr. Parnas,
your Honor.

MR. HARRINGTON:  Same for Mr. Correia.

MR. LEFCOURT:  And for Mr. Kukushkin.

MS. DONALESKI:  Same for the government, your Honor.

THE COURT:  All right.  I understand the reasons for
the additional time it took to return the superseding
indictment.  There's no blame for that.  I think everything is
happening more slowly than it otherwise would.  I do intend to
grant an extension of both the motion deadline and an
adjournment of the trial to March 1.  I do really want to try
to do it March 1, but I fear that February 1 is just going to
be -- is just too ambitious.  There's obviously additional
discovery to be produced.  There's a superseding indictment
returned just a few weeks ago.  And even though it appears that
the vast majority of discovery was produced, everything
continues to happen more slowly than it did, including
communications with between clients and their counsel.

So what I'd like to do is extend the deadline for
motions, not quite as long as defendants want but close, to
December 1.  And at this point, I'd like the government to file
any responses by December 23, and any replies by defendants by
January 15.  That's giving the government a little more than

KA8HPARC

1    three weeks.  If that turns out to be too short because of

2    vacation schedules, or whatever, I'll be open to pushing that a

3    week or two and then pushing the reply accordingly.  But once

4    again, motions, December 1; responses, December 23; replies,

5    January 15; trial date, March 1.

6            I'd still like to have the November 30 conference to

7    discuss any discovery issues and to, of course, do the

8    arraignment on the superseding indictment.  Is there any

9    problem with that going forward as scheduled, 2 o'clock on

10   November 30?  Any issues with that on the government side?

11           MS. DONALESKI:  No.  No, your Honor.  Thank you.

12           MR. BONDY:  No for Mr. Parnas, your Honor.

13           THE COURT:  OK.  And Mr. Blanche?

14           MR. BLANCHE:  No, your Honor.  That date's fine.

15   Thanks.

16           THE COURT:  And Mr. Harrington?

17           MR. HARRINGTON:  Same, your Honor, no problem with

18   that date.

19           THE COURT:  OK.  And Mr. Kukushkin?

20           MR. LEFCOURT:  That's fine, your Honor.

21           THE COURT:  All right.  In an order issued in the last

22   couple weeks, I excluded time under the Speedy Trial Act to

23   February 1, 2021.  I don't think there was any objection to

24   that.  If there is, you should note it on this call.

25           I'd like to ask everybody if there's anything else you

KA8HPARC

1   wanted to address today.  Anything further from the government?

2            MS. DONALESKI:  Your Honor, I suppose we would just

3   ask that time be extended through March 1 to enable the

4   defendants to prepare for trial and review any additional

5   discovery.

6            THE COURT:  Any objection, Mr. Bondy?

7            MR. BONDY:  No, your Honor.

8            THE COURT:  Mr. Blanche?

9            MR. BLANCHE:  No, Judge.  Thanks.

10           THE COURT:  Mr. Harrington?

11           MR. HARRINGTON:  No, your Honor.

12           THE COURT:  And Mr. Lefcourt?

13           MR. LEFCOURT:  None, your Honor.

14           THE COURT:  Anything further from any of the defense

15   counsel?  If so, please indicate now.

16           All right.  Thank you, everyone.  This matter's

17   adjourned.

18               (Adjourned)

19

20

21

22

23

24

25