KATACORPps

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4               v.                           19-cr-725-3 (JPO)

5    DAVID CORREIA,

6                    Defendant.              Plea

7    ------------------------------x

8                                            New York, N.Y.
                                             (via telephone)
9
                                             October 29, 2020
10                                           10:45 a.m.

11

12   Before:

13                     HON. J. PAUL OETKEN

14                                           District Judge

15                          APPEARANCES

16   AUDREY STRAUSS
          Acting United States Attorney for the
17        Southern District of New York
     BY:  DOUGLAS ZOLKIND
18        NICOLAS LANDSMAN ROOS
          REBEKAH DONALESKI
19
     GOODWIN PROCTER, LLP
20        Attorneys for Defendant
     BY:  WILLIAM J. HARRINGTON
21

22   Also Present:  Stephanie McMahon
                     U.S. Probation Officer
23

24

25
```

KATACORPps

1              (Via telephone)

2              (Case called)

3              THE CLERK:  Starting with the government, counsel,

4    please state your name for the record.

5              MR. ZOLKIND:  Good morning, your Honor.  For the

6    government, your Honor, this is Douglas Zolkind, joining by

7    video.  And joining by phone are my colleagues Rebecca

8    Donaleski and Nicolas Roos.

9              THE COURT:  Good morning.

10             MR. HARRINGTON:  Good morning, your Honor.  Bill

11   Harrington, counsel for Mr. Correia.  Mr. Correia is also

12   appearing virtually.  He prefers to go ahead with this

13   proceeding virtually rather than in person, given the current

14   pandemic.

15             THE COURT:  OK.  Thank you.

16             Is there anyone else who wanted to identify themselves

17   for the call?

18             I believe the AT&T line is working, and I'm going to

19   ask my law clerk to send me a message by text to confirm that

20   it is.

21             OK.  It sounds like it is.

22             Good morning, everyone.  I understand that defendant

23   is prepared to change his plea to a plea of guilty to Counts

24   Two and Seven pursuant to a plea agreement with the government.

25   Is that correct, Mr. Harrington?

KATACORPps

1         MR. HARRINGTON:  It is, your Honor.

2         THE COURT:  All right.  Before we begin the change of

3  plea hearing, I believe we need to do two things, first of all,

4  address the remote nature of the proceeding and ensure that the

5  defendant waives his right to have this take place in person,

6  and, second, conduct the arraignment on the superseding

7  indictment, which was returned and filed on September 17, 2020.

8  Is that all the housekeeping preliminary matters we need to

9  deal with?

10        MR. ZOLKIND:  I believe so, your Honor.

11        THE COURT:  Mr. Harrington, you agree?

12        MR. HARRINGTON:  Yes, your Honor.

13        THE COURT:  All right.  We're conducting this

14  proceeding by videoconference, and doing so is authorized by

15  the CARES Act, in light of the COVID-19 pandemic and by Chief

16  Judge McMahon's standing order and her finding that plea

17  proceedings cannot be conducted in person without jeopardizing

18  public health as long as the defendant consents.

19        Mr. Harrington, you said you discussed the subject of

20  proceeding by video with Mr. Correia; is that right?

21        MR. HARRINGTON:  I have as to the plea, your Honor,

22  yes.

23        THE COURT:  OK.  And, Mr. Correia, am I saying it

24  right, is Mr. "kor-RAY-ya" or "Korea"?

25        THE DEFENDANT:  Yes, that's fine, Judge.  Either one

KATACORPps

 1   is fine.

 2           THE COURT:  OK.  But how do you prefer it?

 3           THE DEFENDANT:  "Korea" generally, but "kor-RAY-ya" is

 4   proper.

 5           THE COURT:  You have the right to have this proceeding

 6   take place in person.  This is the kind of proceeding,

 7   obviously, that would normally take place in person at the

 8   courthouse.  However, under the circumstances, you do have the

 9   right to waive the in-person proceeding and have it take place

10   by video.  Have you talked to your lawyer about that and do you

11   consent to doing it by video?

12           THE DEFENDANT:  I have, your Honor, and I do.

13           THE COURT:  All right.  I find the defendant has

14   consulted with counsel and has voluntarily and knowingly waived

15   his right to an in-person proceeding for purposes of this

16   change of plea hearing, and that he consents to

17   videoconference.

18           I also must make a finding as to whether this

19   proceeding can or cannot be further delayed without serious

20   harm to the interest of justice, and I would just like to ask

21   the lawyers if you would like to address that briefly.

22   Mr. Zolkind, do you have anything to say about that, or

23   Mr. Harrington?

24           MR. ZOLKIND:  Your Honor, we would certainly submit

25   that the proceeding cannot be further delayed without serious

KATACORPps

1    harm to the interest of justice, given the defendant's interest

2    in resolving this case, the government's interest in resolving

3    the matter as to him, the fact that there are other defendants

4    pending in the case, and that it would serve their interests

5    and the interests of justice to allow the case to move forward

6    efficiently.

7            THE COURT:  OK.  Mr. Harrington, anything to add on

8    the point?

9            MR. HARRINGTON:  No.  I agree with Mr. Zolkind's

10   representation.

11           THE COURT:  OK.  I agree as well.  And I find that,

12   for those reasons, the proceeding cannot be further delayed

13   without serious harm to the interest of justice, and therefore

14   proceeding by videoconference today is authorized for this

15   hearing.

16           As I mentioned, a superseding indictment was returned

17   by the grand jury in September of this year, and that

18   superseding indictment modified, or reflects certain

19   modifications to certain allegations and charges in the

20   original indictment that was filed, and adds certain additional

21   charges.

22           Mr. Harrington, does your client waive public reading

23   of the superseding indictment for purposes of this arraignment?

24           MR. HARRINGTON:  He does, your Honor.

25           THE COURT:  And Mr. Correia, have you had a sufficient

KATACORPps

