LAW OFFICES OF
# GERALD B. LEFCOURT, P.C.
A PROFESSIONAL CORPORATION
1776 BROADWAY, SUITE 2000
NEW YORK, N.Y. 10019

GERALD B. LEFCOURT
lefcourt@lefcourtlaw.com

SHERYL E. REICH
reich@lefcourtlaw.com
FAITH A. FRIEDMAN
ffriedman@lefcourtlaw.com

TELEPHONE
(212) 737-0400
FACSIMILE
(212) 988-6192

November 27, 2020

VIA EMAIL

Honorable J. Paul Oetken
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

*Re: United States v. Parnas, et al.,* 19 Cr. 725 (S1)(JPO)

Dear Judge Oetken:

     We represent Andrey Kukushkin in connection with the above referenced matter. We write on behalf of all defendants in advance of the pretrial conference scheduled for November 30, 2020, to revisit the defense's previous request for the early turnover of the government's exhibit and witness lists as well as marked exhibits, 3500 material and the immediate production of additional *Brady* material.

     From the initial conference in this matter, the defense has sought an order requiring the government to produce an exhibit and witness list, as well as marked exhibits and 3500 material well in advance of trial. The defense also has sought the immediate disclosure of material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (some of which is also 3500 material, such as

prior statements of witnesses). To date, no such order has been entered.[1] As detailed below, the volume of the government's productions, complicated by problems in reviewing, analyzing, and digesting the materials, especially during these unprecedented times,[2] and particularly when combined with the nature of the allegations, and the "streamlining" of the indictment, not to mention the fact that discovery is not complete, make it difficult to efficiently and adequately navigate the discovery and be prepared for trial without the requested information.

At its core and as relevant here, the Superseding Indictment charges multiple unrelated conspiracies to violate federal campaign finance laws through straw donations and donations funded by a foreign national, in addition to a wholly unrelated wire fraud conspiracy. There are no allegations of violence or intimidation. And there can be no legitimate concern for the safety of witnesses. To the extent there are concerns about pretrial publicity, there is a protective order in place which obviates those concerns. But more to the point, with respect to the exhibit list and marked exhibits, all that is being requested is that the government identify those materials produced to the defense upon which it intends to rely. Particularly given the government's ability to amend these lists, other than to game the system, we see no grounds for withholding the requested information.

The government has to date made eight productions (the most recent made available for copying this week but which has not yet been received) of terabytes of information, including images of multiple phones and the contents of cloud storage and email accounts, other electronic data, recordings, and more than 424,000 bates numbered items of discovery[3] including numerous

---

[1] Notably, as detailed *infra*, the government did recently provide the defense with three multipage single-spaced letters containing what the defense characterizes as *Brady* disclosures but which the government has not labeled as such and insists otherwise. The defense submits that these disclosures are deficient and must be supplemented. For point of reference, copies are submitted herewith to be filed under seal pursuant to the terms of the Protective Order entered by the Court on or about November 13, 2019.

[2] Because of technicalities, some material had only limited reviewability – requiring expensive software to access efficiently and search. Similarly, early on during the pandemic certain discovery drives, which defense counsel were accessing remotely, failed and were unable to be repaired. To the government's credit, at the defense's request, these materials were reproduced and to the extent necessary in a more user-friendly format, which we appreciate. However, our time continues to be limited, as is our ability to review the discovery materials and prepare for trial, particularly in light of the limitations the pandemic has placed on us all.

[3] The volume of discovery far exceeds this number as the contents of some electronic discovery, *i.e.*, images of phones or the contents of cloud storage accounts, are delineated by one bates number, although they contain tens of thousands of individual "documents".

Honorable J. Paul Oetken
United States District Judge
Southern District of New York
November 27, 2020
Page 3

search warrants and returns, tens of thousands of emails, chats, and text messages, many of which are in Russian and other languages.[4]

As noted, on September 24, 2020 and October 28, 2020, the government produced two multipage single-spaced letters containing non-delineated *Brady* discovery. After a subsequent demand, the government provided a third multipage letter containing non-delineated *Brady* discovery earlier this week. As can be seen, the information provided took the form of summaries of witness statements prepared by the government and did not include any backup. Not a single 302, note, chat, text exchange, or email which formed the basis for these summaries, or which memorialized, discussed, or referenced these statements was produced. What's more, much of it was attributed to unidentified "witnesses", the bulk of it was nearly a year old, and the remaining information was months old. Supplemental demands for all backup and supporting documents and information, including the identities of these witnesses, have been made but the government has resisted production. Respectfully, the government's position seemingly ignores that when it comes to *Brady*, business as usual no longer is acceptable. Nor does it comport with the spirit of FED. R. CRIM. P. Rule 5(f).

