# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>V.<br><br>DAVID CORREIA | IN RESPONSE TO THE GOVERMENTS RESPONSE 3582(c)(i)(A) Compassionate Release |

Your Honor, in response to the governments opposition Mr. Correia's compassionate release, pursuant to 3582(c)(i)(A), the government contends his release due to 3553(a) factors. The following argument is based on reasons why the defendant Mr. Correia's motion for compassionate release should be granted.

## Argument
### Extraordinary and compelling Reasons
### Exhaustion

The compassionate release statute was first enacted as a part of the comprehensive Crime Control Act of 1984 (CCC). In general the statute provides that a district court cannot modify a final term of imprisonment except in certain delineated circumstances. One circumstance where a final sentence can be modified is when "extraordinary and compelling reasons warrant such a reduction."

The BOP's status of the exclusive gatekeeper for compassionate release motions ended with the enactment of the First Step Act on December 21, 2018. In a provision entitled "Increasing the Transparency of compassionate release," the First Step act amended 3582(c)(i)(a) to

allow a sentence reduction for "Extraordinary and Compelling reasons" if one of two different gatekeeping criteria are satisfied: (1) if the director of the BOP files a motion requesting such relief, or (11) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion or if 30 days has lapsed "from the receipt of such a request by the warden of the defendants facility," whichever is earlier. SEE United States v. Santu No. 1:05-cr-458-1 2019 WL 249 8923 (S.D. Tex June 17 2019). Mr. Correia has satisfied the 30 day exhaustion of remedies as sent with the original motion for compassionate release.

<u>Extraordinary and Compelling Circumstances</u>
<u>Medical Vulnerability</u>

Mr. Correia is in his mid 40's who suffers from an autoimmune disease known as ulcerative Colitis or Chrones disease, as well as other health issues noted further herein. He currently takes different medications to fight these issues he has, on a daily basis in an effort to control these conditions. Mr. Correia was told months ago by the Dr. at Butner Camp that he would see a specialist to get the help he needs. As of today he has not seen one specialist. Individually each of Mr. Correia's conditions make him highly susceptible to COVID-19. The government notes that there are no active cases at the FCI medium at Butner, when in fact there are a total of 55 active cases at the FCI 2, LSCI Low, and FMC. 7 days ago sadly an officer at the LSCI Low officer Vargas Died of COVID-19. Now the that institution is locked down even the officers that worked with officer Vargas continue to come to the Butner Camp where Mr. Correia is on work with no masks.

Mr. Correia also works in a trusted position at the head training center for the Butner Complex, where he constantly interacts with staff from all over the complex as well as new officers going through orientation. Butner is responsible for over 40% of the deaths in the BOP. The government also states that Mr. Correia is located at the FCI Medium at Butner where in fact he is at the Butner minimum security camp with out custody. With all this in mind Individually, each of Mr. Correia's conditions make him highly susceptible to COVID-19. Considered together, they establish that his continued presence in the Butner camp creates an unacceptable risk to his health and life.

The CDC has specifically recognized that people who are immunocompromised, or have chrones disease, ulcerative colitis, or serious heart conditions are " at high risk for severe illness from COVID-19. Research also indicates high blood pressure is a significant risk factor that increases a COVID-19 patients chances of serious deterioration, as well as obesity and hypertension that leads to a bad prognosis or death. Although focused on non prison populations, this research becomes far more concerning when considered in the prison context, as prisons are well known tinder boxes for infectious disease. SEE United States v. Tran, 8:08-cr-197-DOC, Dkt No 405 (RD, Cal Apr 10, 2020) ("While the courts is aware of the measures taken by the BOP, news reports of the virus spread in detention centers within the United States and beyond our borders demonstrate that individuals housed within our prison system none the less remain particularly vulnerable to infection").

Butner's websites claim of being the "crown jewel" is not highly considered as true as watchdog organizations are exposing. One of the courts peers, Judge Allison J. Nathan, from the United States District Court for the Southern District of New York, clearly makes her position known. ("The court notes the plain absurdity of the governments and the BOP's position." "The court speaks in stark terms: this is an illogical and self defeating policy that appears to be inconsistent with the directive of the Attorney general, ungrounded in science and a danger to both the public health and the community.

