UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

UNITED STATES OF AMERICA

   -against-                                  (S-3) 19-cr-725 (JPO)

LEV PARNAS and ANDREY KUKUSHKIN,

     Defendants.

———————————————————————X


**LEV PARNAS'S MEMORANDUM OF LAW IN SUPPORT OF POST-VERDICT
MOTIONS FOR A JUDGMENT OF ACQUITTAL AND A NEW TRIAL**

Joseph A. Bondy
The Law Offices of Joseph A. Bondy
1776 Broadway
Suite 2000
New York, N.Y. 10019
(212) 219-3572
jab@josephabondy.com

Stephanie R. Schuman
Leaf Legal P.C.
24 East 21st Street
New York, N.Y. 10010
(212) 933-9420
stephanie@leaflegalpc.com

1

TABLE OF CONTENTS

Page

INTRODUCTION                                                                3

ARGUMENT

POINT I:    INSUFFICIENCY OF THE EVIDENCE REQUIRES VACATION
            OF PARNAS'S CONVICTIONS AND ENTRY OF A JUDGMENT
            OF ACQUITTAL UNDER RULE 29                                       4

            A.    Standard of Review                                         4
            B.    Timing of Motion                                          5
            C.    Law Applied to the Facts                                  7
                  1.    There was insufficient evidence of
                        a conspiracy to make donations by
                        a foreign national                                  7
                  2.    There was insufficient evidence of
                        soliciting a contribution by a foreign
                        national                                            9
                  3.    There was insufficient evidence of
                        making a contribution by a foreign
                        national                                           10
                  4.    There was insufficient evidence of
                        conspiring to make contributions in
                        the name of another                                10
                  5.    There was insufficient evidence of
                        making materially false statements
                        to the FEC or of falsifying records               11
                  6.    Conclusion                                         13

POINT II:   THE VERDICT IS CONTRARY TO THE WEIGHT OF THE
            EVIDENCE AND A NEW TRIAL MUST BE GRANTED IN
            THE INTERESTS OF JUSTICE UNDER RULE 33                         14

            A.    Standard of Review                                        14
            B.    Law Applied to the Facts                                  15

CONCLUSION                                                                  17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X

UNITED STATES OF AMERICA

    -against-                            (S-3) 19-cr-725 (JPO)

LEV PARNAS and ANDREY KUKUSHKIN,

       Defendants.
————————————————————X

## **INTRODUCTION**

On October 22, 2021, Lev Parnas was convicted by a jury of conspiracy to make contributions by a foreign national (Count One) in connection with federal or state elections, solicitation of a contribution by a foreign national (Count Two), making a contribution by a foreign national (Count Three), conspiracy to make contributions in the name of another (Count Four), making materially false statements to the Federal Election Commission (Count Five), and falsification of records (Count Six).

Because there was legally insufficient evidence to sustain the verdict, Mr. Parnas moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. As the verdict was also contrary to the weight of the evidence, Mr. Parnas moves alternatively for a new trial pursuant to Federal Rule of Criminal Procedure 33. For any remaining counts, Mr. Parnas submits that prejudicial spillover requires a new trial. Mr. Parnas also joins in the post-trial motions of his co-defendant, Andrey Kukushkin, to the extent that they inure to his benefit and are not in conflict with his own—including as to the Government's misleading summary charts and arguments to the jury.

## ARGUMENT

### POINT ONE

### INSUFFICIENCY OF THE EVIDENCE REQUIRES VACATION OF PARNAS'S CONVICTIONS AND ENTRY OF A JUDGMENT OF ACQUITTAL UNDER RULE 29

#### A.  Standard of Review

Under Federal Rule of Criminal Procedure 29, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." When evaluating a motion for a judgment of acquittal, the court must determine whether a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crime charged. *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993); *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The conviction must stand "if any rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt." *United States v. Moore*, 54 F.3d 92, 100 (2d Cir. 1995).