```
1    opportunity to fully review the superseding indictment?

2              THE DEFENDANT:  Yes, your Honor, I have.

3              THE COURT:  And have you discussed it with your

4    lawyer?

5              THE DEFENDANT:  Extensively, yes.  Yes, sir.

6              THE COURT:  And do you understand the charges against

7    you?

8              THE DEFENDANT:  I do.

9              THE COURT:  And I have been informed -- normally at

10   this point in an arraignment I would take your plea, which

11   would ordinarily be a not guilty plea, but I have been informed

12   that you wish to plead guilty to Counts Two and Seven of the

13   superseding indictment pursuant to a plea agreement.  Is that

14   correct?

15             THE DEFENDANT:  That is correct, your Honor.

16             THE COURT:  All right.  Before accepting your guilty

17   plea, I'm going to ask you certain questions.  It may seem like

18   a lot of questions, but the reason I ask these questions is to

19   establish that you're pleading guilty because you are guilty of

20   these particular charges and not for some other reason, not

21   because of any inappropriate pressure or anything else.  So if

22   at any point you don't understand my questions or you'd like to

23   take a break to speak further with Mr. Harrington, just let me

24   know.

25             Now, I'm going to ask you to please raise your right
```

KATACORPps

1    hand so that I can place you under oath.

2              (Defendant sworn)

3              THE COURT:  Thank you.  You are now under oath, and

4    that means if you answer any of my questions falsely, your

5    answers could be used against you in a prosecution for perjury.

6    Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  What's your full name?

9              THE DEFENDANT:  David Paul Correia.

10             THE COURT:  And how old are you?

11             THE DEFENDANT:  45 years old.

12             THE COURT:  And how far did you go in school?

13             THE DEFENDANT:  About three quarters of the way

14   through college.

15             THE COURT:  And that was where?  In the United States?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And did you go to high school in the

18   United States?

19             THE DEFENDANT:  I did.

20             THE COURT:  All right.  Have you ever been treated or

21   hospitalized for any mental illness?

22             THE DEFENDANT:  Never.

23             THE COURT:  And have you recently been or are you now

24   under the care of a psychiatrist or a doctor?

25             THE DEFENDANT:  A doctor as a primary care and for

KATACORPps

1    gastrointestinal issues, but not a psychiatrist.

2            THE COURT:  And have you ever been hospitalized or

3    treated for addiction to drugs or alcohol?

4            THE DEFENDANT:  Never.

5            THE COURT:  And in the past 24 hours, have you taken

6    any drugs or pills or had any alcohol?

7            THE DEFENDANT:  No, your Honor.

8            THE COURT:  And is your mind clear today?

9            THE DEFENDANT:  Yes, it is, your Honor.

10           THE COURT:  And you understand what's happening in

11   this proceeding?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  And does either counsel have any doubt as

14   to defendant's competence to plead at this time?

15   Mr. Harrington?

16           MR. HARRINGTON:  I don't, your Honor.

17           THE COURT:  And Mr. Zolkind?

18           MR. ZOLKIND:  No, your Honor.

19           THE COURT:  Based on his responses to my questions and

20   his demeanor as I observe it, I do find that the defendant is

21   competent to enter a plea of guilty at this time.

22           Mr. Correia, have you had a sufficient opportunity to

23   discuss your case with your attorney, including the charges you

24   intend to plead guilty to, any possible defenses, and the

25   consequences of pleading guilty?

KATACORPps

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And are you satisfied with your attorney's

3    representation of you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  I am now going to explain certain

6    constitutional rights that you have and that you give up when

7    you plead guilty.  Under the Constitution and laws of the

8    United States, you have the right to a speedy and public trial

9    by a jury on the charges contained in the indictment.  Do you

10   understand that?

11         THE DEFENDANT:  Yes, Judge.

12         THE COURT:  And at that trial, you would be presumed

13   innocent and the government would be required to prove you

14   guilty beyond a reasonable doubt before you could be found

15   guilty.  You would not have the burden of proving that you were

16   innocent.  A jury of 12 people would have to agree unanimously,

17   all 12 of them, that you were guilty beyond a reasonable doubt

18   before you could be convicted on these charges.  Do you

19   understand that?

20         THE DEFENDANT:  Yes, Judge.

21         THE COURT:  At that trial and at every stage of your

22   case, you would be entitled to be represented by an attorney

23   and if you could not afford one, one would be appointed to

24   represent you.  Do you understand that?

25         THE DEFENDANT:  Yes, Judge.

KATACORPps

1          THE COURT:  During a trial, the witnesses for the

2     government would have to come to court and testify in your

3     presence, and your lawyer would be able to cross-examine the

4     witnesses for the government, object to evidence offered by the

5     government, and offer evidence and compel witnesses to testify

6     in your defense.  Do you understand that?

7          THE DEFENDANT:  Yes, Judge.

8          THE COURT:  At a trial, although you would have the

9     right to testify if you chose to, you would also have the right

10     not to testify, and no inference or suggestion of guilt could

11     be drawn from the fact that you did not testify if that is what

12     you chose.  Do you understand that?

13          THE DEFENDANT:  Yes, Judge.