Finally, none of the dozens of redacted pages in the search warrants have been produced in unredacted form. Nor has any sealed document been unsealed and produced to the defense. In short, there is a mountain of discovery of varying types and degrees that has grown exponentially and is overwhelming to navigate.

Notably, most of the law firms involved are small firms with limited resources. Regardless, we are all working remotely and separately due to the pandemic and all have clients who reside outside of New York and in locations that are subject to mandatory quarantine periods due to the rate of Covid-19 infections and spread in their communities. Time and financial resources of everyone are limited. As a result, it is impossible to review, analyze, discuss, and utilize discovery as we normally would amongst the defense and with our clients. So too has our ability to make meaningful use of these materials as part of defense investigations been hampered, if not crippled.

This case undoubtedly raises complex and unique legal questions. Coupled with the volume and breadth of discovery, as described above, and the numerous "sealed" or "redacted" documents that exist, the ability of the defense to engage in a meaningful review of the mountains of discovery, to prepare a defense adequately, to avoid unfair surprise at trial, and to be prepared for trial within a timeframe that is acceptable to the Court, is dependent upon a case management order that requires the government to produce on or before December 15, 2020, or

---

[4] The government is seemingly producing everything it obtained in its multiple grand jury investigations. The government must be required to do more than dump everything in its possession on the defense. While the government should not be deciding what is relevant to Messrs. Parnas, Fruman, and Kukushkin's defense, a massive "document dump", does not provide meaningful or valuable discovery from which a defendant can adequately prepare his defense. Indeed, it violates the spirit of Rule 16.1.

> Honorable J. Paul Oetken
> United States District Judge
> Southern District of New York
> November 27, 2020
> Page 4

ninety days before trial, whichever is later (a) its list of trial exhibits along with marked trial exhibits; (b) its witness list; and (c) all 3500 material.

Consistent with FED. R. CRIM. P. Rule 16.1, the defense met and conferred with the government about its request. Unfortunately, the government is unwilling to agree to the defense's proposed schedule. Instead, it insists that providing 3500 material of non-testifying witnesses six weeks prior to trial and 3500 and *Giglio* material for testifying witnesses along with trial exhibits four weeks prior to trial, is sufficient. Particularly given the restrictions to pretrial investigation and review of discovery with which defense counsel is faced as a result of the COVID-19 global pandemic, we respectfully submit, the government's proposed timeline is insufficient. Nor is there any valid justification for refusing to agree. Simply put, the defense contends that the timeline is proposes is necessary in this case to be adequately prepared for trial and make meaningful use of the mass of discovery produced. The government should be confident enough in its case to provide the requested materials on the defense's timetable.

In addition, it is critical that *Brady* material be produced as early as possible, a fact which the government seemingly ignores having bafflingly made disclosures of *Brady* information, albeit incomplete, that in some cases is a year old. Certainly, any *Brady* disclosure must be made with enough time for the defense to make meaningful use thereof. The failure to do so can result in reversal of the case on appeal. *See United States v. Rodriguez*, 469 F.3d 221, 226 (2d Cir. 2007). But what constitutes sufficient time should not be left for the government to decide. Nor in the world of a global pandemic with trave and other restrictions should the "usual" be accepted.

Moreover, we submit, that summaries by government counsel without the notes and 302s from which they are derived or which memorialize those statements, or without attribution are insufficient and do not meet the government's disclosure obligations. Accordingly, the government should be ordered to immediately turn over all *Brady* material, including all exculpatory and impeachment evidence, of which the government is currently aware and in **all formats** in which it exists, including the identities of the witnesses who allegedly provided the information. In other words, if the government identifies exculpatory or impeaching statements of witnesses, alleged co-conspirators, and/or co-defendants, it must clearly state the name of the witness, the date the statement was made, and provide all documents, notes, recordings, and communications which memorialize, reference or support those statements.

Thank you for your consideration.

> Respectfully submitted,
>
> /s Gerald B. Lefcourt
> Gerald B. Lefcourt