Here at the Butner Camp (minimum security), inmates must share communal living spaces, they are now double bunking inmates which is completely against CDC guidelines, there is no social distancing, and inmates are returning from work and interacting with the public, many of the officers are not complying with wearing masks and over 70% of officers have not been vaccinated. With Covid-19 and the Delta variant it is an extreme risk to Mr. Correia's life and he is not safe at Butner and would receive better care at home. As a chronic care level 3 Mr. Correia has not been given proper care.

Although the exact conditions at the Butner complex are not known, it is probably safe to say and to assume that they are terrible, and probably worse than the "confirmed" corona virus infection rate reported from the BOP would indicate.

Recognizing the unique risks that correctional facilities pose to both inmates and employees, members of congress asked the BOP on March 19, 2020, to allow for the immediate release of elderly or non violent inmates. On March 27, 2020 the attorney's more than 400 DOJ leaders and federal judges sent an open letter to the president, asking he take immediate action to reduce population in correctional facilities to prevent the catastrophic spread of COVID-19. Mr. Correia has repeatedly inquired about transfer to home confinement under the CARES act, but thus far to no avail, despite the fact that he appears to satisfy all relevant criterias, his case remains under review, by then of course it may be too late.

## Standard for Compassionate Release

To grant a compassionate release motion, the court must find "Extraordinary and compelling" circumstances 18 USC 3582(c)(1)(A). Although Congress did not itself define "extraordinary and compelling reasons," it did direct the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be applied and a list of examples. In response the Sentencing Commission implemented USSG 1B1.13, a policy statement specifically concerning compassionate release under 3582(c)(1)(A). Application note 1 to 1B1.13 provides that "Extraordinary and compelling reasons" for compassionate release exist under Section(D) "OTHER Reasons". This applies to Mr. Correia. The commentary to USSG 1B1.13 is a direct <u>acknowledgement</u> by the Sentencing Commission which is entirely consistent with the statutory text that

"extraordinary and compelling" reasons having nothing to do with an inmates health, age, or family circumstances, can support a sentence reduction under 3582(c)(1)(A) (see application Note 2... need not have been unforseen at the time of sentencing to warrant a reduction in the term of imprisonment".)

While the commentary states that catchall category of "other reasons" will be determined by the Director of the BOP," the reference to the BOP must be disregarded because it is irreconcilable with the post-First Step Act (FSA) version of the statute, which allows the district court to grant relief under 3582(c)(1)(A). SEE United States v. Cantu No. 1:05-cr-458I, 2019 WL 2492923 at (SDJ Texas June 17, 2019) ("Given the changes to the statute, the policy statement provision that was previously applicable to 18 USC 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence modification provisions under 3582.

Blacks Law dictionary defines "Extraordinary" as beyond what is usual, customary, or common. It defines "compelling need" as a need so great that irreparable harm or injustice would result if not met. Taken together, they constitute the standard this court should apply: the reason must be "beyond what is usual, customary, regular or common," and the reason must be "so great that irreparable harm or injustice would result if the relief is not granted. Like other terms, the words "Extraordinary and Compelling" find meaning by both the statutes text and the facts that other cases have found to be Extraordinary and compelling.

The government in it's response notes that "Correia does have medical conditions that will make a term of imprisonment more difficult than it would be for a healthy person, particularly in light of the risks of COVID-19. (TR. at 30). The government also states that "the purposes of just punishment, respect for the law, and deterrence call for a significant punishment to reflect the seriousness of the defendants crimes." Although the circumstances of the present offense justified the sentence this court originally imposed, and Mr. Correia does not take lightly of the sentence imposed, just punishment does not warrant a sentence that includes virtually continuously and unabated exposure to a life threatening illness, particularly when the defendant has a significantly heightened vulnerability.

## 3553(A) Factors Warrant Reduction IN SENTENCE

First the government states Mr. Correia has only served about half his sentence, this is inaccurate. Mr. Correia is scheduled to be released in January of 2022 he has served over 75% of his sentence and has 90 days remaining. The government also states Mr. Correia's personal history, medical condition and culpability has not changed. The government cannot possibly know these things.

As stated before Mr. Correia works in a trusted position at the minimum security camp as a tranny assistant, working closely with staff, and also works for the Residential Re-entry management office as an assistant orderly.