The burden on the defendant to satisfy this standard is, admittedly, "very heavy." *Strauss*, 999 F.2d at 696; *United States v. Nersesian*, 824 F.2d 1294, 1324 (2d Cir. 1987). When weighing the evidence against a particular defendant, it must be viewed in a light that is most favorable to the government, *Moore*, 54 F.3d at 100, and all reasonable inferences must be resolved in favor of the government. *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984). The jury may reach its verdict based upon inferences drawn from circumstantial evidence, and the evidence must be viewed in conjunction, not in isolation. *Moore*, 54 F.3d at 100.

However, "It is not enough that the inferences in the Government's favor are permissible." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). Instead, as to every element of each offense of conviction the inferences must be "sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt." *Id.* The evidence is insufficient, and reversal of conviction is required, if it is "at least as consistent with innocence as with guilt." *Mulheren*, 938 F.2d 364, 372 (2d Cir. 1991).

A court must also be mindful of its responsibility to protect a defendant's Fifth Amendment rights. *United States v. Pauling*, 256 F. Supp. 3d  329 (S.D.N.Y. 2017). *See, e.g., United States v. Valle,* 807 F.3d 508, 513 (2d Cir. 2015). Indeed, if courts "are to be faithful to the constitutional requirement that no person may be convicted unless the Government has proven guilt beyond a reasonable doubt, we must take seriously our obligation to assess the record to determine…whether a jury could *reasonably* find guilt beyond a reasonable doubt. *Id.* at 515 (emphasis in the original) (quoting *United States v. Clark*, 740 F.3d 808, 811 (2d Cir. 2014). Of paramount importance is that, "specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is *probably* guilty. If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *Id.* (*quoting United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008))

## B.    Timing of Motion

A defendant can make a Rule 29 motion for a judgment of acquittal at the close of the government's case, at the close of all the evidence, or after the jury has returned a verdict. Fed. R.

Crim. P. 29(a)-(c). If the defendant makes the motion before submission of the case to the jury, the court can decide the motion or reserve decision until after the verdict. Fed. R. Crim. P. 29(b). *See also, e.g., United States v. Reyes*, 302 F.3d 48, 50 (2d Cir. 2002) (a district court may reserve decision on a motion for judgment of acquittal).

Reserving decision allows a court "to balance the defendant's interest in an immediate resolution of the motion against the interest of the government in proceeding to a verdict thereby preserving its right to appeal in the event a verdict of guilty is returned but is then set aside by the granting of a judgment of acquittal." Fed. R. Crim. P. 29 advisory committee's note (1994 amendments). "Under the double jeopardy clause, the government may appeal the granting of a motion for judgment of acquittal only if there would be no necessity for another trial." *Id.* (*citing United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977)). The government's right to appeal from a judgment of acquittal on a Rule 29 motion is only preserved where the ruling is made after the verdict has been rendered. *See, e.g., Smith v. Massachusetts*, 543 U.S. 462, 467 (2005) ("Our cases have made a single exception to the principle that acquittal by judge precludes reexamination of guilt no less than acquittal by jury: When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty.").

Here, Mr. Parnas first moved for a judgment of acquittal at the close of the prosecution's evidence. Understandably, given the intricacies and importance of the issues to both sides, the Court reserved decision, thereby also preserving the government's right to appeal if, after a

verdict of guilty, the Court determines—as we believe it must—that the verdict has to be set aside.

## C.   Law Applied the Facts

### 1.   There was Insufficient Evidence of a Conspiracy to Make Donations by a Foreign National (Count One)

Count One must be vacated and dismissed. For Mr. Parnas, there was no conspiracy to make donations by a foreign national. The trial evidence plainly showed that there was never an intent to make political contributions or donations with Andrey Muraviev's money. First, the evidence at trial unequivocally showed that there was never a meeting of the minds or agreement to make political contributions. The Government's theory that these donations would somehow be made as part of a plot to obtain retail cannabis licenses when the window for applications was closed (Tr. 161), Parnas, Kukushkin, Muraviev and Fruman were sub-optimal applicants (Tr. 245-49), and the politicians allegedly engaged for this purpose were both staunchly opposed to cannabis legalization and expansion of the industry in Nevada (Tr. 155; Tr. 546) bordered on the absurd. Both Wes Duncan and Adam Laxalt testified that any efforts to make donations to their campaigns to enhance the chances of obtaining a cannabis license would have failed (Tr. 163-64; Tr. 547), and neither was led to believe that the donations that were ultimately made by Igor Fruman had anything to do with this purpose. (Tr. 165; Tr. 545-56). Cannabis Attorney Daniel Stewart also testified that the Attorney General and Governor—offices Duncan and Laxalt had been running for—had no role in review licensing applications (Tr. 257), thus making it impossible to "game" the system through making political donations. The Government's theory