14          THE COURT:  If you were convicted at a trial, you

15     would also have the right to appeal that verdict to the Court

16     of Appeals.  Do you understand that?

17          THE DEFENDANT:  Yes, Judge.

18          THE COURT:  Even at this time, as you're entering this

19     plea, you do have the right to change your mind, continue with

20     a not guilty plea, and have a trial on these charges.  Do you

21     understand that?

22          THE DEFENDANT:  Yes, Judge.

23          THE COURT:  If you do plead guilty and I accept your

24     plea, you'll be giving up your right to a trial and the other

25     rights I've just described.  Just to be clear, there will be no

KATACORPps

1    trial, but I will enter a judgment of guilty if I accept your

2    guilty plea, and then that becomes a conviction on these

3    charges, and then I will sentence you later, not today, but

4    only after considering any written submissions by the attorneys

5    in the case, including your attorney, as well as a presentence

6    report that the Probation Department will prepare, and then

7    sentence you after reviewing those documents.  You understand?

8              THE DEFENDANT:  Yes, Judge.

9              THE COURT:  And if you plead guilty you'll have to

10   give up your right not to incriminate yourself, because I will

11   ask you about what you did to satisfy myself that you are in

12   fact guilty of these charges.  Do you understand that?

13             THE DEFENDANT:  Yes, Judge.

14             THE COURT:  OK.  So pursuant to the plea agreement,

15   you're pleading guilty to two counts, Count Two of the

16   superseding indictment, which is false statements to the

17   Federal Election Commission, in violation of 18 United States

18   Code § 1001(a)(2) and 18 U.S. Code § 2, and Count Seven of the

19   superseding indictment, which is conspiracy to commit wire

20   fraud, in violation of 18 United States Code § 1349.

21             Mr. Zolkind, you could please state the elements of

22   those two offenses.

23             MR. ZOLKIND:  Yes, your Honor.  As to Count Two, which

24   charges Correia with false statements in violation of 18 U.S.C.

25   § 1001(a)(3), there are three elements: first, that the

KATACORPps

defendant made or used a false writing or document that

contained a statement or entry that was false, fictitious, or

fraudulent; second, that the defendant acted knowingly and

willfully; and, third, that the false statement or entry was

material to a matter within the jurisdiction of a federal

government agency.

          With respect to Count Seven, which charges Mr. Correia

with conspiracy to commit wire fraud in violation of 18 U.S.C.

§ 1349, there are two elements: first, the existence of the

conspiracy, that is, the existence of any agreement or

understanding to commit the unlawful object of the conspiracy;

and, second, the government must prove that the defendant

knowingly became a member of the conspiracy, with intent to

further its illegal purpose -- that is, with the intent to

commit an object of the charged conspiracy, here, wire fraud.

The object of the conspiracy, wire fraud, has four elements:

first, that there was a scheme or artifice to deprive others of

money or property by false or fraudulent pretenses,

representations, or promises; second, that the false or

fraudulent representation or concealment must relate to a

material fact or matter; third, that the defendant knowingly

and willfully devised or participated in a scheme or artifice

to defraud, with knowledge of its fraudulent nature and with a

specific intent to defraud; and, four, that the scheme was

executed by using or causing others to use interstate or

KATACORPps

1    foreign wires.

2            THE COURT:  Thank you.  So those are the elements of

3    the two offenses.  If this were going to trial, I would be

4    explaining to the jury that the jury must find each of those

5    elements beyond a reasonable doubt.  Do you understand that,

6    Mr. Correia?

7            THE DEFENDANT:  Yes, Judge.

8            THE COURT:  All right.  I also want to state what the

9    maximum statutory penalties are for these offenses.  Now, this

10   is separate from the guidelines.  The maximum statutory

11   penalties in this case are different from what the sentencing

12   guidelines are.  The sentencing guidelines are the starting

13   point.  And I'll get to that in a minute.

14           With respect to Count Two, however, the maximum

15   penalty under the statute is five years' imprisonment.  There's

16   a maximum fine of $250,000.  There is a $100 special

17   assessment, which is mandatory.  And there is a maximum term of

18   supervised release for three years.

19           And when I say "supervised release," that means that

20   you're subject to monitoring for a period of time after release

21   from any period of imprisonment, essentially like probation,

22   and there are terms and conditions of supervised release that

23   you must comply with during that period, and if you fail to

24   comply with them, you can be returned to prison without a jury

25   trial.

KATACORPps

1          And with respect to Count Seven, which is conspiracy

2     to commit wire fraud, there is a maximum term of 20 years'

3     imprisonment.  There's a maximum fine of the greatest of

4     $250,000, or twice the gross pecuniary gain from the offense,

5     or twice the gross pecuniary loss to others from the offense,

6     and a $100 special assessment, and again a maximum term of

7     supervised release for a period of three years.

8          In addition, as part of your plea agreement, you admit

9     to the forfeiture allegation with respect to Count Seven and

10    agree to forfeit to the United States the amount of $43,650,

11    representing proceeds traceable to that offense.  And you agree

12    to make restitution to victims as stated in the plea agreement

13    in the total amount of $2,322,500.  Again, that's $2,322,500.

14          Are you a United States citizen?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  OK.  I also want to explain that if anyone