Mr. Correia is out custody, at a minimum security camp and has a pattern Risk of Recidivism score as minimum. Mr. Correia is a faith based man who attends church and an addiction ministry faithfully and he also has acquired numerous certificates for classes he has completed. He has taken full advantage of being rehabilitated.

When extraordinary and compelling reasons are established as they are here, the court must consider the relevant sentencing factors in 3553(A) to determine whether a sentence reduction is warranted, 18 USC 3582(c)(1)(A)(i). Under Pepper v. United States, the court can and must indeed consider post offense developments under 3553(A). Pepper, 562 U.S 476 490-93 (2011) (authorizing courts to consider the "most up to date picture" of the defendants history and characteristics when "sheds light on the likelihood that (the defendant) will engage in future criminal conduct"). The corona virus Pandemic and its concordant risk to Mr. Correia is, of course a very significant post sentencing development, that a reasonable person would agree, should weigh heavily in favor of relief. SEE United States v. Pellegrino.

Under the penological purposes served by keeping Mr. Correia confined in an overcrowded, high risk environment, prison facility, where his risk of infection or re-infection, are significantly increased are dramatically outweighed by the grave risk of death or permanent disability. The 3553(A) factors support this position and he requests the court grant his request for compassionate release reduction to time served.

The aging out principle is also applicable, Mr. Correia has accepted responsibility and has learned his lesson. He has a wife and children, they need their father. Under the trying times of the pandemic they need Mr. Correia home to help and earn money to pay bills. This would be in the interest of justice. Mr. Correia has a viable release plan to return to his home with his wife and children in Florida. Mr. Correia poses no risk to society.

<u>United States v. Harris</u>, No. 15-cr-0445, 2020 US Dist Lexis 179257, 2020 WL 5801051 at 2* (S.D.N.Y Sept. 29, 2020), (considering the 3553(a) factors and recognizing that under <u>Brooker</u>, "When assessing a motion brought directly by an imprisoned person rather than by the BOP, the court is constrained neither by USSG 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community"). The severity of the defendants conduct remains unchanged. What has changed however, is the environment where he is serving his sentence. "Zukerman 451 F Supp. 3d at 336 ("when the court sentenced (Defendant), the court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." <u>United States v. Rodriguez</u> No. 03-cr-0271 F 451 Supp 392, 407 (E.D. PA April 1 2020)). Moreover, "the limited duration remaining on defendants sentence," serves as an additional consideration favorable to granting his motion for compassionate release. <u>United States v. Miller</u> No. 15-cr-0132 2020 US. Dist Lexis 104347, 2020 WL 3187348 (D. Conn June 15, 2020).

Mr. Correia's health issue and he being a medical chronic care Level 3 which he takes Humira that is medically proven to further compromise his immune system and that Dr.'s here at Butner Camp have not yet seen Mr. Correia and his current request to medical of over 6 months to see a specialist has not happened he is at a Extremely higher risk of sickness or Death with no proper care. He is not safe here at Butner Camp and would be able to get proper medical care at home.

The fact that Mr. Correia recieved a sentence shorter than what have might have been given due to his medical situation does not constitute prolonged exposure to a deadly virus such as COVID-19, that could cause Mr. Correia Irreparable harm or Death. Mr. Correia understands the seriousness of the crime that this court imposed and has learned his lesson, he is no danger to society, has no criminal record, and is currently in out custody at a minimum security camp.

However if the court deems a lengthy sentence is required the 3553(a) factors are still satisfied by converting the remaining term of imprisonment to supervised release, with a special condition of home confinement with any other options that are just and Honorable by the Court.

## Conclusion

Mr. Correia humbly requests that the court grant his motion for compassionate release and reduce his sentence to time served. In the alternative he requests the Court to grant the motion and substitute a term of supervised release equivalent to his remaining term of imprisonment with a special condition of home confinement, and any other conditions that are in the public interest, just and honorable.

Sincerely and respectfully submitted,

By: _David Correia_  10-12-21
      David Correia        Date

## CERTIFICATE OF SERVICE

I, David Correia, on the 12th day of October, 2021 did place a true and correct copy of the motion for compassionate release in the U.S mail first class postage prepaid which is deemed received and filed when placed in the custody of prison officials for forwarding (mailbox rule - Houston v. Lack (1988) and mailed to the clerk of court, U.S.D.C of Southern District of New York, 40 Foley Square New York, New York 10007.