on the solicitation counts was plainly untethered from the facts and the reality of cannabis licensing in most states where cannabis is legal today.

Next, no money was obtained or paid pursuant to the charged solicitation agreement. In point of fact, the two salient donations that were made prior to receipt of the first $500,000 tranche from Mr. Muraviev's company, Intellect Capital, to Mr. Fruman's brother's company, FD Import Export, on or about September 19, 2018, were made on the FD Import Export AMEX card on June 6 and June 25, 2018–105 and 86 days prior to Mr. Fruman receiving the funds in connection with a private loan agreement. At the time the donations were made, there was no evidence that there was any form of an agreement between Parnas, Fruman and Muraviev or Kukushkin—let alone the agreement charged. This lack of evidence of an agreement and temporal disconnect between Muraviev's September 2018 loan and the earlier donations was reflected in the Court's jury charge, in which the jury was instructed that:

> The phrase "making a contribution in the name of another" means making a disguised contribution through an intermediary, or conduit, by giving that person the funds for the contribution. This is sometimes referred to as a "straw donation." It includes both payments to an intermediary of funds to make a contribution, and reimbursement of funds to an intermediary for making a contribution at the payor's request. It does not matter when the payment or reimbursement to the intermediary for the contribution occurs, as long as the payment or promise of reimbursement was a causal factor in the intermediary's decision to make the contribution attributed to him or her. In other words, the promise of reimbursement must have been a causal factor to the intermediary's decision to make the contribution attributed to him. In consequence, it is a defense that the intermediary made up his or her mind to make the contribution in question prior to the time that the true contributor made his reimbursement promise.

*See* Jury Charge at p. 29 (Emphasis supplied).

8

That is exactly what occurred here. The earlier donations were made prior to the time that Muraviev agreed to give Fruman a business loan, and thus any subsequent agreement could not have possibly impacted upon the decision of whether to make the donations. There is also absolutely no evidence that Muraviev ever agreed to or was asked to "reimburse" these earlier contributions.

As to the second round of contributions charged as part of the solicitation scheme, the FBI's own forensic accountant, Kim Espinosa, conceded that she "cannot say the source of the money" (Tr. 1066), or whether a single penny of the second $500,000 tranche sent by Andrey Muraviev to Igor Fruman as a business loan in October 2018 was used to pay the FD Import Export credit card bills for the two ten-thousand dollar donations that Fruman had made to Adam Laxalt and Wes Duncan on November 1, 2018 and for which the AMEX bill was partially paid on December 24, 2018.  Since there was insufficient evidence of any agreement prior to the time the first two donations were made—let alone the one charged in the indictment, and since there was insufficient evidence that any money traceable to Muraviev was used to pay the second two donations, Mr. Parnas's conviction must be vacated and Count One dismissed.

**2.     There was Insufficient Evidence of Soliciting a Contribution by a Foreign National (Count Two)**

Just as there was insufficient evidence of a meeting of the minds in an agreement to solicit contributions, so too was there was insufficient evidence of Mr. Parnas engaging in the substantive offense of soliciting a foreign national for the purpose of making political donations or contributions in an amount aggregating or exceeding $25,000 in a calendar year.  As discussed *supra*, in June 2018, donations unrelated to Muraviev and pre-dating his loans to Fruman were

made. There was no solicitation nor expectation of reimbursement. On November 1, 2018, donations totaling $20,000 were made by Igor Fruman on his AMEX card, the bill for which was paid on December 24, 2018 with funds that could not be attributed to Muraviev because all of his money had already been dissipated. The evidence at trial plainly reflected that by this time, Muraviev's funds had been spent on virtually anything *but* political donations. Accordingly, Mr. Parnas's conviction must be vacated and Count Two dismissed.