17    has attempted to predict or promise you or suggest to you what

18    your sentence is going to be, no one can assure you of that,

19    because I am the one who's going to determine your sentence,

20    not now but at the time of sentencing, after reviewing the

21    documents I mentioned.  I'm going to wait until a presentence

22    report is prepared and I've reviewed any written documents,

23    submissions by your lawyer and the government's lawyer, and

24    determine an appropriate sentence for you under all the factors

25    and the applicable statute, including the guidelines but not

KATACORPps

1    limited to the sentencing guidelines.  And even if your

2    sentence is different from what you expect or what anyone has

3    told you it might be, you will still be bound by your guilty

4    plea and will not be allowed to withdraw your plea of guilty to

5    these counts.  Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Has anyone threatened you or forced you in

8    any way to plead guilty?

9              THE DEFENDANT:  No, your Honor.

10             THE COURT:  And did you enter into a plea agreement

11   with the government?

12             THE DEFENDANT:  I did, your Honor.

13             THE COURT:  I have a copy of an agreement with a cover

14   date of October 27th of this year, and it appears to have a

15   signature on it, as well as Mr. Harrington and Mr. Zolkind.

16   Did you review it fully -- well, first of all, did you sign it?

17             THE DEFENDANT:  I did.

18             THE COURT:  And did you review it fully and discuss it

19   with Mr. Harrington before you signed it?

20             THE DEFENDANT:  I did, your Honor.

21             THE COURT:  And do you feel you understand everything

22   that's in that plea agreement?

23             THE DEFENDANT:  I do, your Honor.

24             THE COURT:  Do you have any separate -- well, other

25   than the stipulation and the preliminary order of forfeiture,

KATACORPps

1    do you have any separate understanding that's been left out of

2    that agreement?

3              THE DEFENDANT:  No.  No, your Honor.

4              THE COURT:  OK.  Again, I mentioned that the

5    sentencing guidelines are advisory.  There is no mandatory

6    minimum statutory sentence in this case.  But the sentencing

7    guidelines are a benchmark, and legally I am required to

8    consider them when determining an appropriate sentence.  And

9    under the plea agreement, there's a stipulated guideline range

10   that is an agreed-upon guideline range between you and the

11   government of 33 months' to 41 months' imprisonment, and a

12   guideline fine range of $15,000 to $150,000 as a fine.  Now,

13   again, that's not binding and your lawyer will be able to argue

14   for a different sentence.  However, that is the starting point.

15   Also, I will make my own calculation of the guidelines, so if I

16   come up with a different guideline range, that stipulated range

17   is not binding on me, but it's binding on the parties.  Do you

18   understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And although your lawyer will be able to

21   argue for a sentence outside that guideline range, below it

22   presumably, I want to make sure you understand that you're

23   giving up your right to appeal or challenge your sentence under

24   the plea agreement as long as I sentence you within or below

25   that range, that is, 41 months or less in prison.  Do you

KATACORPps

1    understand that?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  And having gone through this

4    back-and-forth, do you still wish to plead guilty to Counts Two

5    and Seven pursuant to this agreement?

6           THE DEFENDANT:  Yes, your Honor, I do.

7           THE COURT:  And are you pleading guilty voluntarily

8    and of your own free will?

9           THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Would you please tell me in your own words

11   what you did that makes you believe you are guilty of these

12   charges.

13          THE DEFENDANT:  Sure.  And if I may, I prepared

14   something regarding the first -- second count regarding the

15   FEC.

16          In October of to 18, I swore that a declaration to the

17   FEC was collect, even though it says things that are not

18   correct.  I knew the declaration said things that were probably

19   false, but I did not ask about them at the time.  I just wanted

20   the FEC to end its investigation, which I believed was

21   unwarranted.  I knew that this was wrong at the time I did it.

22

23          THE COURT:  You said you believe or believed it was

24   unwarranted?

25          THE DEFENDANT:  Believed at the time it was

KATACORPps

1   unwarranted.

2           THE COURT:  OK.

3           THE DEFENDANT:  The investigation itself.

4           THE COURT:  OK.  And did the statements that were

5   false, were they things that would have been important,

6   material to the FEC?

7           THE DEFENDANT:  I was under the impression that

8   everything that was being stated in that affidavit was

9   important to the FEC.

10           THE COURT:  OK.  And let me ask Mr. Zolkind and

11   Mr. Harrington if you believe that's a sufficient factual basis

12   for the plea to Count Two.

13           MR. HARRINGTON:  This is Mr. Harrington.  I do, your

14   Honor.

15           MR. ZOLKIND:  And for the government, we agree that

16   it's sufficient as to Count Two, your Honor.

17           THE COURT:  OK.  Thank you.

18           And what about Count Seven, Mr. Correia?

19           THE DEFENDANT:  Yes, Judge.  Between 2012 and 2019, I

20   agreed with another person to give potential investors

21   incorrect information about the financials of a start-up

22   project called Fraud Guarantee.  And this was because I wanted

23   the investors to participate in what I believed was a great

24   project.  I knew this was wrong at the time that it was done.

25           THE COURT:  Did you say you agreed with others to do

KATACORPps