3. **There was Insufficient Evidence of Making a Contribution by a Foreign National (Count Three)**

There was insufficient evidence that Mr. Parnas made or aided and abetted the making of a contribution by a foreign national. To say it again, in point of fact, the Government failed to prove that any foreign money was intended to be used for the making of a contribution. The June 6 and 25, 2018 credit card donations were made prior to the existence of any kind of agreement between Muraviev and Fruman at all. The second two ten-thousand dollar payments were made subsequent to the dissipation of Muraviev's second round of funding. Payment of the AMEX card bill that these donations had been made on in early November was ultimately made on December 24, 2018, with funds traceable to "Strauss Coffee" (Tr. 1016)—a completely unrelated client of FD Export. The Government's own forensic accountant witness conceded that she "cannot say the source of the money for those two donations" was Muraviev's. (Tr. 1066). Given the evidence, Mr. Parnas's conviction must be vacated and Count Three dismissed.

4. **There was Insufficient Evidence of Conspiring to Make Contributions in the name of Another (Count Four)**

There was also insufficient evidence to show that Mr. Parnas, by making a $325,000 payment to the America First Action Super PAC with funds originating from Mr. Fruman's

private refinancing of a property, was making a "contribution in the name of another," or that he had any intent whatsoever to violate the federal election laws. Indeed, Mr. Fruman, the source of the funds, did not plead guilty to this Count. Nor is there a scintilla of evidence that Fruman objected to the use of his funds for Global Energy Producers' business purposes. Instead, the evidence showed that Mr. Fruman, with the assistance of Government witness Neil Ross, obtained a private refinancing for his co-op and authorized a wire transfer to Mr. Parnas's personal account. It was made at a time when GEP was yet to have a bank account, but nonetheless for the purpose of GEP making select political donations that Parnas and Fruman believed would advance its business interests. There was no making of the donation in the name of another. The donation was made in the name of GEP, with Mr. Fruman's bona fide capital investment into the startup company, Mr. Parnas identified as its CEO and his home address disclosed. Throughout the case, multiple witnesses, including Caroline Boothe, Joseph Ahearn (Tr 1142) and Deanna Van Rensberg (Tr. 620; 669-70; 694), stated that they believed Parnas and Fruman to be involved in or attempting to start-up an energy business.

**5.      There was Insufficient Evidence of Making Materially False Statements to the FEC or of Falsifying Records (Counts Five and Six)**

The evidence at trial was insufficient to show either that Mr. Parnas made any false statements to the FEC regarding GEP, or that a donation in the amount of $2,700 to then-Congressman Pete Sessions was sufficient to be considered "material" for FEC enforcement purposes. There was also no jury finding on exactly which statement in the affidavit they unanimously believed to be materially false.

11

At trial, Government witness Michael Hartsock testified that he had been employed by the FEC for 17 years and currently served as a branch chief in the reports analysis division. (Tr. 447-48). Mr. Hartsock introduced GX-652 (Tr. 453), an FEC Form 3 for the campaign of Pete Sessions for Congress, and then identified a $2,700 June 25, 2018 contribution made by Lev Parnas, and another made by Igor Fruman that same day. (Tr. 454). The Government then questioned Mr. Hartsock on the importance of the accuracy of the information contained in FEC Form 3 reports. (Tr. 455-57; 486-7).

On cross-examination, Mr. Hartsock detailed his education and training in the field of federal election laws, including participating in ongoing continuing education programs. Next, he admitted that he was aware of the existence of certain "materiality thresholds" that the FEC had in determining whether to commence an enforcement action. (Tr. 497). Mr. Hartsock could not, however, confirm or deny whether making a single $2,700 campaign donation met the threshold for materiality, as this information was privileged. When asked, "And are you able to tell us whether the materiality thresholds for FEC enforcement are above or below $2,700?," Mr. Hartsock replied, "Based upon counsel, FEC counsel, I am not at liberty to speak about internal confidential thresholds." (Tr. 498). Thus, the jury was left with the significant unanswered question of whether a single $2,700 donation was deemed "material" by the FEC and even met its own internal civil enforcement thresholds. Since there was insufficient evidence to conclude that Mr. Parnas's affidavit contained materially false statements regarding either GEP or the June 25, 2018 $2,700 donation to Congressman Sessions, this count must be vacated and dismissed.