```
 1    this?
 2              THE DEFENDANT:  Yes.
 3              THE COURT:  All right.  And did you know that it was
 4    wrong at the time?
 5              THE DEFENDANT:  Yes, your Honor.
 6              THE COURT:  Counsel, do you believe there is any
 7    additional questioning needed, or do you think that's a
 8    sufficient factual basis for the guilty plea to Count Seven?
 9              MR. ZOLKIND:  Your Honor, I think it's sufficient.
10    The one additional point that may just be worth confirming is
11    that the defendant knew that the scheme would be carried out
12    through wires such as emails, phone calls, or wire transfers,
13    interstate wires.
14              THE COURT:  OK.  Mr. Correia, did you understand that
15    emails and/or phone calls would be used to carry out the
16    scheme?
17              THE DEFENDANT:  They were in fact used.  I don't know
18    that I understand the question completely, whether I knew prior
19    to.
20              THE COURT:  Well, no.  While it was happening, you
21    understood that you were using emails and phone calls for it?
22              THE DEFENDANT:  I was aware that that was the way I
23    was communicating, absolutely.
24              THE COURT:  OK.  All right.  Anything else,
25    Mr. Zolkind?
```

KATACORPps

1              MR. ZOLKIND:  No, your Honor.

2              THE COURT:  And Mr. Harrington, do you believe there

3    is a sufficient factual basis for the plea?

4              MR. HARRINGTON:  I do, your Honor.

5              THE COURT:  All right.  Is there anything that either

6    party, either counsel would like to raise in terms of

7    additional questioning or additional proffer or additional

8    background you'd like me to highlight before accepting the

9    plea?

10             MR. ZOLKIND:  Well, your Honor, I'd be prepared to

11   offer a proffer on behalf of the government as to what we would

12   prove if the case were to go to trial.

13             THE COURT:  OK.  You can do that.

14             MR. ZOLKIND:  OK.  Your Honor, at trial the government

15   would prove at least the following beyond a reasonable doubt,

16   through witness testimony, emails, bank records, and other

17   evidence, including the defendant's sworn statement to the FEC.

18   So with respect to Count Two, the false statements count, the

19   government would prove the following, at least the following:

20   In or about May of 2018, Lev Parnas and Igor Fruman made a

21   $325,000 contribution to a super PAC called America First

22   Action, Incorporated.  Parnas and Fruman caused the donation to

23   be played in the name of Global Energy Producers, or GEP.  GEP

24   was a company that Parnas and Fruman had recently formed and

25   which Mr. Correia was helping them to get off the ground but

KATACORPps

which was in the very early days of being developed.  At the

time of the donation, GEP had no operations or even any bank

account.  The $325,000 donation did not come from any source of

funds held by GEP.  Rather, it came from a mortgage that was

taken out on a property owned by Fruman, which funds had been

transferred to an account held by Parnas and which Parnas then

transferred to America First Action.

In or about July of 2018, a complaint was filed with

the Federal Election Commission, or the FEC, claiming that this

donation violated certain provisions of the Federal Election

Campaign Act, including the prohibition on so-called "straw

donations," or donations made in the name of another person,

here, GEP.

In or about October 2018, GEP, Parnas, and Fruman

submitted a response to the FEC.  Part of that response

included an affidavit from David Correia in his capacity as

director of operations for GEP.  The affidavit falsely depicted

GEP as a well-funded operational energy company, including

falsely claiming that GEP was funded with "substantial bona

fide capital investment," that the $325,000 donation "was made

with GEP funds," and that GEP had spent more than $1 million

pursuing "numerous opportunities to expand our operations."

The government would prove that Correia knew these statements

were false based on his personal involvement in GEP's affairs,

including in the lending transaction that provided the funds

KATACORPps

1    for the $325 donation.

2            In the affidavit, Mr. Correia also made false

3    statements about his company, Fraud Guarantee, claiming that it