For the same reasons, there is insufficient evidence that Mr. Parnas caused the falsification of FEC records, and this count must also be dismissed.

12

**6.     Conclusion**

In the end there was simply insufficient evidence for any reasonable trier of fact to have found that Mr. Parnas had an agreement with Mr. Fruman, Mr. Kukushkin and Mr. Muraviev to solicit and obtain money from a foreign national to make political contributions, or that contributions were made upon a promise of reimbursement or with any of the funds Mr. Fruman ultimately obtained from Muraviev. There was no evidence of any agreement existing between Muraviev, Kukushkin, Fruman and Parnas on June 6 or 25, 2018, when donations were made. Nor was there sufficient evidence that any part of the donations made to Wes Duncan or Adam Laxalt on November 1, 2018 was paid with Muraviev's October 2018 round of funds when Mr. Fruman's FD Export AMEX bill was paid on December 24, 2018.  There was also insufficient evidence of GEP being a "straw" company formed merely for making donations in the name of a foreign national or anyone else. The record reflected throughout that Mr. Fruman willingly invested his own funds in attempting to develop GEP into a legitimate LNG-focused energy company, part of which included making legitimate political donations. The Government's own witnesses, including Caroline Boothe, Deanna Van Rensberg (Tr. 669-70; 694), and Joe Ahearn (Tr. 1142) each acknowledged that they believed Parnas and Fruman to be attempting to develop an energy business. Finally, there was insufficient evidence that any of the statements made in Parnas's affidavit to the FEC were either willfully or materially false. For these reasons,  we respectfully submit that Mr. Parnas's convictions should be vacated and dismissed.

## POINT TWO

## THE VERDICT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE AND A NEW TRIAL MUST BE GRANTED IN THE INTERESTS OF JUSTICE UNDER RULE 33

### A.    Standard of Review

As this Court noted in *United States v. Pauling*, 256 F. Supp.3d 329 (2017), in deciding a Rule 33 motion for a new trial, the Court must determine "whether letting a guilty verdict stand would be a manifest injustice." *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (*quoting United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)). Such motions "are granted only in 'extraordinary circumstances,'" *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (*quoting United States v. Torres*, 128 F.3d 38, 48 (2d Cir. 1997)), where a court is left with "a real concern that an innocent person may have been convicted," *Aguiar*, 737 F.3d at 264 (*quoting Ferguson*, 246 F.3d at 134).

Where, as here, a defendant challenges the verdict as against the weight of the evidence, "[t]he trial court must be satisfied that 'competent, satisfactory and sufficient evidence' in the record supports the jury verdict." *Ferguson*, 246 F.3d at 134. "The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *Id.* In doing so, the Court "must strike a balance between weighing the evidence and credibility of the witnesses and not 'wholly usurp[ing]' the role of the jury." *Id.* at 133 (*quoting United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000)). In exercising its discretion pursuant to Rule 33, a court does not have to view the evidence in the light most favorable to the government, but rather is "entitled to 'weigh the evidence and in so doing evaluate for itself the credibility of the

witnesses.'" *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (*quoting United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

## B.     Law Applied to the Facts

For primarily the same reasons as set forth in Mr. Parnas's Rule 29 motion, Mr. Parnas submits that the jury's verdict was against the weight of the evidence. In contrast with Rule 29, which requires the Court to view the evidence in the light most favorable to the prosecution, Rule 33 allows the Court to weigh the trial evidence objectively. Under this standard, there are substantial doubts as to whether the Government proved that the GEP donations were "straw donations," whether there was ever a meeting of the minds as to the "solicitation" conspiracy, whether any donation was made with funds traceable to a foreign national, and whether there was any materially false statement to the FEC or falsification of records.