4    "provides various risk management tools for investors"

5    including "both insurance product and mechanisms for conducting

6    pre-investment due diligence."  In fact Fraud Guarantee had no

7    operations and offered no insurance product whatsoever.

8    Correia knew this statement was false because he owned and ran

9    Fraud Guarantee along with Mr. Parnas.

10           The government would further prove that the FEC is a

11   federal agency and that Mr. Correia's false statements were

12   material to a matter within the FEC's jurisdiction.

13           With respect to venue, the government would prove that

14   this affidavit was prepared and submitted by Mr. Correia's

15   counsel in Manhattan.

16           Now, with respect to Count Seven, which is the Fraud

17   Guarantee wire fraud conspiracy, the government would prove at

18   least the following: that in or about late 2012, Mr. Correia

19   and Mr. Parnas started a company known as Fraud Guarantee.  The

20   goal of the company was to provide insurance to protect

21   investors in the event they were defrauded, as well as

22   providing certain other services and tools to protect

23   investors.  By mid 2019, more than six years later, the company

24   had not become operational.  At no point did Fraud Guarantee

25   ever bring insurance products to market.  Nor did it ever have

KATACORPps

1    any customers.

2              Between 2012 and 2019, Mr. Parnas and Mr. Correia

3    solicited numerous individuals to invest in Fraud Guarantee.

4    At least seven individuals agreed to invest.  Each of the

5    investors paid between approximately $200,000 and $500,000 to

6    consummate their investments.  Mr. Parnas and Mr. Correia

7    induced these victims to invest in Fraud Guarantee based on

8    materially false and misleading claims about the company.  They

9    told these victims that the victims' money would be used

10   exclusively for the legitimate business expenses of Fraud

11   Guarantee.  They said that none of the money would go to

12   Mr. Parnas or Mr. Correia personally, only to the company

13   itself.  This was false.  The majority of investor funds were

14   withdrawn as cash or transferred to personal accounts of

15   Mr. Parnas or Mr. Correia or their family members, and were

16   spent on personal expenditures, such as Mr. Parnas's rent,

17   luxury cars, and retail stores.

18             Mr. Parnas and Mr. Correia also made false statements

19   about how much money the company had raised overall and about

20   how much money Mr. Parnas had personally invested in the

21   company.  They led victims to believe that the company had

22   raised millions of dollars, including from Mr. Parnas himself,

23   when in fact the company had raised virtually no money,

24   Mr. Parnas had contributed essentially none of his own money.

25             The government would prove that this scheme was

KATACORPps

1   carried out through interstate wires, including emails, phone

2   calls, and wire transfers.  And we would also prove that

3   multiple meetings were held in Manhattan in furtherance of the

4   conspiracy.

5        THE COURT:  OK.  That was a factual proffer of what

6   the government would prove as to these counts as trial.

7   Mr. Harrington, is there any response you would like to make or

8   anything you would like to add, in terms of any -- anything

9   regarding the matter?

10        MR. HARRINGTON:  No.  Well, your Honor, there's one

11   small thing.  It's really more relevant to sentencing, but I

12   just don't want Court to be left with an incorrect impression

13   now.  Mr. Zolkind made a reference to the majority of the funds

14   being withdrawn and used for personal uses.  And as we'll

15   explain at sentencing, Mr. Correia got very little of that

16   money.  And I just don't want there to be an incorrect

17   impression left today that he got a majority of the funds.  The

18   reason why the forfeiture amount is as low as it is is because

19   he got very little money and was actually working on the

20   project.  And so I'm not disputing the overall tenor of what

21   Mr. Zolkind said, but I do think it's worth mentioning that.

22        THE COURT:  OK.  Thank you.

23        Anything you want to add -- OK.  And anything you

24   wanted to add, Mr. Zolkind?

25        MR. ZOLKIND:  No, your Honor.

KATACORPps