First, there was insufficient evidence of a meeting of the minds between Parnas, Fruman, Kukushkin and Muraviev to enter into the conspiracy charged against them—the solicitation of money from a foreign national for the purpose of making hidden campaign contributions. Second, there was insufficient evidence that any of the money loaned to Igor Fruman was intended to be used or actually used to make campaign contributions. As to the two donations made on June 6 and 25, 2018, there was insufficient evidence that any form of an agreement existed with Muraviev or Kukushkin existed at the time that they were made 105 and 86 days before the first $500,000 tranche was paid to Fruman by Muraviev on September 19, 2018. As to the second two ten thousand dollar donations made by Mr. Fruman to Wes Duncan and Adam Laxalt November 1, 2018, the Government's own forensic accountant conceded that could not definitively identify the source of funds to pay the Laxalt and Duncan contributions (Tr. 1043),

and that "I cannot say the source of the money to those two donations" (Tr. 1066). She could not determine that any of the second $500,000 tranche paid by Muraviev to Fruman was used to pay these donations.

The making of donations in the name of another charged in Count Four is also against the weight of the evidence. The record reflected that Fruman and Parnas presented as business partners, and that Fruman provided the seed money for GEP. Much of that capital investment in GEP was then invested in making select donations to the A1A Super PAC in a way that was intended to, and did, maximize their contact with potential business partners and associates. Messrs. Parnas and Fruman were known to several of the Government's witnesses as attempting to pursue interests in the energy sector, including pursuing connections, entering into memoranda of understanding, and pitching their plan to transship LNG from the US to Europe for further distribution as a means to undermine Russia's grip on the European LNG market.  The donations attributed to GEP and Parnas were not designed to hide their true source.

There was no evidence that a single $2,700 donation met a standard of materiality to the FEC itself, and insufficient evidence that any of the statements contained in Parnas's FEC affidavit were actually false. Jurors were also never asked which statement or statements in the affidavit they unanimously determined to be false.

With the evidentiary record on these counts "at best in equipoise and the burden of proof on the Government," *Pauling* at 341, the weight of the evidence does not support the inference of meeting of the minds between Parnas and Kukushkin to solicit foreign funds for the purpose of making contributions, nor the actual use of the foreign funds to make political donations. Nor does it support the inference that Mr. Parnas's contribution to A1A in the name of GEP was a

straw donation made in the name of another, or that materially false statements were made to the

FEC. There was simply insufficient competent evidence to support conviction on any of these

counts, and a new trial is required.

## **CONCLUSION**

The Government prosecuted Mr. Parnas for a solicitation conspiracy that never existed,

based upon foreign funds that were neither linked to a reimbursement scheme for prior donations

nor to the payment of later donations. There were no "straw donations" under the guise of GEP,

nor was there sufficient evidence to demonstrate that Mr. Parnas made materially false

statements to the FEC. Each of these improperly brought counts spilled over onto the others,

resulting in a toxic cocktail of prejudice.

Although some may object if Mr. Parnas's conviction is vacated, reversed or dismissed in

any part, the very essence of our country requires that we be bound by the law, not by hatred,

Xenophobia, vindictiveness or the political winds that may blow at any particular moment. If we

are truly governed by the rule of law, then we must also agree to be limited by its protections.

Although Mr. Parnas's now-well known earlier exploits make him reprehensible to some, and his

more recent efforts to leave the orbit of the former President and his counsel and to cooperate in

the First Impeachment Inquiry make him reprehensible to others, the Court cannot relinquish its

obligation to enforce the law because of a concern that Mr. Parnas might go "unpunished." And,

to allow this verdict to stand would, given the record, be manifestly unjust.

Accordingly, we respectfully request that the Court enter a judgment of acquittal pursuant

to Federal Rule of Criminal Procedure 29 on all counts, and conditionally grant Parnas's motion

for new trial pursuant to Federal Rule of Criminal Procedure 33 on the remaining counts. Finally,

the impact of spillover prejudice from any dismissed counts would require retrial on any

remaining charges.

Dated: New York, New York
December 9, 2021

_____

Joseph A. Bondy