```
1              THE COURT:  OK.  Thank you.

2              You mentioned the forfeiture order.  I do have a copy

3     of a preliminary -- consent preliminary order of forfeiture,

4     which, as I mentioned, indicates the defendant agrees to a

5     money judgment in the amount of $43,650.  And I just want to

6     confirm, Mr. Correia, you did sign this document as well?

7              I think you're muted.

8              THE DEFENDANT:  Yes, your Honor, I did.  I'm sorry.

9              THE COURT:  OK.  And Mr. Harrington, you did as well?

10             MR. HARRINGTON:  I did, your Honor.

11             THE COURT:  OK.  I'm signing the consent preliminary

12    order of forfeiture.

13             And with respect to the guilty plea, Mr. Correia,

14    since you acknowledge that you are in fact guilty as charged in

15    Counts Two and Seven of the superseding indictment and since I

16    am satisfied that you know and understand your rights,

17    including your right to go to trial, and that you are aware of

18    the consequences of your plea, including the sentence that may

19    be imposed, I find you are voluntarily pleading guilty to these

20    counts, and I hereby accept your guilty plea and enter a

21    judgment of guilty on those counts.

22             Now, we'll turn to sentencing.  As I mentioned, the

23    Probation Department will be in touch with Mr. Harrington to

24    arrange a meeting for the purposes of the probation officer

25    preparing the presentence report, which has a lot of
```

KATACORPps

1     information, not only about this offense but about you,

2     Mr. Correia, your background, your family, etc.  And I read it

3     very closely before determining an appropriate sentence.  So

4     please make sure that anything you do speak to the probation

5     officer about for that is honest and accurate.

6           In terms of timing, the normal period of timing is

7     about a hundred days for the Probation Department to prepare a

8     draft of the report, for you all to see a copy and note any

9     objections.  So that would put us in February.  I have February

10    12.  But if the parties would prefer a different date, I'm

11    happy to hear alternative dates.

12          MR. ZOLKIND:  February 12th would work for --

13          MR. HARRINGTON:  Your Honor, I thought they could

14    sometimes do the 90 days.  We were thinking maybe the first,

15    like a little earlier in February.  I don't know if that's

16    possible, if you think that's too tight.

17          THE COURT:  I think it probably is possible.

18    Mr. Zolkind, do you have any preference either way?

19          MR. ZOLKIND:  No, your Honor.

20          THE COURT:  So, Mr. Harrington, what were you

21    thinking?  I mean, I'm happy to do it a day that's convenient

22    for you all.

23          MR. HARRINGTON:  We had been thinking the very first

24    week in February, but if your Honor thinks that's too tight,

25    maybe Monday, February 8th.

KATACORPps

```
1              THE COURT:  February 8th is fine.

2              Is that all right, Mr. Correia?

3              THE DEFENDANT:  That's fine with me, Judge.

4              THE COURT:  And that's OK, Mr. Zolkind?

5              MR. ZOLKIND:  Yes, your Honor.

6              THE COURT:  OK.  Why don't we say February 8, 2021, at

7    11:30 a.m.  That's all right, Mr. Harrington?

8              MR. HARRINGTON:  Yes.  Thank you, your Honor.

9              THE COURT:  All right.  Sentencing is set for February

10   8, 2021, at 11:30 a.m.

11             And any written submissions will be due two weeks

12   before that for the defendant, which is January 25th, and the

13   government's written submission will be due one week before

14   sentencing, which is February 1st.

15             And I assume there's no objection to the present

16   conditions of release on bail continued to the date of

17   sentence, Mr. Zolkind?

18             MR. ZOLKIND:  No objection, your Honor.

19             THE COURT:  All right.  Mr. Correia, all the

20   conditions of your pretrial release will continue to the date

21   of sentencing, so please make sure you continue to comply with

22   those conditions.

23             And is there anything further, from the government?

24             MR. ZOLKIND:  Yes, your Honor.  Two matters.  One, I

25   just wanted to put on the record that the plea agreement
```

KATACORPps

1    includes a stipulation that the defendant and defense counsel

2    have signed, as has the government, pursuant to which the

3    defendant has agreed to withdraw the petition for a writ of

4    mandamus and motion for a stay.  That we filed, which is

5    currently pending in the Second Circuit, and so we understand

6    that he is going to do that directly after this proceeding.  So

7    I just wanted to put that on the record.

8         And then the second matter is that we wanted to

9    request -- and I understand that we have the defendant's

10   consent for this request -- request that the plea agreement be

11   filed under seal to the extent that it will -- because it makes

12   reference to the names of victims.  And we would propose to

13   redact those names and have the public version of the plea

14   agreement have the victim names redacted.

15        THE COURT:  OK.  I don't normally put plea agreements

16   on the docket.  I mean, our district's general practice is not

17   to do that.  This is not a cooperation agreement; however, if

18   we put every plea agreement that wasn't a cooperation agreement

19   on the docket, that would lead to the perverse result of people

20   figuring out who was a cooperator.  So -- but if you have a

21   different view, you can argue for it.

22        MR. ZOLKIND:  No, your Honor.  And we're not proposing

23   to file this on the public docket either.  My understanding is

24   that when requests from the public come in for the plea

25   agreement, for example, a request from members of the press,

KATACORPps

```
 1    our office typically takes the position that those are public

 2    documents and so do need to be provided to members of the

 3    public.  At least I understand that's the position that we

 4    often take.  And so to the extent that requests for the plea

 5    agreement come in, in this case, we're requesting to have the

 6    public version include redactions in lieu of the victim names.

 7              THE COURT:  OK.

 8              Mr. Harrington, anything to add on that?

 9              MR. HARRINGTON:  No, your Honor.

10              THE COURT:  All right.  That request is granted.

11              MR. ZOLKIND:  Your Honor, I suppose I should make

12    clear, that's our practice when a plea agreement has been

13    marked as a court exhibit during a plea.  I don't recall if the

14    Court did that here, but I know that that is often what happens

15    during a plea proceeding.

16              THE COURT:  OK.  I don't typically mark as a court

17    exhibit -- but if I decide to, it will be redacted, and the

18    original will be filed under seal.

19              MR. ZOLKIND:  OK.  Thank you, your Honor.

20              THE COURT:  OK.  Anything further from the government?

21              MR. ZOLKIND:  Nothing further.

22              THE COURT:  And anything further from defense counsel?

23              MR. HARRINGTON:  No, your Honor.

24              THE COURT:  All right.  Thank you all.

25              This matter is adjourned.
```

KATACORPps

1              (Adjourned)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25